In The District Court Of The United States
For The Middle District Of Alabama                    Pg. 1

2007 OCT 30  A 9: 37

Roy Lee McAfter 147346                    DRA P. HACKETT, CL        (Original)
    Plaintiff                        U.S. DISTRICT COURT
                                MIDDLE DISTRICT ALA

vs.                            Case No. 2:07-CV-692-WKW

Bob Riley Et, Al.,
    Defendants


Objection To Recommendation Of Magistrate Judge


Comes Now Roy Lee McAfter, the plaintiff in the above styled cause and submits this Objection To The Court's Recommendation ~~denying~~ of denial of plaintiff's request for preliminary injunction and in support thereof plaintiff presents the following:

1.    On 10-22-07 plaintiff filed a Motion For Leave To Amend Facts stating that it was through no fault of his own that the original filing did not incorporate these facts. This was true, and as a showing of good faith, and in an effort not to hinder the Court's processing of this matter, plaintiff is going to proceed with this Objection as if the Court's Recommendation of 9-25-07 had included these Amended Facts.

2.    Prisoner pro-se complaints are to be given a less stringent standard of review than that of those trained in the intricacies of the legal profession. I think this is found in Robinson vs. California 8 L. Ed 2d. Having said this, it is my plea that this Court will apply this

2.

leniency to any mistakes in format, or mistakes in procedure that I, in my ignorance, may undertake to commit.

## Preliminary Injunction

1. <u>Interest of The Public</u>:  Having utilized every moment that I have been alloted access to law library resources researching the claims that I have raised I haven't had much opportunity to acquaint myself with this aspect of my suit. This being said, I do, however, have a quote that is quite appropriate:

"that if the acts before specified should stand, these conclusions would flow from them; that the General Government may place any act they think proper on the list of crimes, and punish it themselves whether enumerated or not enumerated by the Constitution as cognizable by them: that they may transfer its cognizance to the president, or any other person, who may himself be the accuser, counsel, judge and jury, whose suspicions may be the evidence, his order the sentence, his officer the executioner, and his breast the sole record of the transaction: that a very numerous and valuable description of the inhabitants of these states being, by this precedent, reduced as outlaws, to the absolute dominion of one man, and the barrier of the Constitution thus swept away from us all, no rampart now remains against the passions and the powers of a majority in Congress to protect from a like exportation, or other more grievous punishment, the minority of the same body, the legislatures, judges, governors, and counselors of the States, nor their other peaceable inhabitants, who may venture to reclaim the Constitutional rights and liberties of the States and people, or who for other causes, good or bad, may be obnoxious to the views, or marked by

3.

the suspicions of the President, or be thought dangerous to his or their election, or other interests, public or personal, that the friendless alien has indeed been selected as the safest subject of a first experiment..." Thomas Jefferson, "Public Papers and Addresses, The Kentucky Resolutions" [October 1798].

Our Constitution is the lifeblood of our Nation. It is what realizes the Rights, the Dreams, the Hopes, the Freedom, and so Very Much More of all of America's Peoples. It is in the Public's Interest that this "Rampart" not be swept away.

2.  **A Substantial Threat Of Irreparable Injury:** Just as in the above I stipulate to the Court that I haven't had much opportunity to acquaint myself with this aspect of my suit, however; "Irreparable Injury," I think that I can, from personal experience, define this phrase quite well. There is absolutely no way that I can go back in time and reclaim the years of my life that I have lost in these prisons, jails, reform schools, the years spent wasting my life doing drugs, the time missed with family. And the people I have hurt along the way, I don't imagine you could fill up the oceans with all the hurt I have caused. That, or those things, are irreparable injuries.

"Currently, Mr. McAteer is not immediately due to be released until June 3rd, 2008. Indeed, if Mr McAteer refuses to properly register and notify of his intended address as a sex offender in the future, he will be subject to additional and separate charges." Defendants Special Report pg. 7.

I will be subjected to "penal incarceration" actually 45 days before June 3rd 2008. From past experience I know very well what this means. I will be told when to eat and what to eat, I will be told where to sleep

4.

and when to sleep. I will be housed in an overcrowded box and be treated like I am subhuman. I will be cut off from the normalcy of life and be ... well I do try not to be bitter. One day of a person's life in penal confinement is irreplaceable ... but with CNA it is years, and with my record - being a habitual offender - what would be the minimum, 15 years, 20 years? And even if I eventually won my release through the Courts, how much more of my life would have been irreplaceable? I do not know if penal confinement can be categorized as irreparable injury in Judicial language or not, but as one of my favorite quotes puts it:

"The moving finger writes and having wrote moves on; And all your piety nor all your wit can erase one jot or one tittle of what has been writ." Shakespeare.

Confinement for years cannot be anything but irreparable injury as there is no way to "erase" that time back into your life once it has been taken.

3.   <u>That The Harm To Plaintiff Outweighs The Harm To The Non Moving Parties:</u> "Cruel and Unusual." To penally punish someone for having an illness is not allowed under Constitutional Law. Robinson vs. California 8 L. ed 2d at 769. Kansas vs. Hendricks 138 L ed 2d 501.

"Even one day in prison would be a cruel and unusual punishment for the "crime" of having a common cold." id at 763. The defendants are enforcing a statute (CNA.) that mandates that (1.) I am mentally ill (2) that because of this mental illness I must abide by certain conditions, and (3) that if I violate "Any" of the statute's mandates I must be sent to some type of penal confinement. A continuing threat of involuntary confinement ... "And actual confinement" is a pretty substantial

5.

harm.

And how do you weigh this harm that "I will suffer" (plaintiffs exhibit A) against any harm the defendants will suffer? To be truthful to the Court I just do not know. I suppose it all hinges on whether or not I can establish a likelihood of success on the merits. If I can show that the issues I have raised have validity, and that C.N.A. has a Constitutionally impermissible application or effect, then how that could be of harm to the defendants . . . not being facetious, but under those circumstances I would think that an injunction would be proper for all parties.

4. _A Substantial Likelihood Of Success On The Merits_: Just as in the foregoing 1 and 2 I will stipulate to the Court that I haven't had occasion to acquaint myself in any meaningful way with this aspect of my suit. I have asked the law clerks here at this facility exactly how I should go about establishing likelihood of success on the merits, but they seem to be as unversed or unlearned about it as I am. So . . . I am going to just play it by ear and reiterate my plea to the Court for lieniency regarding mistakes in format or procedure.

### Bill Of Attainder

A. _Inescapability of CNA under the Bill of Attainder Clause_: C.N.A. is applicable to me for life. Court Document No. 14-1 pg. 5. With C.N.A. you have a statute that places "conditions or restrictions" on me because I am ~~defined~~ defined as "Mentally Ill and Dangerous". This statute does not regulate any behavior or conduct that I am overtly engaged in. I am not out trying to overthrow the government (Communist Party vs S.A.C. Board 6 L ed 2d) nor am I engaging in any other illegal activity. So, what is being regulated? That is a legitimate question. My answer to myself, after

6.

some thought, "Oh I get it, I am being regulated!"

Attainder and Outlawry 4: Legislature 2 - regulatory power.

44. Legislatures may act to curb behavior which they regard as harmful to the public welfare (omitted); so long as the incidence of legislation is such that the persons who engage in the regulated conduct, (omitted) can escape regulation merely by altering the course of their own present activities, there can be no complaint of attainder. Communist Party vs. S.A.C. Board 6 L.ed 2d at 633.

Under this wording it would seem that I have a legitimate complaint that C.N.A constitutes an attainder law. If I am not doing anything unlawful, that is harmful to the public, then there is nothing for me to alter and hence, there is no need to apply a regulation. And Indeed, I can certainly not "alter who I am." How does one escape from himself?

B.    _C.N.A. violates the Separation of Powers doctrine under The Bill of Attainder Clause._ This gets pretty complicated here. I "know" I have to be missing something but I have read... and "read literally" every case in this law library regarding attainder laws and what it is I am missing ...

"Under the line of cases just outlined 504 of the Labor Management Reporting and Disclosure Act plainly constitutes a Bill of Attainder. Congress undoubtably possesses power under the commerce clause to enact legislation designed to keep from positions affecting interstate commerce persons who may use such positions to bring about political strikes. In 504, however, Congress has exceeded the authority granted it by the Constitution. The statute does not set forth a generally applicable rule decreeing that any person who commits certain acts or possesses certain characteristics (acts and characteristics which in Congress view make them likely to initiate political strikes) shall not hold union office, and leave to courts and juries the job of deciding what persons have committed the specified acts or possessed the specified

7.

characteristics. Instead it designates in no uncertain terms the person who possess the feared characteristics and therefore cannot hold union office without incurring criminal liability — members of the communist party." United States vs. Brown 14 Led 2d at 492.

...What it is I am missing? Does not CNA make the same determination that I possess certain characteristics and therefore must abide by certain conditions or incur criminal liability?

Here is what I have decided I am missing, and it kind of ties in to the Defendants Special Report Due Process section — "Consequently, procedural due process requirements with respect to such offenses are met through the "original criminal proceedings." Defendants Special Report at pg. 16. And, " ~~these consequences flow not from~~ "these consequences flow not from the Acts registration and dissemination provisions, but from the fact of conviction, already a matter of public record." Court Document 14-1 at pg. 16. The point being is that it seems CNA is deemed Constitutionally sound under the Bill of Attainder Clause because I was once convicted of a sex offense. However, it should be noted that at that prior sentencing on July 30, 1987 I wasn't told that I would forever more be designated as mentally ill and dangerous. These are appellations that were hoisted upon me by the legislature and they constitute "new findings of fact" concerning me, that cannot be constitutionally applied outside the judicial realm, i.e. "The command of the Bill of Attainder Clause — that a legislature can provide that persons possessing certain characteristics must abstain from certain activities, but must leave to other tribunals the task of deciding who possesses these characteristics..." Footnote 29 United States vs. Brown 14 L ed 2d.

C.    CNAs Language Creates Reputational Injury. Can any more rational assertion be made than that people place more importance on the

8.

safety and wellbeing of their children than any other concern? And can any more rational assertion be made ~~that~~ than that when the community a person lives in is told "Hey, watch out for this guy, he is a child molester" that the harm visited upon this person is immeasurable.

The C.N.A. uses the phrases schools, children, and childcare facilities ~~totally~~ throughout its text, ie. "school or childcare facility" section (a) Court Document No. 14-1 at pg 6. "involving a child" section (f) "school, childcare facility, playground, park, athletic field (omitted) or entertaining minors" section (f) Court Document 14-1 at pg 7. "and to all schools and childcare facilities" id at pg 10. "vulnerable segments of the public such as schools and childcare facilities." id (in the) at pg 12. "especially children" id (in the) at pg 13.

Am I dangerous to children? Is the public to think this? That is the effect of CNA. Because of the use of the language above I am (because of an offense 21 years ago against another adult) linked to a class of, or group of people, who are dangerous to children. And, one phrase that I encountered with some frequency while researching these issues was "Overism of punishment." And, to take some liberality with semantics: "Overtumly speaking", the harm inflicted upon me by the inaccurate legislative determination to so indiscriminately apply such a perjorative connotation as that I am a "child molester" is exponentially worse than any other label that could be applied. "And," the question begs asking: Is this inclusion of - this inaccurate inclusion of me - in a group of people who are dangerous to children, permitted under our Constitution.?

"As Dr. Foretich's uncontroverted affidavit makes clear, his principal complaint is that the Elizabeth Morgan Act harmed his reputation by embodying a Congressional determination that he is a child abuser and a danger to his

9.

own daughter. This claim clearly gives Dr. Foretich standing in this case. Congress's act of judging Dr. Foretich and legislating against him on the basis of that judgement - the very things that, as we will see, render the Act an unconstitutional bill of attainder - directly give rise to a cognizable injury to his reputation that can be redressed by a declaratory judgement in Dr. Foretich's favor." Foretich vs. US 351 F.3d at 1213.

Just as in Foretich where the government argued that the impact on Dr. Foretich's reputation was not a consequence of the Act itself, the defendants here assert the same, ie. "By contrast, any stigma of the Community Notification Act results not from public display for ridicule and shaming, but from the dissemination of accurate information about the offenders criminal record." Defendants Special Report at pg. 12. However, the Foretich Court rejected this argument in prominent part because:

"It makes little sense to view the Act in isolation, divorced from the legislative process that produced it. The statute represents the culmination of that process. The governments' argument is particularly tenuous in the context of a Bill of Attainder challenge, in which the alleged constitutional defect arises not only from the statutes text, but also from the underlying process of legislatively determining guilt without the protections of a judicial trial.(omitted) It is therefore not plausible to suggest that the Elizabeth Morgan Act itself does not contribute to the harm suffered by Dr. Foretich's reputation." Foretich vs. US 351 F.3d at 1215. See also:

"Finding that the injury to appellee's reputation "occurs because the Department of Justice has placed the legitimate force of its criminal enforcement powers behind the label of political propaganda," the Court held that the alleged injury was likely to be redressed by a favorable decision declaring the Act unconstitutional and enjoining its application to the

10.

appellee. <u>Meese vs. Keene</u> 264 F. 3d at 56-57.

D.    <u>C.N.A. Uses Language That Has Only One Contextual Purpose, And That Is The Infliction Of Punishment</u>: "Danger of recidivism". <u>Court Document 14-1 at pg 12</u>. The "danger of recidivism" statement requires some thought and ~~careful examination~~ so I wanted to examine it in the context that it is used within C.N.A. language, and also in the context of judicial language.

    Starting with C.N.A. language you see it used in conjunction with phrases such as, protection of the public, law enforcement, criminal, apprehend, criminal justice system, "<u>registering</u>", state's police power, <u>regulating</u>, "<u>reduced expectation of privacy</u>", "<u>resident and employment restrictions</u>", to be <u>photographed</u>, "<u>fingerprinted</u>", to "<u>mandate</u>", and, "<u>reporting and monitoring requirements</u>". Now, I am sure that it could be asserted that when considered in the aggregate of C.N.A.s regulatory scheme, the phrase "danger of recidivism" is properly used. But, the effect of the aggregate is indicative that, as used, the "danger of recidivism" statement has a primary purpose which is to wit:

    "Historical considerations by no means compel restriction of the bill of attainder ban to instances of retribution. A number of English Bills of Attainder were enacted for preventive purposes - that is, undoubtably based largely on past acts and associations (as 504 is) that a given person or group was likely to cause trouble and therefore inflicted deprivations upon that person or group to keep it from bringing about the feared event." <u>United States vs. Brown 14 L ed 2d at 497</u>. And, "The Courts' pronouncement therefore served notice that the Bill of Attainder Clause was not to be given a narrow historical reading (which would exclude bills of pains and penalties), but instead was to be ~~given~~ read in the light of the evil the Framers had sought to bar: legislative punishment of any form or severity, of specifically designated persons or groups." <u>id (infra) at 496</u>.

11.

And "recidivism" as used in the context of Judicial Language —
"to require recidivism be deemed an element of the offense would be to break
a long tradition of treating recidivism as going to the punishment only."
<u>Almendarez vs. US, 140 Led 2d at 350-368.</u>

E.    <u>C.N.A. violates the Bill of Attainder Clause In That It Does Not
Require A Showing Of Specific Intent.</u> One consideration that I have not
saw addressed in all of the cases related to sex offender legislation that I have
read, i.e. <u>Russell 124 F. 3d at 1091</u>, <u>Cutshall vs. Sundquist 193 F. 3d at 466</u>,
<u>Doe vs. Palaki, 120 3d at 1263</u>, <u>E.B. vs. Verniero 119 3d at 1077</u>, <u>Roe vs
Office of Adult Probation 125 F. 3d at 47</u>, <u>Kansas vs. Hendricks 138 Led 2d at
501</u>, <u>Smith vs. Doe 155 Led 2d at</u> . . . along with many others, the one
constitutional consideration I have not saw addressed is whether or not the
challenged statutes were valid because they were applied without the element of
"specific intent."

    "On Certiorari the Supreme Court reversed and held that the
challenged statute was unconstitutional because it did not require a showing
that the person was an active member with a specific intent of engaging in
unlawful activities and that the statute unnecessarily infringed on Constitutional
Rights." <u>Barbara Elfbrandt vs. Russell 16 Led 2d at 231.</u>

    Under C.N.A. as it is worded, I will be guilty of a "Class C felony"
if one of my numerous "Numerous" nephews or nieces decide that they
wish to visit with me and spend extended time. Now it is, in a lot of instances,
my great nephews and nieces. This is a familial tie and "right of association"
that I cherish deeply. I helped to raise these kids, threw footballs with them,
helped some of them to learn to ride bikes, told them stories, took them fishing,
and changed their diapers more times than I like to remember. One of the
first crimes that I ever committed was to steal milk for one of my nephews

12.

when he was six months old. <u>Unnecessary infringement on Constitutional Rights?</u>

"The Supreme Court elevated the right to freedom of association to its present status as a separate constitutional right emanating from the First Amendment and made applicable to the States by the Due Process Clause of the 14th Amendment." Healy vs. James 33 L ed 2d at 810.

"And,"

"But, where powers are assumed which have not been delegated, a nullification of the act is the rightful remedy." ... Thomas Jefferson, "Public Papers and Addresses, The Kentucky Resolutions" [October 1798].

<u>Ex Post Facto</u>

A.    <u>C.N.A. of Alabama Increases The Punishment Beyond That Specified At My Sentencing On January 1st 1988. "Historical Shaming". I would and do object to the Court's conclusion that the decision rendered in Smith vs. Doe 538 U.S. at 92, 123 S. Ct at 1147, is dispositive in this action.</u>

"Historical Shaming". In Smith vs Doe the plaintiffs alleged that the effect of the Alaska Statute was analogous to historical shaming punishments. The Smith Court, however, rejected this argument in prominent part because; "Even punishments that lacked the corporal component, such as public shaming, humiliation and banishment, involved more than the dissemination of information. They either held the person up before his fellow citizens for face to face shaming or expelled him from the community.

In contrast to the colonial shaming punishment, however, the state does not make the publicity and resulting stigma an integral part of the objective of the regulatory scheme". Smith vs. Doe 155 L ed 2d at 164.

13.

The differences that I (with the resources at my disposal) would note that exist between Alaska's Act and Alabama's CNA. are significant. ███ Alaska does not go door to door in the offenders community handing out, indiscriminately, pictures of the offender which are attached to legislative language which is inaccurate." ███████████," CNA. of Alabama has the effect of saying to the community I live in, "Hey, this guy is a "child molester," here is his picture, and he lives right there." ███

Perjorative Connotations and Semantically Slanted Words Of Reprobation. To use a phrase that I have heard with some frequency in recent years "Alabama, has carried this thing to a whole new level," and in a Historical Shaming context... handing out pictures, putting them in newspapers, post offices, and police stations, transcends the internet posting that was at issue in Doe, and does make the publicity and resulting stigma an integral part, if not the objective of the regulatory scheme because (1) It does hold the person up before his fellow citizens for face to face shaming, and (2) It does result in the expulsion of the person from the community. See Meese vs. Keene 95 L ed 2d at 415, Also Kansas vs Myers 260 Kan. 669.

B.    CNA Violates The Ex Post Facto Prohibition Of Vindictive Legislation: "Vindictive • - 1. Inclined to seek revenge. 2. Meant to cause pain or harm." Webster's II New College Dictionary.

On June 3rd, 2008 I am scheduled to be released from the custody of the Alabama Dept. of Corrections. On approximately April 18th of 2008, under the mandates of CNA., I will be subjected to criminal penalties, "A Class C Felony," if I fail to provide a verifiable living address. This "penalty" will be imposed upon me regardless of any considerations as to whether or not my failure to provide such is because of a willful act on my part, or simply because of an "inability" to acquire such living address. Is this

14.

evidence of "vindictive" legislation which is restrained under the Ex Post Facto Clause... <u>Weaver vs. Graham 67 L ed 2d at 17 - Fletcher vs. Peck 3 L ed at 162</u>.

Criminal Law 13.1(1) "No man is to be held criminally responsible for conduct which he could not reasonably understand to be proscribed" <u>Guzzardo vs. Bengston 643 F. 2d at 1300</u>.

"Reasonably." Is it reasonable to incarcerate me, to inflict harm upon me, to subject me to criminal prosecution because I simply cannot comply with the mandate that I provide a verifiable living address, or else. (Please see plaintiff's exhibit A).

Another body of case law which upholds the same principle as 13.1(1) above is found in Contempt proceedings. In this area of law, both civil and criminal, you find great consistency in the rulings that "Inability to Comply" is a complete defense against the imposition of sanctions, ie. <u>U.S. vs Rylander 714 F. 2d at 996</u>, <u>U.S. vs Wendy 575 F. 2d at 1025</u>, <u>O'Leary vs. Moyer's Land Fill Inc. 536 F. Supp at 218</u>.

The question begs asking: Why was this issue not addressed during the ~~political~~ Legislative process of creating CNA.? Was it maybe because the "passions and powers" of the legislative body found the persons affected by CNA, as so "obnoxious to their views" that a callous "So be it" was found to be sufficient... Vindictiveness.


Due Process Clauses


A.    <u>Absence Of Hearing</u>: I would and do object to the Court's conclusion that I will not succeed on the merits of the Due Process claims. More specifically, that Due Process requirements were met in regards to this claim through the

15.

original criminal proceedings.

CNA Definitions — Section 15-20-21 Code of Alabama.

Mental Abnormality: "A congenital or acquired condition of a person that affects the emotional or volitional capacity of the person in a manner that predisposes that person to the commission of criminal sex offense to a degree that makes that person a menace to the health and safety of other persons."

Sexually Violent Predator: "A person who has been convicted of a criminal sex offense and who suffers from a mental abnormality or personality disorder that makes that person likely to engage in predatory criminal sex offenses."

The above language, were it taken out of the CNA. text, would arguably cause the collapse of the entire statute. It would take away the basis for application of CNA. mandates. So, what CNA is predicated upon is the attachment to those affected by it the designation that they are mentally ill. And, these designations last for life. They are "indeterminate." They also, since they constitute "new findings of fact" put me under the umbrella of all the protections of Due Process afforded other mentally ill persons. (Procedural Protections).

Compare Ala. Code 15-16-43. Commitment of defendant upon finding of mental illness — "If, at the final hearing, the court finds that the defendant is mentally ill and as a consequence of such mental illness poses a real and present threat of substantial harm to himself or to others . . ." Also,

Constitutional Law 347.5 - Criminal record - evaluation of mental condition - jury determination 3. "While a prisoner's criminal record may be a relevant factor in evaluating his mental condition, ~~the court's order depriving him of~~ and determining the type of care and treatment appropriate for his condition, his record cannot justify depriving him of a jury determination on the basic question whether he is mentally ill and an appropriate subject for some kind of compulsory treatment." Humphrey vs. Cady 31 L'ed 2d at 397.

16.

Two groups of people. Both groups designated as both suffering from the same malady, "mental illness". Both subject to involuntary confinement under the respective statutes. One group, however, is subjected to penal confinement. No probable cause hearing, no jury determination as to the underlying cause and purpose for the confinement, ie. persons alleged mental illness and dangerousness to others. Just straight to jail... That is the commitment proceeding C.N.A. allows. "Emergency Detention".

The 11th Circuit made some comments in Lynch vs. Baxley, 744 F. 2d at 1452, that are "striking" as to their impact on the paragraph above. In this case the plaintiff, who was designated as being mentally ill and dangerous, challenged the Constitutionality of Alabama's involuntary commitment proceedings. The District Court, after remand, found that the use of jails for the purpose of detaining persons awaiting involuntary commitment violated those persons substantive and procedural due process rights. In addition ... An injunction was issued in this case because ... "Both procedural and substantive Due Process violations occur by confining those who have been "designated as mentally ill" in penal facilities - jail." Lynch vs Baxley 744 F. 2d at 1452.

And I will stipulate to the Court, right about here, that I am trying "extremely hard" not to apply conclusions.

The Lynch Court also employed a least restrictive means analysis, relying in large part on the holdings established in Shelton vs Tucker 5 Led 2d. "The principle of the least restrictive alternative consistent with the legitimate purposes of a commitment inheres in the very nature of civil commitment, which entails an extraordinary deprivation of liberty justifiable only when the respondent is "mentally ill to the extent that he is likely to injure himself or other persons if allowed to remain at liberty." A statute sanctioning such a massive curtailment of the rights of citizens must be narrowly, even grudgingly, construed in

17.

order to avoid deprivations of liberty without due process of law." Further...

"Other Courts have agreed with the application of the least restrictive means analysis to this area. See <u>O'Conner vs. Donaldson</u> 45 L ed 2d at 396-406. Civil incarceration unconstitutional where treatment is not necessary and a less restrictive alternative would suffice." <u>Lynch vs. Baxley</u> 744 F. 2d at 1459. See also <u>Bid vs Wallis</u> (11th Circuit) 619 F. Supp. at 490. Similarities in conditions.

B.    <u>CNA Is Basically A Civil Commitment Statute Which Is Being Inappropriately Applied Through The Criminal Justice System</u>: This goes to the validity of the statute as applied and I rely largely on section (A) above with only some minor additions.

The basis for application of CNA mandates is that the persons affected by it are "mentally ill and dangerous." The basis for confinement of persons who run afoul of CNA mandates, irregardless of the patina of criminality that is attached, is hence, also that the persons are mentally ill and dangerous. "<u>Nature</u> and <u>Duration of Confinement</u>," and <u>Rational Relation</u>."

~~█████~~ <u>Constitutional Laws, 270(1)</u> "Due process requires at a minimum some rational relation between "nature" and duration of confinement and its purpose." <u>Lynch vs. Baxley</u> 744 F. 2d 1453.

<u>Statutes § 172 Construction of terms.</u>—"The statutory definition of a term excludes unstated meanings of that term." <u>Meese vs. Keene</u> 95 L ed 2d at 415.

C.    <u>CNA Is A Violation Of The Bill Of Rights Prohibition Against Cruel And Unusual Punishment Made Applicable Through The Due Process Clause</u>: And, I hate to be redundant... But, CNA Definitions - Section 15-20-21 Code of Alabama. <u>Mental Abnormality</u>: "A congenital or acquired condition of a person that affects the emotional or volitional capacity of the person in a manner that

18.

predisposes that person to the commission of criminal sex offense to a degree that makes that person a menace to the health and safety of other persons."

<u>Sexually violent predator</u>: "A person who has been convicted of a criminal sex offense and who suffers from a <u>mental abnormality</u> or personality disorder that makes that person likely to engage in predatory criminal sex offenses." Also,

"Any failure to provide timely and accurate declarations shall constitute a Class C Felony." Court Document 14-1 at pg. 9 Also,

"The legislature declares that its intent (omitted) is to protect the public ..." Court Document 14-1 at pg. 13.

Under C.N.A. language I, indeed suffer, from a mental illness. I will also be subjected to "penal confinement" under C.N.A. because, under the statute, this is the means chosen to protect the public ... from me. This connection of <u>mental illness</u> and <u>penal confinement</u> flys in the face of a long list of rulings from the Supreme Court down to the Districts Courts and State Courts, i.e. <u>Robinson vs California 8 L ed 2d</u>, <u>Furman vs Georgia 33 L ed 2d</u>, <u>Baxstrom vs. Herold 15 L ed 2d</u>, <u>Specht vs Patterson 18 L ed 2d</u>, <u>Foucha vs. Louisiana 118 L ed 2d</u>, <u>O'Connor vs. Donaldson 45 L ed 2d</u>, <u>Jones vs. United States 77 L ed 2d</u>, <u>Kansas vs. Hendricks 138 L ed</u>, <u>Lynch vs Baxley 744 F. 2d (11th Circuit)</u>, <u>Ryan vs. Bartlett 802 So. 2d</u>.

All of these cases, though not dealing with the exact issue of cruel and unusual punishment, (excluding Robinson and Furman) do make the point very well that mental illness and penal confinement is constitutionally unacceptable.

In Robinson the language is very "Very" strong, i.e. "We would forget the teachings of the Eighth Amendment if we allowed sickness to be made a crime and permitted sick people to be punished for being sick. This age of reason cannot tolerate such barbarous action." <u>Robinson vs California 8 L ed 2d at 769.</u>

D.    <u>C.N.A. Violates Substantive Due Process Requirements In That It</u>

19.

Defines <u>A Persons Subject To Its Mandates As Being Mentally Ill And Dangerous, And Provides The Means To Involuntarily Confine Such Person, But Yet, Contains No Provision To Render Services Which Would Enable The Person To Live Free Of Such Confinement; ie. Treatment For The Underlying Mental Illness, A Job Training, Etc.:</u> This stuff does get complicated right about here.

As Judge Wisdom wrote in Aderholt, "the only permissible justifications for civil commitment, and for the massive abridgements of constitutionally protected liberties it entails [are] the danger posed by the individual committed to himself or others, or the individual's need for treatment and care." <u>Aderholt, 503 F. 2d at 1312</u> (explaining holding in Donaldson vs. O'Connor). Judge Wisdom further explained that, "if the purpose of the commitment is to secure treatment, the state violates due process if it does not, in fact, provide treatment. Likewise, if the ~~prime~~ reason for the commitment is the individual's dangerousness, treatment [h]as to be provided as the quid pro quo society has to pay as the price of the extra safety it derives from the denial of the individual's liberty. Id." <u>D.W. By M.J. on behalf of D.W. vs. Rodgers. 113 F. 3d at 1217-1218</u>. Also,

Ours is a progress oriented society, and as such, we have for a great many years rejected the idea that "shock treatments, centrifugal spinning, water cures, screws, solitary confinement, and penal confinement" are acceptable methods of effecting "behavior modification" in the mentally ill. Also,

"In Sixteenth Century England one prescription for insanity was to beat the subject "until he regained his reason". Deutsch, The Mentally Ill in America (1937), p. 13. In America "the violently insane went to the whipping post and into prison dungeons or, as sometimes happened, were burned at the stake or hanged."; and "the pauper insane often roamed the countryside as wild men and from time to time were pilloried, whipped, and jailed." <u>Robinson vs. California, 8 L ed 2d at 764</u>. Also,

"and since, independent of the Statute, the stigmatizing consequences of a transfer to a mental hospital for involuntary treatment, coupled with the subjection of the prisoner to mandatory behavior modification as a treatment for mental illness, constitute the kind of deprivations of liberty that require procedural protections." Vitek vs. Jones, 63 L Ed 2d at 553.

E.   CNA Violates Substantive Due Process Requirements In That In Certain Stages Of Its Application It Places Such A Powerful Limitation On A Person's Ability To Act On Their Own Behalf That It Thereby Creates A "Special Relationship" Between Such Person And The State To The Extent That The State Is Rendered Obligatory Under The "Affirmative Duties" Doctrine Of Constitutional Law To Provide Such Services To The Person That He Cannot, Because Of The State Imposed Limitations, Provide For Himself:

"The key concept is the exercise of coercion, dominion or restraint by the State." The State must somehow significantly limit an individuals freedom or impair his ability to act on his own before it will be Constitutionally required to care and provide for that person." Wideman vs. — 826 F. 2d at 1035-1036.

At the end of my present sentence, actually 45 days, before under CNA. mandates I will be held criminally liable if I fail to comply with the CNA demand that I provide a verifiable living address. However, with this command also comes the demand that I not be released from confinement, and ▬ in fact suffer further confinement, if I do not comply with the command. (And, I will stipulate to the Court that I took a little liberty with semantics in the above sentences as a point of emphasis.) In a nutshell . . . , the state has me incarcerated, cut off for all intents and purposes from all sources of aid that would enable me to acquire its demanded commanded verifiable living address, but yet, demands commands that I provide such to escape the confinement. (See Plaintiff's Exhibit A).

And the question begs asking: Since Lynch vs. Baxley forbids confining

21

those who have been "designated as mentally ill" in penal facilities for the simple expedient of effecting their confinement, and since the principles espoused in Criminal Law 13.1(1) and U.S. vs. Rylander 714 F. 2d seem to be applicable to this issue, what is to be done?

"In the substantive due process analysis, it is the state's affirmative act of restraining the individuals freedom to act on his own behalf — through incarceration, institutionalization, or other similar restraint on personal liberty — which is the "deprivation of liberty" triggering the protections of the due process clause..." Deshaney vs Winnebago Soc. Serv. 103 L ed 2d at 249.

## Equal Protection

A.    C.N.A. Of Alabama Violates The Equal Protection Clause Of The U.S. Constitution By Denying To One Group Of Mentally Ill Persons The Protections Of Due Process, And Other Rights, That The State Extends To Another Group Of Mentally Ill Persons: The one great enjoyment that I have derived from the researching of these issues was the reading of the analogies some of the Justices use to make comparisons. The one I thought I might come across but didn't: If it walks like a duck, ████████ quacks like a duck, and looks like a duck...

C.N.A. Definitions – Section 15-20-21 Code of Alabama. Mental Abnormality: "A congenital or acquired condition of a person that affects the emotional or volitional capacity of the person in a manner that predisposes that person to the commission of criminal sex offense to a degree that makes that person a menace to the health and safety of other persons."

Sexually Violent Predator: "A person who has been convicted of a criminal sex offense and who suffers from a mental abnormality or personality disorder that makes that person likely to engage in predatory criminal sex offense." And,

22.

_Compare Ala Code 15-16-43._ Commitment of defendant upon finding of mental illness — "If, at the final hearing, the Court finds that the defendant is mentally ill and as a consequence of such mental illness poses a real and present threat of substantial ~~that~~ harm to himself or others . . ." And,

_Statutes §172 Construction of terms_ — The statutory definition of a term excludes unstated meanings of that term." And,

"It appears, however, that the Mental Health Act and the Sex Crimes Act are not mutually exclusive; that aberrations warranting commitment under the latter might also amount to "mental illness" warranting commitment under the former." _Humphrey vs. Cady, 31 L ed 2d at 404._

According to the terms as defined by CNA. I do indeed suffer from a mental illness. According to the terms of CNA. I am also under a continuing threat of involuntary confinement because of this mental illness and hence dangerousness. And, again the questions begs asking: Why the radical difference in treatment between two groups of people who suffer from the same malady, "mental illness?" Why incarcerate one in jails and prisons ~~████████████~~ as his civil commitment, or involuntary confinement if you will? Why deny him the same jury determination that is afforded other mentally ill persons?

"Commitment for compulsory treatment under the Wisconsin Sex Crimes Act appears to require precisely the same kind of determination, involving a mixture of medical, social, and legal judgements. If that is so (omitted) then it is proper to inquire what justification exists for depriving persons committed under the Sex Crimes Act of the jury determination afforded to persons committed under the Mental Health Act." _Humphrey vs. Cady, 31 L ed 2d at 402-403._

Prisons and jails. These are the alternatives to civil commitment that persons who are "mentally ill" are afforded under CNA.

"Held (b) The Mental Health Act and the Sex Crimes Act are apparently

23.

not mutually exclusive, and an equal protection claim would be persuasive if it developes on remand that petitioner was deprived of a jury determination or other procedural protections merely by the arbitrary decision to seek commitment under one Act rather than the other." Humphrey vs. Cady 31 L ed 2d at 400.

Application of CNA Mandates and the attachment to me the designation that I am mentally ill and dangerous lasts for life. So, forever, I will be subject to involuntary incarceration because of . . . well because I am mentally ill and therefore must be kept on a leash so to speak. And I stipulate to the Court that I am trying so very hard not to apply conclusions . . ., but this seems to me to be almost the exact same issue that was litigated in Birl vs Wallis 619 F. Supp. where the Court ruled that similarities in conditions demands similarity in treatment.

Having said the above, CNA, uses the patina of criminal responsibility to effect the ~~same~~ result of protecting the public from the mentally ill and dangerous, ~~█████████████████████~~, and therefore is:

"Essentially the equivalent of commitment for compulsary treatment under a different state statute dealing with mental health which latter statute gives the person a statutory right to have a jury determine whether he meets the standard for commitment, and that consequently the petitioners commitment under the former statute dealing with sex crimes, which statute didnot give the person to be committed the right to such a jury determination deprived him of equal protection." Humphrey vs. Cady 31 L ed 2d at 391.

Motion For The Court To Construe This Document As Both, "An Objection To The Court's Recommendation Of The 25th day of September, 2007" And As A "Brief In Support Of Motion For Reversal Of Court's Recommendation Of The 25th day of September, 2007."

24.

Respectfully submitted this 29th day of October, 2007.

Roy Lee McAteer 147346

Certificate Of Service

I, Roy Lee McAteer, do hereby certify that I have served a true and correct copy of the foregoing Objection To Recommendation Of Magistrate Judge as well as true and correct copies of plaintiff's exhibits upon the defendants, Bob Riley et. al, by placing same, postage pre paid in the United States Mail.

Done this 29th day of October, 2007.

Roy McAteer 147346
Affiant



Roy Matheer 14234674-37)
565 Nortlage
Abony, AL 35011

Middle District of Alabama
Office of
Clerk, United States District Court
P.O. Box 711
Montgomery, AL 36101-0711

"This correspondence is mailed from
an Alabama State Prison. It has
not been evaluated, and the
Department is not responsible for
the substance or content of the
contents..."

pg.1

<u>Plaintiff's Exhibit A</u>    (Original)

Under CNA. I will be subjected to a Class C felony on April 18th of 2008 when I fail to comply with the mandatory requirement that I provide a verifiable living address.

Well..., the state may as well get the ball rolling now because I unequivocally and unreservedly admit that I have no means which would enable me to comply with this mandatory requirement. I have not spoken with members of my family in almost three years, I have no friends within the State of Alabama, and even if I did have no means to contact them.

The Alabama Dept. of Corrections does not, unlike the Oklahoma Dept. of Corrections, pay me any monies, nor does it allow me the use of telephones so that I might "Might" be able to contact people or agencies which, or who, "Might" provide me assistance. When I was released from prison in Oklahoma on June 25th, 2004, my case manager (Mr. Rich Lawrance Howard McCloud Correctional Facility. Atoka OK.) for literally three days allowed me unrestricted access to phone communication in order to assist me in complying with Oklahoma's CNA requirements. Also, the Oklahoma system of paying inmates had allowed me to accumulate sufficient monies to where (with a small loan) I was able to acquire living accomodations.

I have asked this "Chaplin" here at Bibb County on numerous occasions to allow me access to the phone so that I could "attempt" to establish contact with my family. The policy is, "Only in Emergency".

o  And even if I was able to establish contact, the two members of my family who would help me in this particular emergency, whom I have relied upon in similar situations in years past, are deceased. James David Chanell and

Lisa Elizabeth Channell.

So, what we have here is a dilemma. The burdens and harm "which will be imposed upon me" by the State through the Mandatory Requirements of CNA Legislation, versus the Requirements of Fairness imposed upon the State by the United States Constitution. And, which one wins . . .

Respectfully Submitted this 29th Day of October, 2007.

Roy Lee McAtoor 147346