## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| **ROY LEE MCATEER,** | ) | |
| **#147346** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **VS.** | ) | **CASE NO.: 2:07-CV-692-WKW** |
| | ) | |
| **GOVERNOR BOB RILEY, et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |

## JOINT SPECIAL REPORT

**COMES NOW**, the State of Alabama, by and through **Governor Bob Riley, Attorney General Troy King,** and **the Alabama Department of Public Safety**, and in accordance with this Honorable Court's Order of October 23, 2007, does hereby submit the following Special Report.

## PARTIES

1. The Plaintiff, Roy Lee McAteer (aka "Steve Chaffin"), AIS# 147346, ("Mr. McAteer") is an Alabama Department of Corrections ("ADOC") inmate, who is presently incarcerated at Bibb County Correctional Facility ("Bibb") in Brent, Alabama.

2. Mr. McAteer has named the following Defendants:

   a. Bob Riley ("Governor Riley), Governor of the State of Alabama.

   b. Troy King ("Attorney General King"), Attorney General of the State of Alabama.

c. The Alabama Department of Public Safety ("ADPS").

## PLAINTIFF'S ALLEGATIONS AND DEMANDS

Mr. McAteer seeks declaratory relief and alleges in his complaint that Defendants have violated his constitutional rights. Specifically, Mr. McAteer alleges:

1.  The Act violates the *Bill of Attainder* clause because the "CNA's mandates are impossibly harsh and they are applied without restraint or escapability."

2.  The Act violates the "*Ex Post Facto* clause of Article 1, § 10 of the United States Constitution," because the "CNA and the laws attached to it have increased my punishment beyond that specified at my sentencing."

3.  The Act violates the *Double Jeopardy* clause of the United States Constitution because the CNA "effectively subjected me to a subsequent conviction for a crime which I had already been sentenced."

4.  Ala. Code § 15-20-20, et seq. (1975), otherwise known as "The Community Notification Act" ("the Act") violates Mr. McAteer's *Due Process* rights because application of the Act would deprive Mr. McAteer of life, liberty, property, and reputation.

5.  The Act as applied to him violates the *Equal Protection Clause* of the United States Constitution.

2

6.    The Act as applied to him violates the *Separation of Powers* doctrine.

7.    The Act as applied to him violates the prohibition on *Cruel and Unusual Punishment.*

## DEFENDANTS' EXHIBITS

1.    Exhibit A – Criminal History of Roy Lee McAteer (aka "Steve Chaffin") dated September 12, 2007.

2.    Exhibit B – Setting and Disposition of Sodomy 1st conviction (CC1987 000644) in Tuscaloosa County.

3.    Exhibit C - Pending criminal warrant and Oklahoma Department of Corrections profile of Roy Lee McAteer (aka "Steve Chaffin").

## DEFENDANTS' RESPONSE

1.    Defendants deny violating Mr. McAteer's constitutional rights.

2.    Governor Riley cannot provide the requested relief sought and is not a proper party.

3.    Defendants request that this Honorable Court consider this Special Report as a Motion for Summary Judgment at such time when this Honorable Court sees fit.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the pleadings, affidavits and documents submitted to the court show that there is no genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-250 (1986). Once the movant has established that there is no genuine issue, then the burden shifts to the non-movant to rebut the movant's prima facie showing. Celotex Corp. v. Catrett, 477 U.S. 323 (1986). Unless the non-movant can submit substantial evidence that a genuine issue of material fact does exist, the movant is entitled to summary judgment. Id. Merely submitting restated allegations of the complaint are not sufficient to meet the non-movant's burden. Morisky v. Broward County, 80 F.3d. 445, 448-449 (11th Cir. 1996). This case is ripe for summary judgment because there is no genuine issue of fact to Mr. McAteer's claims and the Defendants are entitled to judgment as a matter of law.

## STATEMENT OF UNDISPUTED FACTS

On July 30, 1987, a then twenty-three-year-old Roy Lee McAteer was indicted for Sodomy 1st in Tuscaloosa County Circuit Court (Ex. B). Mr. McAteer pled guilty to the charge of Sodomy 1st on January 13, 1988, and was sentenced to 15 years imprisonment, split 18 months to serve and given 5 years probation. (Ex. B). However, after this release, Mr. McAteer was subsequently arrested for numerous other offenses, including additional criminal sex offenses, including Sodomy, Sexual

Battery and Failure to Register (Oklahoma) and multiple other counts noted above. (Ex. A).

Mr. McAteer is currently incarcerated at Bibb County Correctional Facility for Burglary III (CC2005-1420) in Montgomery County. He was sentenced to 15 years split 3 years to serve. Moreover, Mr. McAteer also has an outstanding arrest warrant pending in the State of Oklahoma for Larceny (CF-2005-319)(Ex. C). Obviously, the classification as a sex offender and eventual application of the Community Notification Act is properly based on the 1988 conviction for Sodomy, an offense clearly recognized as a registration offense under Ala. Code § 13A-11-200 and now governed by Ala. Code § 15-20-21(4)(b), otherwise known as "The Community Notification Act".

## STANDARD OF REVIEW

The decision to grant or deny a preliminary injunction "is within the sound discretion of the district court...." Palmer v. Braun, 87 F.3d 1325, 1329 (11th Cir. 2002). The four prerequisites which Parker must demonstrate to warrant issuance of a preliminary injunction are: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury without the injunction; (3) that the harm to Parker outweighs the harm to the non-moving parties; and (4) that an injunction would be in the interest of the public. Palmer, 287 F.3d at 1329; Baker v. Buckeye Cellulose Corp., 856 F.2d 167, 169 (11th Cir.1988); Cate v. Oldham, 707 F.2d 1176 (11th Cir. 1983); Shatel Corp. v. Mao Ta Lumber

and Yacht Corp., 697 F.2d 1352 (11th Cir. 1983). "[A] preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the burden of persuasion" as to each of the four prerequisites. *See* McDonald's Corp. v. Robertson, 147 F.3d 1301, 1306 (11th Cir. 1998)(internal citations and quotations omitted); *See also* Texas v. Seatrain Int'l, S.A., 518 F.2d 175, 179 (5th Cir. 1975)(grant of preliminary injunction "is the exception rather than the rule," and movant must clearly carry the burden of persuasion). The moving party's failure to demonstrate a "substantial likelihood of success on the merits" will defeat the party's claim, regardless of the party's ability to establish any of the other elements. Church v. City of Huntsville, 30 F.3d 1332, 1342 (11th Cir. 1994); *See also* Siegel v. Lepore, 234 F.3d 1163, 1176 (11th Cir. 2000) (noting that "the absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper").

## I.    Claims against Governor Riley

Mr. McAteer has failed to state a claim upon which relief may be granted against Governor Bob Riley. The Act does not refer in any way to the Governor. *See* Ala Code § 15-20-20 et.seq. Despite Mr. McAteer's assertions, the Governor is not responsible for facilitating Mr. McAteer's registration with the ADPS prior to his release. Therefore, Mr. McAteer has no claim against Governor Bob Riley.

## II.    Claims against Attorney General King and the Alabama Department of Public Safety.

Moreover, Mr. McAteer has failed to state a claim against Attorney General Troy King and the Department of Public Safety upon which relief may be granted. To be successful in this action, Mr. McAteer must show that he "has sustained, or is in immediate danger of sustaining, a direct injury as the result of that act." National Viatical, Inc. v. Oxendine, 2006 WL 1071839, *5 (11th Cir. 2006) (citing National Advertising Co. v. City of Miami, 402 F.3d 1335, 1339 (11th Cir. 2005). Currently, Mr. McAteer is not immediately due to be released until June 3, 2008. Indeed, if Mr. McAteer refuses to properly register and notify of his intended address as a sex offender in the future, he will be subject to additional and separate charges. Ala. Code § 15-20-22(a) (1). Until then, Mr. McAteer cannot be in violation of the Act. Ala. Code §15-20-22.  The Attorney General will not prosecute Mr. McAteer for a crime that he has yet to commit. Therefore, Mr. McAteer's claims against Attorney General Troy King and ADPS are not ripe.  Assuming arguendo, for the following reasons, Mr. McAteer's claims are due to be denied:

## ARGUMENT OF FACT AND LAW

From the outset, the State asserts that all legislative enactments, including the Community Notification Act ("the Act"), are presumed to be constitutional.  Town of Vance v. City of Tuscaloosa, 661 So. 2d 739, 742

(Ala. 1995).    In <u>Home Indemnity Co. v. Anders</u>, 459 So.2d 836 (Ala.1984), the Alabama Supreme Court stated:

> "In determining whether [an] act is constitutional, we are bound by the following presumption:
>
> > "'[I]n passing upon the constitutionality of a legislative act, the courts uniformly approach the question with every presumption and intendment in favor of its validity, and seek to sustain rather than strike down the enactment of a coordinate branch of government.  All these principles are embraced in the simple statement that it is the recognized duty of the court to sustain the act unless it is clear beyond reasonable doubt that it is violative of the fundamental law.'"

459 So.2d at 840.

In his complaint, the Plaintiff contends that the Act violates the Bill of Attainder, Ex Post Facto, Double Jeopardy, Due Process, Equal Protection, Separation of Powers and Cruel and Unusual Punishment clauses/doctrines of the United States Constitution.   These contentions, however, are untenable in the light of existing law.

**I.    The Community Notification Act does not violate the Bill of Attainder, Ex Post Facto, or the Double Jeopardy Clauses of the United States Constitution.**

Mr. McAteer erroneously contends that the Community Notification Act imposes unconstitutional punishment under the Bill of Attainder and Ex Post Facto Clauses and that application of the Act violates his rights to be free from double jeopardy.  The Ex Post Facto Clause directs that the government may not apply a law retroactively that inflicts a greater punishment, than the law annexed to the crime, when committed." <u>Calder</u>

v. Bull, 3 U.S. 386, 390, 1 L.Ed. 648 (1798).  Under the Bill of Attainder Clause, legislatures are forbidden to engage in "[l]egislative acts, no matter what their form, that apply either to named individuals or to easily ascertainable members of a group in such a way as to inflict punishment on them without a judicial trial."  United States v. Brown, 381 U.S. 437, 448-49, 85 S.Ct. 1707, 1715 (1965).

McAteer also asserts that the Alabama Community Notification Act subjects him to double jeopardy as it inflicts a second punishment for a single offense.  In support of this claim, McAteer maintains that the registration and notification requirements constitute "historical shaming". (*See Plaintiff's Amended Complaint* at 12-13).  He further complains that failure to comply with the requirements of the Act is a felony offense for which he may be prosecuted.

> The Double Jeopardy Clause provides that no "person [shall] be subject for the same offence to be twice put in jeopardy of life or limb."  We have long recognized that the Double Jeopardy Clause does not prohibit the imposition of *99 all additional sanctions that could, "in common parlance,'" be described as punishment.  *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 549, 63 S.Ct. 379, 387, 87 L.Ed. 443(1943)(quoting *Moore v Illinois*, 14 How. 13, 19, 14 L.Ed. 306 (1852)).  The Clause protects only against the imposition of multiple *criminal* punishments for the same offense, *Helvering v. Mitchell*, 303 U.S. 391, 399, 58 S.Ct. 630, 633, 82 L.Ed. 917 (1938); *see also Hess, supra,* at 548-549, 63 S.Ct., at 386-387 ("Only" "criminal punishment" "subject[s] the defendant to 'jeopardy' within the constitutional mean-ing"); *Breed v. Jones*, 421 U.S. 519, 528, 95 S.Ct. 1779, 1785, 44 L.Ed.2d 346 (1975)("in the constitutional sense, jeopardy describes the risk that is traditionally associated with a criminal prosecution"), and then only when such occurs in successive proceedings, *see Missouri v. Hunter*, 459 U.S. 359, 366, 103 S.Ct. 673, 678, 74

L.Ed.2d 535 (1983). *Hudson v. United States*, 522 U.S. 93, 98-99, 118 S.Ct. 488, 493 (1997).

Since imposition of additional punishment upon McAteer under the Act is an essential element to the Bill of Attainder, Ex Post Facto, and Double Jeopardy arguments pending in this case, the State will therefore subject these arguments to the same analysis.

Upon review of McAteer's Bill of Attainder, Ex Post Facto, and Double Jeopardy arguments, this Honorable Court should find the opinion issued in Smith v. Doe, *supra*, dispositive. In Smith, the Court addressed an ex post facto challenge to the Alaska Sex Offender Registration Act, an Act strikingly similar to the Alabama Community Notification Act in its registration and notification requirements, brought by individuals convicted of sex offenses prior to passage of the Alaska Act. Specifically, the Court "considered a claim that a sex offender registration and notification law constitutes retroactive punishment forbidden by the Ex Post Facto Clause." 538 U.S. at 92, 123 S.Ct. at 1147. The Court determined that "[tlhe [Alaska] Act is nonpunitive, and its retroactive application does not violate the Ex Post Facto Clause." *Id*. at 538 U.S. at 105-106, 123 S.Ct. at 1154. The relevant portion of this opinion reads as follows:

> We must "ascertain whether the legislature meant the statute to establish 'civil' proceedings." *Kansas v. Hendricks,* 21 U.S. 346, 361, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997). If the intention of the legislature was to impose punishment, that ends the inquiry. If, however, the intention was to enact a regulatory scheme that is civil and nonpunitive, we must further examine whether the statutory scheme is " 'so punitive either in purpose or effect as to negate [the State's] intention' to deem it 'civil.' " *Ibid*. (quoting

*United States v. Ward*, 448 U.S. 242, 248-249, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980)). Because we "ordinarily defer to the legislature's stated intent," *Hendricks, supra,* at 361, 117 S.Ct. 2072," 'only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty," *Hudson v. United States*, 522 U.S. 93, 100, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997) (quoting *Ward, supra*, at 249, 100 S.Ct. 2636); *see also Hendricks, supra*, at 361, 117 S.Ct 2072; *United States v. Ursery*, 518 U.S. 267,290, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996); *United States v. One Assortment of 89 Firearms*, 465 U.S. 354,365, 104 S.Ct. 1099, 79 L.Ed.2d 361 (1984). Whether a statutory scheme is civil or criminal "is first of all a question of statutory construction." *Hendricks, supra*, at 361,117 S.Ct. 2072 (internal quotation marks omitted); *see also Hudson, supra*, at 99, 118 S.Ct.488. We consider the statute's text and its structure to determine the legislative objective. *Flemming v Nester*,363 U.S. 603,617,80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960). A conclusion that the legislature intended to punish would satisfy an ex post facto challenge without further inquiry into its effects, so considerable deference must be accorded to the intent as the legislature has stated it.

     The courts "must first ask whether the legislature, in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other." *Hudson, supra*, at 99, 118 S.Ct. 488 (internal quotation marks omitted). Here, the Alaska Legislature expressed the objective of the law in the statutory text itself. The legislature found that "sex offenders pose a high risk of reoffending," and identified "protecting the public from sex offenders" as the "primary governmental interest" of the law. 1994 Alaska Sess. Laws ch. 41, 5 1. The legislature further determined that "release of certain information about sex offenders to public agencies and the general public will assist in protecting the public safety." *Ibid*. As we observed in *Hendricks*, where we examined an ex post facto challenge to a post incarceration confinement of sex offenders, an imposition of restrictive measures on sex offenders adjudged to be dangerous is "a legitimate nonpunitive governmental objective and has been historically so regarded." 521 US., at 363, 117 S.Ct. 2072. In this case, as in *Hendricks*,"[n]othing on the face of the statute suggests that the legislature sought to create anything other than a civil ... scheme designed to protect the public from harm." *Id*.,at 361, 117 S.Ct. 2072.

     Other formal attributes of a legislative enactment, such as the manner of its codification or the enforcement procedures it establishes, are probative of the legislature's intent. *See Hendricks, supra*, at 361, 117 S.Ct. 2072; *Hudson, supra*, at 103, 118 S.Ct. 488; 89 *Firearms, supra*, at 363, 104 S.Ct. 1099. In this case these factors are open to debate. The notification provisions of the Act are codified in the State's "Health, Safety, and Housing Code," 5 18, confirming our conclusion that the statute was intended as a nonpunitive regulatory measure. *Cf. Hendricks, supra*, at 361,117 S.Ct. 2072 (the State's "objective to create a civil

proceeding is evidenced by its placement of the Act within the [State's probate code, instead of the criminal code" (citations omitted)). The Act's registration provisions, however, are codified in the State's criminal procedure code, and so might seem to point in the opposite direction. These factors, though, are not dispositive. The location and labels of a statutory provision do not by themselves transform a civil remedy into a criminal one. In *89 Firearms*, the Court held a forfeiture provision to be a civil sanction even though the authorizing statute was in the criminal code. 465 U.S., at 364-365, 104 S.Ct. 1099. The Court rejected the argument that the placement demonstrated Congress' "intention to create an additional criminal sanction." observing that "both criminal and civil sanctions may be labeled 'penalties.' "*Id*., at 364, n. 6, 104 S.Ct. 1099.

In analyzing the effects of the Act we refer to the seven factors noted in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-169, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963), as a useful framework. These factors, which migrated into our ex post facto case law from double jeopardy jurisprudence, have their earlier origins in cases under the Sixth and Eighth Amendments, as well as the Bill of Attainder and the Ex Post Facto Clauses. *See id*., at 168-169, and 83 S.Ct. 554. Because the Mendoza-Martinez factors are designed to apply in various constitutional contexts, we have said they are "neither exhaustive nor dispositive," *United States v. Ward*, 448 U.S., at 249, 100 S.Ct. 2636; *89 Firearms*, 465 U.S., at 365, n. 7, 104 S.Ct. 1099, but are "useful guideposts," *Hudson*, 522 U.S., at 99, 118 S.Ct 488. The factors most relevant to our analysis are whether, in its necessary operation, the regulatory scheme: has been regarded in our history and traditions as a punishment; imposes an affirmative disability or restraint; promotes the traditional aims of punishment; has a rational connection to a nonpunitive purpose; or is excessive with respect to this purpose.

By contrast [to early colonial punishments], the stigma of Alaska's Megan's Law results not from public display for ridicule and shaming but from the dissemination of accurate information about a criminal record, most of which is already public. Our system does not treat dissemination of truthful information in furtherance of a legitimate governmental objective as punishment. On the contrary, our criminal law tradition insists on public indictment, public trial, and public imposition of sentence. Transparency is essential to maintaining public respect for the criminal justice system, ensuring its integrity, and protecting the rights of the accused. The publicity may cause adverse consequences for the convicted defendant, running from mild personal embarrassment to social ostracism. In contrast to the colonial shaming punishments, however, the State does not make the publicity and the resulting stigma an integral part of the objective of the regulatory scheme.

The fact that Alaska posts the information on the Internet does not alter our conclusion. It must be acknowledged that notice of a criminal conviction subjects the offender to public shame, the humiliation

increasing in proportion to the extent of the publicity. And the geographic reach of the Internet is greater than anything which could have been designed in colonial times. These facts do not render Internet notification punitive. The purpose and the principal effect of notification are to inform the public for its own safety, not to humiliate the offender. Widespread public access is necessary for the efficacy of the scheme, and the attendant humiliation is but a collateral consequence of a valid regulation.

The State's Web site does not provide the public with means to shame the offender by, say, posting comments underneath his record. An individual seeking the information must take the initial step of going to the Department of Public Safety's Web site, proceed to the sex offender registry, and then look up the desired information. The process is more analogous to a visit to an official archive of criminal records than it is to a scheme forcing an offender to appear in public with some visible badge of past criminality. The Internet makes the document search more efficient, cost effective, and convenient for Alaska's citizenry.

We next consider whether the Act subjects respondents to an "affirmative disability or restraint." *Mendoza-Martinez, supra*, at 168, 83 S.Ct. 554. Here, we inquire how the effects of the Act are felt by those subject to it. If the disability or restraint is minor and indirect, its effects are unlikely to be punitive.

The Act imposes no physical restraint, and so does not resemble the punishment of imprisonment, which is the paradigmatic affirmative disability or restraint. *Hudson*, 22 U.S., at 104, 118 S.Ct. 488. The Act's obligations are less harsh than the sanctions of occupational debarment, which we have held to be nonpunitive. *See ibid*. (forbidding further participation in the banking industry); *De Veau v. Braisted*, 363 U.S. 144, 80 S.Ct 1 146, 4 L.Ed.2d 1109 (1960) (forbidding work as a union official); *Hawker v. New York*, 170 U.S. 189, 18 S.Ct. 573, 42 L.Ed. 1002 (1898) (revocation of a medical license). The Act does not restrain activities sex offenders may pursue but leaves them free to change jobs or residences.

The Court of Appeals sought to distinguish Hawker and cases which have followed it on the grounds that the disability at issue there was specific and "narrow," confined to particular professions, whereas "the procedures employed under the Alaska statute are likely to make [respondents] completely *completely unemployable* because "employers will not want to risk loss of business when the public learns that they have hired sex offenders." 259 F.3d, at 988. This is conjecture. Landlords and employers could conduct background checks on the criminal records of prospective employees or tenants even with the Act not in force. The record in this case contains no evidence that the Act has led to substantial occupational or housing disadvantages for former sex offenders that would not have otherwise occurred through the use of routine background checks by employers and landlords. The Court of Appeals identified only one incident from the 7-year history of Alaska's law where a sex offender

suffered community hostility and damage to his business after the information he submitted to the registry became public. *Id.*, at 987-988. This could have occurred in any event, because the information about the individual's conviction was already in the public domain.

Although the public availability of the information may have a lasting and painful impact on the convicted sex offender, these consequences flow not from the Act's registration and dissemination provisions, but from the fact of conviction, already a matter of public record. The State makes the facts underlying the offenses and the resulting convictions accessible so members of the public can take the precautions they deem necessary before dealing with the registrant.

The Court of Appeals held that the registration system is parallel to probation or supervised release in terms of the restraint imposed. 259 F.3d, at 987. This argument has some force, but, after due consideration, we reject it. Probation and supervised release entail a series of mandatory conditions and allow the supervising officer to seek the revocation of probation or release in case of infraction. See generally *Johnson v. United States*, 529 U.S. 694,120 S.Ct. 1795,146 L.Ed.2d 727 (2000); *Griffin v. Wisconsin*, 483 U.S. 868, 107 S.Ct 3164,97 L.Ed.2d 709 (1987). By contrast, offenders subject to the Alaska statute are free to move where they wish and to live and work as other citizens, with no supervision. Although registrants must inform the authorities after they change their facial features (such as growing a beard), borrow a car, or seek psychiatric treatment, they are not required to seek permission to do so. A sex offender who fails to comply with the reporting requirement may be subjected to a criminal prosecution for that failure, but any prosecution is a proceeding separate from the individual's original offense. Whether other constitutional objections can be raised to a mandatory reporting requirement, and how those questions might be resolved, are concerns beyond the scope of this opinion. It suffices to say the registration requirements make a valid regulatory program effective and do not impose punitive restraints in violation of the Ex Post Facto Clause.

The State concedes that the statute might deter future crimes. Respondents seize on this proposition to argue that the law is punitive, because deterrence is one purpose of punishment. *Brief for Respondents 37.*

This proves too much. Any number of governmental programs might deter crime without imposing punishment. "To hold that the mere presence of a deterrent purpose renders such sanctions 'criminal' ... would severely undermine the Government's ability to engage in effective regulation." *Hudson, supra*, at 105,118 S.Ct. 488; *see also Ursery*,518 U.S., at 292,116 S.Ct. 2135; 89 *Firearms*, 465 U.S., at 364, 104 S.Ct. 1099.

The Court of Appeals was incorrect to conclude that the Act's registration obligations were retributive because "the length of the reporting requirement appears to be measured by the extent of the

wrongdoing, not by the extent of the risk posed." 259 F.3d, at 990. The Act, it is true, differentiates between individuals convicted of aggravated or multiple offenses and those convicted of a single nonaggravated offense. Alaska Stat. 12.63.020(a)(l) (2000). The broad categories, however, and the corresponding length of the reporting requirement, are reasonably related to the danger of recidivism, and this is consistent with the regulatory objective.

The Act's rational connection to a nonpunitive purpose is a "[m]ost significant" factor in our determination that the statute's effects are not punitive. *Ursery, supra*, at 290, 116 S.Ct. 2135. As the Court of Appeals acknowledged, the Act has a legitimate nonpunitive purpose of "public safety, which is advanced by alerting the public to the risk of sex offenders in their communit[y]." 259 F.3d, at 991. Respondents concede, in turn, that "this alternative purpose is valid, and rational." Brief for Respondents 38. They contend, however, that the Act lacks the necessary regulatory connection because it is not "narrowly drawn to accomplish the stated purpose." *Ibid.* A statute is not deemed punitive simply because it lacks a close or perfect fit with the nonpunitive aims it seeks to advance. The imprecision respondents rely upon does not suggest that the Act's nonpunitive purpose is a "sham or mere pretext." *Hendricks*, 521 U.S., at 371, 117 S.Ct 2072 (KENNEDY, J., concurring).

In concluding the Act was excessive in relation to its regulatory purpose, the Court of Appeals relied in large part on two propositions: first, that the statute applies to all convicted sex offenders without regard to their future dangerousness; and, second, that it places no limits on the number of persons who have access to the information. 259 F.3d, at 991-992. Neither argument is persuasive. Alaska could conclude that a conviction for a sex offense provides evidence of substantial risk of recidivism. The legislature's findings are consistent with grave concerns over the high rate of recidivism among convicted sex offenders and their dangerousness as a class. The risk of recidivism posed by sex offenders is "frightening and high." *McKune v. Lile*, 536 U.S. 24, 34, 122 S.Ct. 2017, 153 L.Ed.2d 47 (2002); *see also id*, at 33, 122 S.Ct. 2017 ("When convicted sex offenders reenter society, they are much more likely than any other type of offender to he rearrested for a new rape or sexual assault" (citing U.S. Dept. of Justice, Bureau of Justice Statistics, Sex Offenses and Offenders 27 (1997); U.S. Dept. of Justice, Bureau of Justice Statistics, Recidivism of Prisoners Released in 1983, p. 6(1997))).

The Ex Post Facto Clause does not preclude a State from making reasonable categorical judgments that conviction of specified crimes should entail particular regulatory consequences. We have upheld against ex post facto challenges laws imposing regulatory burdens on individuals convicted of crimes without any corresponding risk assessment. *See De Veau*, 363 U.S., at 160, 80 S.Ct. 1146; *Hawker*, 170 US., at 197, 18 S.Ct. 573. As stated in *Hawker*: "Doubtless, one who has violated the criminal law may thereafter reform and become in fact possessed of a good moral

character. But the legislature has power in cases of this kind to make a rule of universal application" *Ibid*. The State's determination to legislate with respect to convicted sex offenders as a class, rather than require individual determination of their dangerousness, does not make the statute a punishment under the Ex Post Facto Clause.

Our decision in *Hendricks*, on which respondents rely, Brief for Respondents 39, is not to the contrary. The State's objective in *Hendricks* was involuntary (and potentially indefinite) confinement of "particularly dangerous individuals." 521 U.S., at 357-358, 364, 117 S.Ct. 2072. The magnitude of the restraint made individual assessment appropriate. The Act, by contrast, imposes the more minor condition of registration. In the context of the regulatory scheme the State can dispense with individual predictions of future dangerousness and allow the public to assess the risk on the basis of accurate, nonprivate information about the registrants' convictions without violating the prohibitions of the Ex Post Facto Clause. The duration of the reporting requirements is not excessive. Empirical research on child molesters, for instance, has shown that, "[contrary to conventional wisdom, most reoffenses do not occur within the first several years after release," but may occur "as late as 20 years following release." National Institute of Justice, R. Prentky, R. Knight, &A. Lee, U.S. Dept. of Justice, Child Sexual Molestation: Research Issues 14 (1997).

The Court of Appeals' reliance on the wide dissemination of the information is also unavailing. The Ninth Circuit highlighted that the information was available "world-wide" and "[b]roadcas[t]" in an indiscriminate manner. 259 F.3d, at 992. As we have explained, however, the notification system is a passive one: An individual must seek access to the information. The Web site warns that the use of displayed information "to commit a criminal act against another person is subject to criminal prosecution http:// www.dps.state.ak.us/nSorcr/asp/ (as visited Jan. 17, 2003) (available in the Clerk of Court's case file). Given the general mobility of our population, for Alaska to make its registry system available and easily accessible throughout the State was not so excessive a regulatory requirement as to become a punishment. See D. Schram & C. Milloy, Community Notification: A Study of Offender Characteristics and Recidivism 13 (1995) (38% of recidivist sex offenses in the State of Washington took place in jurisdictions other than where the previous offense was committed). The excessiveness inquiry of our ex post facto jurisprudence is not an exercise in determining whether the legislature has made the best choice possible to address the problem it seeks to remedy. The question is whether the regulatory means chosen are reasonable in light of the nonpunitive objective. The Act meets this standard. The two remaining *Mendoza-Martinez* factors-whether the regulation comes into play only on a finding of scienter and whether the behavior to which it applies is already a crime-are of little weight in this case. The regulatory scheme applies only to past conduct, which was, and is, a crime. This is a necessary beginning point, for recidivism is the statutory concern. The

obligations the statute imposes are the responsibility of registration, a duty not predicated upon some present or repeated violation.

Our examination of the Act's effects leads to the determination that respondents cannot show, much less by the clearest proof, that the effects of the law negate Alaska's intention to establish a civil regulatory scheme. The Act is nonpunitive, and its retroactive application does not violate the Ex Post Facto Clause. *Smith*, 38 U.S. at 92-106, 123 S.Ct. 1146-1154.

Moreover, in this instance, the preamble to Alabama's Community Notification Act clearly defines and sets out what the Alabama Legislature intended when it enacted the statute. "A person convicted of a criminal sex offense [listed in § 15-20-21(4)], including a person who has pleaded nolo contendere to a criminal sex offense, regardless of whether adjudication was withheld" is considered an **adult criminal sex offender** under Alabama law subject to the Act's registration, notification, residency and employment provisions upon his release into society. Ala. Code § 15-20-21(1)."

The statute identifies "criminal sex offense" as any of the following offenses: rape, ***sodomy***, sexual torture, sexual abuse, enticing a child for immoral purposes, promoting prostitution, violation of the Alabama Child Pornography Act: kidnapping of a minor (except by a parent), incest (when the offender is an adult and the victim is a minor), and soliciting a child by computer for purposes of committing a sexual act and transmitting obscene material to a child by computer in violation of the criminal code. Ala. Code § 15-20-21(4) a-j (emphasis added). "Any solicitation, attempt, or conspiracy to commit any of the [aforementioned] offenses" is likewise a "criminal sex offense" under the Community

17

Notification Act, Ala. Code § 15-20-21(4) k., as is "[any crime committed [in another] jurisdiction, which, if it had been committed in this state under the current provisions of law, would constitute an offense" defined in the Alabama Community Notification Act as a criminal sex offense. Ala. Code § 15-20-21(4) (1).

Moreover, the legislature stated, "The Legislature declares that its intent in imposing certain reporting and monitoring requirements on criminal sex offenders and requiring community notification of the residence and workplace of criminal sex offenders is to protect the public, especially children, from convicted criminal sex offenders." Ala. Code § 15-20-20.1 Moreover, the preamble also states that the Community Notification Act was intended both as *a civil regulatory* measure to serve as a tracking tool for law enforcement agencies in the investigation of criminal sex offenders. Therefore, the primary purpose of the notification provisions is the establishment of a civil regulatory scheme to facilitate the disclosure of information to law enforcement about sex offenders so that the community can protect itself and its children and to not further punish.

The plaintiff must proffer "the clearest proof" needed to demonstrate that the Community Notification Act is so punitive in purpose or effect as to negate the legislature's expressed intention. In this instance, the plaintiff has failed to do so. In fact, he has not made any allegations whatsoever that would support a determination that the

Community Notification Act indeed has such a pervasive punitive effect. The Plaintiff suggests that the "CNA's mandates are impossibly harsh and they are applied without restraint or escapability." (*See Plaintiff's Complaint*, Section IV, p. 3).   An adult criminal sex offender has a reduced expectation of privacy.   The Act is not intended to allow for "escapability" and despite the plaintiff's suggestions, does not stigmatize for punishment. By contrast, any stigma of the Community Notification Act results not from public display for ridicule and shaming but from the dissemination of accurate information about the offender's own criminal record, most of which is already public.   The dissemination of truthful information in furtherance of a legitimate governmental objective is not punishment.   To the contrary, as noted in <u>Smith</u>, our system requires a public indictment, a public trial, and a public imposition of sentence, all of which the Mr. McAteer has previously received.

The plaintiff erroneously and repeatedly suggests in all of his arguments that the State of Alabama has deemed him "mentally ill".   (*See Plaintiff's Amended Complaint,* pp.4, 5, 7, 15, 16, 17, 18, 19, 20, 21). The plaintiff fails to distinguish between his classification as an "Adult Criminal Sex Offender" (*See* Section 15-20-21(1)) and that of a "Sexually Violent Predator" (*See* Section 15-20-21(15)).

Virtually every court, including Alabama, that has addressed the issue of whether community notification statutes are Ex Post Facto laws has applied the analysis employed in <u>Smith</u>, and has reached the

conclusion that such legislative acts, which are designed to give the public notice of sex offenders in their communities, are not unconstitutional.[1]

Indeed, Alabama's Community Notification Act is a remedial and regulatory statute, not a punitive one. In the context of the regulatory scheme the State can dispense with individual predictions of future dangerousness and allow the public to assess the risk on the basis of accurate, nonprivate information about the offender's convictions without violating the prohibitions of the Ex Post Facto Clause.

The legislature did not act with punitive intent, and any arguably punitive impact on those persons subject to the provisions of the Community Notification Act is simply an incidental consequence of the statute's remedial provisions. Although some consequences may result from the enforcement of the Community Notification Act, that alone does not render it an ex post facto law, nor does it otherwise make the Act unconstitutional. The legislature's intent was not to punish an individual for past activity. Rather, the legislature intended to create a regulatory scheme, and the "restriction of [any] individual comes about as a relevant

---

[1] Arizona Dept. of Public Safety v. Superior Court, 949 P. 2d 983 (Ariz. Ct. App. 1997); People v. Fioretti, 63 Cal. Rptr. 2d 367 (Cal. Ct. App. 1997); Ortega v. State, 712 So. 2d 833 (Fla. Dist. Ct. App. 1998); State v. Costello, 643 A.2d 531 (N.H. 1994) People v. Starnes, 653 N.E. 2d 4, 210 (Ill. App. Ct. 1995); State v. Pickens, 558 N.W. 2d 396 (Iowa 1997); State v. Hemby, 957 P. 2d 428 (Kan. 1998); Doe v. Attorney General, 686 N.E.2d 1007 (Mass. 1997); State v. Manning, 532 N.W. 2d 244 (Minn. Ct. App. 1995); In re Parolee, 668 N.Y.S. 2d 53 (N.Y. App. Div. 1998); M.G. v. Travis, 667 N.Y.S. 2d 11 (N.Y. App. Div. 1997); State v. Bruns, 1998 WL 412451 (Ohio Ct. App. Jul 24, 1998); Williford v. Board of Parole and Post-Prison Supervision, 904 P. 2d 1074 (Or. Ct. App. 1995); Commonwealth. v. Mountain, 711 A.2d 473 (Pa. Super. Ct. 1998); Commonwealth. v. Gaffney, 702 A. 2d 565 (Pa. Super. Ct. 1997); Perez v. State, 938 S.W. 2d 761 (Tex. Crim. App. 1997; Kitze v. Commonwealth, 475 S.E. 2d 830 (Va. Ct. App. 1996); Snyder v. State, 912 P. 2d 1127 (Wyo. 1996); State v. Ward, 869 P. 2d 1062 (Wash. 1994).

incident to a regulation of a present situation." De Veau v. Braisted, 363 U.S. 144, 160, 80 S.Ct. 1146, 1155 (1960).

Moreover, as the Court in Smith noted, "[a] sex offender who fails to comply with the reporting requirement may be subjected to a criminal prosecution for that failure, *but any prosecution is a proceeding separate from the individual's original offense."* Smith, 38 U.S. at 101-102, 123 S.Ct. at 1152 (emphasis added). Thus, a separate prosecution for violation of the Act's registration and notification provisions and, consequently, any punishment imposed as a result of this prosecution do not implicate double jeopardy.

Therefore, based on established case law, including the United States Supreme Court's decision issued in Smith, this Honorable Court should conclude that Mr. McAteer cannot establish a substantial likelihood of success on the merits of his ex post facto, bill of attainder or double jeopardy claims as the registration and notification provisions of the Alabama Community Notification Act do not constitute "punishment" prohibited by the constitutional directives on which McAteer relies. Moreover, the issuance of a preliminary injunction would not be in the best interest of the public

**II.    The Plaintiff has no right to individualized procedural due process prior to enforcement of the Community Notification Act.**

The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides that no state "shall deprive any person of life, liberty, or property without due process of law."  To succeed on his procedural due process claim, McAteer must establish that (1) the Community Notification Act deprives him of a protected liberty interest, and (2) the procedures accompanying the deprivation are constitutionally inadequate.  Kentucky Department of Corrections v. Thompson, 490 U.S. 454, 460, 109 S.Ct. 1904, 1908 (1989).   Under the facts of this case, this Court should find plaintiff has failed to demonstrate a likelihood of success on the merits of his claim that the Act deprives him of a protected liberty or property interest in violation of his due process rights.

McAteer asserts that the Community Notification Act imposes prohibitions and restrictions on liberty, freedom, pursuit of happiness, rights of close family associations, property rights, and economic rights retroactively for a past criminal conviction.  McAteer further maintains that his conviction for Sodomy should not be considered a criminal sex offense within the directives of the Alabama Community Notification Act as this offense occurred years prior to enactment of the statute.  McAteer therefore argues that application of the Community Notification Act based on this offense will deprive him of his constitutional right to privacy in that public dissemination of his personal information will damage his reputation, prevent him from establishing a residence of his choice,

negatively affect his ability to purchase property, and adversely impact his ability to secure employment.

McAteer's assertions that his conviction for Sodomy is not a criminal conviction subject to the Alabama Community Notification Act is without merit as the Act by its specific and express terms applies to a person convicted of Sodomy. *See Ala. Code* § 15-20-21(4)(b). The legislature therefore decided that all adults convicted of criminal sex offenses, including Sodomy, are subject to registration and notification under the Act, regardless of the date of their conviction. Consequently, procedural due process requirements with respect to such offenses are met through the original criminal proceedings that resulted in the conviction. Connecticut Department of Public Safety v. Doe, 538 U.S. 1, 7, 123 S.Ct. 1160, 1164 (2003).

Moreover, substantive due process does not appear to be implicated as McAteer has failed to demonstrate the existence of a legitimate privacy interest in preventing compilation and dissemination of accurate information that is already, albeit less conveniently, available in the public domain. In Smith v. Doe, 538 U.S. 84, 123 S.Ct. 1140 (2003), the Court stated: 'The purpose and the principal effect of notification are to inform the public for its own safety, not to humiliate the offender. Widespread public access is necessary for the efficacy of the scheme, and the attendant humiliation is but a collateral consequence of a valid regulation.'" Smith, 538 U.S. at [99], 123 S.Ct. at 1150 (2003).

In light of the foregoing, the State submits that there is no genuine issue of material fact and there is not a reasonable likelihood that McAteer will succeed on the merits of his due process claims or that the issuance of a preliminary injunction would be in the best interest of the public

**III.    The Act does not violate the Equal Protection Clause of the United States Constitution.**

McAteer complains that the application of the Community Notification Act to him is violative of equal protection because it denies him privileges and immunities secured by the Constitution.  In order to allege a claim cognizable under the Equal Protection Clause, a plaintiff must, at the very least, state that he is similarly situated with other persons who received differential treatment and that the basis for such treatment was race, religion, national origin, poverty or some other constitutionally protected interest.  <u>Jones v. Ray</u>, 279 F.3d944, 947 (11th Cir. 1986).  McAteer has failed to identify any similarly situated inmate who has been treated differently under the Act.

**IV.    The Act does not violate the Separation of Powers doctrine.**

McAteer complains that the Alabama Judiciary and the Alabama Attorney General have given the Act retroactive language the Act does not possess in violation of the separation of powers doctrine, when the Act is applied retroactively for a criminal conviction occurring years prior to the Act.  This claim is without factual basis.  The express provisions of the

Alabama Community Notification Act direct that the Act applies to any "person convicted of a criminal sex offense…" *Ala. Code* § 15-20-21(1).

**V.    The Community Notification Act does not violate Mr. McAteer's Eighth Amendment right to be free from cruel and unusual punishment.**

Mr. McAteer claims the Community Notification Act violates his Eighth Amendment right to be free from cruel and unusual punishment. The Act is reasonably related to its regulatory purpose and is not punitive. Therefore, in view of our conclusion that the statute is not punitive, it follows that the law is not "cruel and unusual punishment" in violation of the Eighth Amendment.  In <u>Smith v. Doe</u>, 538 U.S. 84, 86, 123 S.Ct. 1140 (2002), the United States Supreme Court addressed this issue and stated as follows:

> First, the regulatory scheme, in its necessary operation, has not been regarded in the Nation's history and traditions as a punishment.  The fact that sex offender registration and notification statutes are of fairly recent origin suggests that the Act was not meant as a punitive measure, or, at least, that it did not involve traditional means of punishing.

538 U.S. at 86, 123 S.Ct. at 1144.

The United States Supreme Court has set forth the standards used to determine such a violation, however.  "The standards for judging whether a sentence amounts to cruel and unusual punishment are whether the conditions of confinement shock the conscience, whether the sentence is greatly disproportionate to the offense, or whether it offends evolving notions of decency." <u>U.S. v. Gamboa</u>, 543 F. 2d 545, 548 (5th Cir. 1976).

Courts determine if a punishment is "cruel and unusual" under evolving standards of decency. Atkins v. Va., 536 U.S. 304, 322 (2002); Trop v. Dulles, 356 U.S. 86, 101 (1958). Legislation is the "clearest and most reliable objective evidence of contemporary values." Penry v. Lynaugh, 492 U.S. 302, 331 (1989). "Judgments about the appropriate punishment for an offense belong in the first instance to the legislature." U.S. v. Bajakajian, 524 U.S. 321, 336 (1998). "Reviewing courts...should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes." Solem v. Helm, 463 U.S. 277, 290 (1983). "The legislature selects the range of punishments" and it is the duty of the courts to "uphold the legislature if there is any rational basis for so doing." Rummel v. Estelle, 587 F.2d 651, 655 (5th Cir. 1978) (recidivist statute mandating a life sentence to repeat offenders is not unconstitutional even if the offenses were nonviolent). A petitioner does not discharge his burden because he would be treated better in another state or can come up with a more rational system than the one adopted by the legislature. Rummel, 587 F.2d at 655.

As noted, the preamble to Alabama's Community Notification Act clearly sets out what the Alabama Legislature intended when it enacted the statute. There, the legislature stated that it acted due to the "danger of recidivism posed by criminal sex offenders." Ala. Code § 15-20-20.1. Moreover, Section 13A-11-200(a) of the Code states, "The Legislature

declares that its intent in imposing certain reporting and registration requirements on criminal sex offenders is to protect the public, especially children, from the dangers posed by criminal sex offenders and ***not to further punish such offenders***." Ala. Code § 13A-11-200(a)(emphasis added).

"If the amount of the forfeiture is grossly disproportional to the gravity of the defendant's offense, it is unconstitutional." <u>Bajakajian</u>, 524 U.S. at 337. Proportionality analysis is "guided by objective criteria, including (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentence imposed for commission of the same crime in other jurisdictions." <u>Solem v. Helm</u>, 463 U.S. 277, 292 (1983). In this instance, the gravity of Mr. McAteer's offense, Sodomy, warrants certain restrictions. Persons found to have committed a sex offense have a reduced expectation of privacy because of the public's interest in safety and in the effective operation of government. In balancing offender's due process and other rights, and the interests of public security, the Legislature has found that releasing information about criminal sex offenders to law enforcement agencies and, providing access to or releasing such information about criminal sex offenders to the general public, will further the primary government interest of protecting vulnerable populations and in some instances the public, from potential harm. Moreover, residency, employment, association, and loitering

restrictions for criminal sex offenders provide additional protections to vulnerable segments of the public such as schools and child care facilities.  "Outside the context of capital punishment, successful challenges to the proportionality of particular sentences [will be] exceedingly rare." *Id*. at 289-90.

In his complaint, Mr. McAteer decries the conditions of his confinement.  Specifically, he suggests that his status as a convicted criminal sex offender means, "I will be told when to eat and what to eat. I will be told where to sleep and when to sleep.  I will be housed in an overcrowded box and be treated like I am subhuman.  I will be cut off from the normalcy of life…" (*See Plaintiff's Amended Complaint* pp. 3-4). "The Eighth Amendment outlaws cruel and unusual 'punishments,' not 'conditions.'" Farmer v. Brennan, 511 U.S. 825, "Conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional" even if restrictive or harsh, as "they are part of the penalty that criminal offenders pay for their offenses against society." Rhodes v. Chapman, 452 U.S. 337, 347 (1981) (double celling of inmates at a particular facility was not cruel and unusual punishment).

 All less restrictive placements, programs, and custodies are privileges to which no offender enjoys any right or entitlement of consideration, let alone participation.  The original sentence imposed on Inmate McAteer was intended not only as punishment, but to insure his removal from society for a significant period of time.

In the light of the foregoing, the State submits that Mr. McAteer cannot prove a set of facts that would entitle him to relief under the theories proffered in his complaint.  For that reason, there exists no genuine issue of material fact and the plaintiff's complaint is due to be rejected.

## CONCLUSION

McAteer fails to establish a substantial likelihood of success on the merits of any of his claims for relief or that the issuance of a preliminary injunction would be in the best interest of the public.  Based on the foregoing, the Defendants respectfully request that this Honorable Court consider treating this Special Report as a Motion for Summary Judgment deny the motion for preliminary injunction filed by the plaintiff.


RESPECTFULLY SUBMITTED,

TROY KING
ATTORNEY GENERAL
KIN047


/s/ *Joshua S. Bearden*_____
Joshua S. Bearden (BEA070)
ASSISTANT ATTORNEY GENERAL
Counsel for Defendants

OF COUNSEL:

OFFICE OF THE ATTORNEY GENERAL
11 South Union Street
Montgomery, AL  36130
(334) 242-7300
(334) 242-2433 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that I have, this 7th day of December, 2007, served a copy of the foregoing on the plaintiff, by placing same in the United States Mail, postage prepaid and properly addressed as follows:

Roy Lee McAteer, AIS #147346
Bibb County Correctional Center
565 Bibb Lane
Brent, AL 35034

Ms. Lindsey Clements
Legal Division
Alabama Department of Public Safety
P.O. Box 1511
Montgomery, Alabama 36102-1511

　　　　　　　/s/  *Joshua S. Bearden*
　　　　　　　OF COUNSEL

VZX 16:24 09/12/2007 666761
QH.ALNCIC000.VZX.

7L0100G6,MRI0666755
AL003025C
THIS NCIC INTERSTATE IDENTIFICATION INDEX RESPONSE IS THE RESULT OF YOUR
INQUIRY ON NAM/MCATEER,ROY LEE SEX/M RAC/W DOB/19640918 PUR/C
NAME                        FBI NO.        INQUIRY DATE
CHAFFIN,STEVE J             586429NA9       2007/09/12

SEX RACE BIRTH DATE   HEIGHT WEIGHT EYES HAIR PHOTO
M    W   ███████████    600    150   BRO  BRO  N

BIRTH PLACE
ALABAMA

FINGERPRINT CLASS        PATTERN CLASS
PI 65 PI PM 16           WU LS WU WU RS WU WU WU WU LS
PI PO PI PI 15              WU              LS      LS

ALIAS NAMES
CHAFFIN,STEVE             CHAFFIN,STEVEN
MC ATEER,ROY L           MC ATEER,ROY LEE
MCATEER,ROY              MCATEER,ROY HENRY
MCATEER,ROY L           MCATEER,ROY LEE

OTHER        SCARS-MARKS-
BIRTH DATES  TATTOOS        SOCIAL SECURITY
1963/09/18   TAT L ARM      
1964/09/18   TAT LF ARM
             TAT R ARM
             TAT R HND
             TAT UL ARM
             TAT UR ARM

IDENTIFICATION DATA UPDATED 2007/03/21

THE CRIMINAL HISTORY RECORD IS MAINTAINED AND AVAILABLE FROM THE
FOLLOWING:
  OKLAHOMA       - STATE ID/OK01160358
  SOUTH DAKOTA   - STATE ID/SD268871A3
  FBI            - FBI/586429NA9

THE RECORD(S) CAN BE OBTAINED THROUGH THE INTERSTATE IDENTIFICATION
INDEX BY USING THE APPROPRIATE NCIC TRANSACTION.

END

SEQ # 0043 MRI # 0666761



DEFENDANT'S
EXHIBIT

A

VZX 16:24 09/12/2007 666763
QH.AL003025C.VZX.


******* ADVISORY NOTICE ONLY *******
ALABAMA DEPARTMENT OF CORRECTION INMATE RECORD
FOR CONFIRMATION AND ADDITIONAL INFORMATION CONTACT:  DEPARTMENT OF
CORRECTION CENTRAL RECORDS 334-353-9739    AFTER 5PM, WEEKENDS AND HOLIDAYS
CONTACT: STATON CORRECTIONS AT 334 567-2221
MKE/INMATE
AIS/00147346  SID/AL00880892  FBI/586429NA9
NAM/MCATEER, ROY LEE  SEX/M  RAC/W
HGT/511  WGT/167  EYE/BROWN  HAI/BROWN
SMT1/TATTOOS-RIGHT HAND
SMT2/TATTOOS-LEFT ARM  SMT3/TATTOOS-RIGHT ARM
DOB/19640918  SOC/419046856
OFFENSE/103C  BURGLARY III
INSTITUTION/037  BIBB COUNTY CORRECTIONAL FAC.
COUNTY/51  MONTGOMERY
AKA/CHAFFIN, STEVE J
AKA/CHAFFIN, STEVE
***** IMMED CONFIRM WITH ORI *****

***** WANTED PERSON FILE *****
MISDEMEANOR WARRANT
WILL ONLY EXTRADITE FROM ADJACENT COUNTIES OF   TUSCALOOSA,JEFFERSON,BIBB,FAYETTE
,GREENE,PICKENS,SHELBY,WALKER,HALE
FOLN/ID68445 AL 1999
MKE/WANTED PERSON
ORI/AL0630200
NAM/MCATEER,ROY LEE  SEX/M  RAC/W
DOB/19630918
HGT/600  WGT/160  EYE/BRO  HAI/BRO
SOC/419046856
AIN/12777210  OCA/MC970463
OFFENSE/FAILURE TO APPEAR
DOW/19971105
MIS/ASSAULT III
DTE/19971218  DTM/20070402  OLN/5081914  OLS/AL  OLY/1987
VLN/ATKINS,SHERRY  VLD/20070402
OLN/ID68445 AL 1999
ORI IS AL0630200 - NORTHPORT POLICE DEPT
TEL/2053396600    ALT TEL/2053333013
FAX/2053333014
***** IMMED CONFIRM WITH ORI *****
***END OF RESPONSE***

SEQ # 0044 MRI # 0666763



DEFENDANT'S
EXHIBIT
A

VZX.16:25 09/12/2007 667028
FR.SDSIR0000.VZX.

FR.SDSIR0000
14:35 09/12/2007 53162
14:35 09/12/2007 09311 AL003025C
*MRI0667026
TXT
  PUR/C.ATN/VQUEST PR.SID/SD268871A3

### ***   C O N F I D E N T I A L   D O C U M E N T   ***

STATE OF SOUTH DAKOTA                    DATED: 09/12/07
DIVISION OF CRIMINAL INVESTIGATION
GEORGE S MICKELSON BUILDING              TELEPHONE: (605) 773-3331
1302 EAST HIGHWAY 14
PIERRE SOUTH DAKOTA  57501-8505          INFORMATION SHOWN ON THIS IDENTIFICATION
                                         RECORD REPRESENTS DATA FURNISHED BY
                                         FINGERPRINT CONTRIBUTORS. WHEN AN
                                         EXPLANATION OF A CHARGE OR DISPOSITION
                                         IS NEEDED, COMMUNICATE DIRECTLY WITH THE
                                         AGENCY THAT CONTRIBUTED THE FINGERPRINTS


                              ATTN: VQUEST PR


NAME: MCATEER,ROY LEE              DOB: ▓▓▓▓▓▓▓  SID: SD268871A3 JACKET: NO
ALIAS:                            POB: AL
SEX: M    RACE: W    HGT: 6' 00''    WGT: 165    EYE: BRO    HAIR: BRO
FBI: 586429NA9    SOC: ▓▓▓▓▓▓▓         HENRY FPC:
NCIC FPC:

        ******   RECORD SUBJECT IS A MULTI-STATE OFFENDER   ******

----------------------------------------------------------------------
 1) ARRESTED: 06/01/1998                    PROCESS CONTROL #: 3414112
    CONTRIBUTING AGENCY: MINNEHAHA CO SHERIFF'S OFFICE    ORI: SD0490000
       CHARGE: TRAFFIC-DUI ALCOHOL                        COUNTS:  1
       CHARGE: DRUG-POSSESSION MARIJ AMT UNKN             COUNTS:  1
       CHARGE: DRUG-POSSESSION PARAPHERNALIA              COUNTS:  1

  COURT: DOCKET-49C98002329A0 MINNEHAHA CO MAGISTRATE    SENT/DISP: 06/02/1998

    DRIVING UNDER INFLUENCE-1ST OF, SDCL 32-23-2
    DISPOSITION: JUDGMENT ON PLEA OF GUILTY, CLASS-MISD 1
    $350.00 FINE
    40 DAYS JAIL LOC/REGNL, 40 DAYS SUSP

    POSSES MARIJUANA LESS 1/2 LB, SDCL 22-42-6

    DISPOSITION: JUDGMENT ON PLEA OF GUILTY, CLASS-MISD 1
    $75.00 FINE
    30 DAYS JAIL LOC/REGNL, 30 DAYS SUSP

    USE OR POSSESSION OF DRUG PARAPHERN ALIA, SDCL 22-42A-3

PENGAD 800-631-6989

DEFENDANT'S
EXHIBIT

A

· DISPOSITION: DISMISSED - MOTION BY PROSECUTOR, CLASS-MISD 2

CASE LEVEL: COSTS, CONDITIONS
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -


ABOVE DATA BASED SOLELY UPON SOUTH DAKOTA CRIMINAL HISTORY FILES MAINTAINED BY
DCI.  THIS DOES NOT PRECLUDE THE POSSIBLE EXISTENCE OF RECORDS IN OTHER STATES
OR FBI FILES.  THE USE OF THIS RECORD IS REGULATED BY LAW.  IT IS PROVIDED FOR
OFFICIAL USE ONLY AND MAY BE USED ONLY FOR CRIMINAL JUSTICE PURPOSES.


END OF RECORD
SEQ # 0046 MRI # 0667028



VZX.16:25 09/12/2007 666956
FR.OKSIR0000.VZX.

FR.OKSIR0000
14:35 09/12/2007 74502
14:35 09/12/2007 09309 AL003025C
*MRI0666926
TXT
 HDR/
 ATN/VQUEST PR
 THIS RECORD IS BASED ONLY ON THE SID NUMBER IN YOUR REQUEST - SID/OK01160358


                OKLAHOMA STATE BUREAU OF INVESTIGATION
                       IDENTIFICATION DIVISION
                      6600 NORTH HARVEY SUITE 300
                      OKLAHOMA CITY, OKLAHOMA 73116

THE FOLLOWING OSBI RECORD IS SUBJECT TO THE OKLAHOMA OPEN RECORDS ACT.
INFORMATION SHOWN ON THIS CRIMINAL HISTORY REPRESENTS DATA FURNISHED TO OSBI
BY FINGERPRINT CONTRIBUTORS, DISTRICT ATTORNEYS, AND COURT RECORDS. WHERE
DISPOSITION DATA IS NOT SHOWN OR FURTHER EXPLANATION OF THE CHARGE OR
DISPOSITION IS DESIRED, COMMUNICATE WITH THE AGENCY CONTRIBUTING THE RECORD TO
OSBI. ONLY THE COURT WHERE A FINAL DISPOSITION OCCURRED CAN PROVIDE A CERTIFIED
COPY OF THAT DISPOSITION. UNLESS FINGERPRINTS ACCOMPANIED YOUR REQUEST FOR A
CRIMINAL HISTORY RECORD, OSBI CANNOT AFFIRM THAT THIS RECORD RELATES TO THE
PERSON OF YOUR INQUIRY. THIS INFORMATION IS COMPLETE AND ACCURATE TO THE EXTENT
FEASIBLE AS OF THE DATE OF DISSEMINATION, BASED ON THE RECORDS RECEIVED AT
OSBI.


  OSBI #: 1160358        FBI#: 586429NA9              RELEASE DATE: 09/12/2007

  NAME(S) USED: MCATEER, ROY LEE

  SEX   RACE   BIRTHDATE    HEIGHT   WEIGHT   EYES    HAIR    BIRTHPLACE   CITIZENSHIP

   M     W     09/18/1963    511      171    BROWN   BROWN      AL           US

  FINGERPRINT CLASS: PI65PIPM16PIPOPIPI15

  SCARS/MARKS:   TAT UR ARM   TAT UL ARM   TAT R ARM    TAT LF ARM

  NAMES USED:   CHAFFIN, STEVEN               MCATEER, ROY HENRY

  SOCIAL SECURITY NUMBER(S):   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

  DEPARTMENT OF CORRECTION NUMBER(S):   369502

  PALM PRINTS AVAILABLE    PHOTO AVAILABLE

  - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

  ***ENTRY 001*** NAME USED: MCATEER, ROY LEE

  CONTRIBUTOR                 CHARGE AT ARREST           DISPOSITION

  DATE ARRESTED OR            SODOMY                REFERRED TO D.A.
  RECEIVED: 07/30/1998        FELONY
  ORI: OK0550100



DEFENDANT'S
EXHIBIT
A

PD BETHANY, OK
OCA NO: 987588

SEXUAL BATTERY                REFERRED TO D.A.
FELONY

ATN/VQUEST PR
OSBI #: 1160358          FBI#: 586429NA9              RELEASE DATE: 09/12/2007

FAILURE TO REGISTER AS SEX   REFERRED TO D.A.
OFFENDER-FELONY IN 1997
MISDEMEANOR

***ENTRY 002*** NAME USED: MCATEER, ROY LEE

CONTRIBUTOR                 CHARGE AT ARREST            DISPOSITION

DATE ARRESTED OR         SODOMY
RECEIVED: 07/30/1998     FELONY
ORI: OK0550000
SO OKLA CO, OKLA
CITY, OK
OCA NO: 98182813          SEXUAL BATTERY
                          FELONY

                          FAILURE TO REGISTER AS SEX
                          OFFENDER-FELONY IN 1997
                          FELONY

***ENTRY 003*** NAME USED: MCATEER, ROY HENRY

CONTRIBUTOR                 CHARGE AT ARREST            DISPOSITION

DATE ARRESTED OR         UNAUTH USE OF VEH         DA DECLINED TO FILE CHARGE
RECEIVED: 04/08/1999     FELONY
ORI: OK0550600
PD OKLA CITY, OK
OCA NO: 250110
                          TRAFFIC OFFENSE           REF TO MUN.PROSECUTOR
                          MISDEMEANOR
                          COUNTS:    2

***ENTRY 004*** NAME USED: MCATEER, ROY LEE

CONTRIBUTOR                 CHARGE AT ARREST            DISPOSITION

DATE ARRESTED OR         ATTEMPT TO COMMIT-        OKLAHOMA CO CF1999-3620
RECEIVED: 03/29/2000     BURGLARY - SECOND DEGREE  SENTENCED
ORI: OK01403SC           FELONY                    FELONY CONVICTION
ASSESSMENT &                                       SENTENCE:    11 YRS    0 DAYS
RECEPTION CENTER,                                  PRISON:      11 YRS    0 DAYS
LEXINGTON, OK                                      JAIL TIME:    0 YRS 287 DAYS
OCA NO: 369502                                     03/29/2000
                                                   RECEIVED

ATN/VQUEST PR
OSBI #: 1160358          FBI#: 586429NA9            RELEASE DATE: 09/12/2007

                                                   06/25/2004

DEFENDANT'S
EXHIBIT
A

PENGAD 800-631-6989

DISCHARGED

***ENTRY 005*** NAME USED: MCATEER, ROY LEE

CONTRIBUTOR                    CHARGE AT ARREST          DISPOSITION

DATE ARRESTED OR        LARCENY OF MERCHANDISE FROM REF TO MUN.PROSECUTOR
RECEIVED: 12/02/2004    RETAILER
ORI: OK0720500          MISDEMEANOR
PD TUL$A, OK


-- - -- --+-- -- -- --------------------------------------------- -----

THIS I$ A MULTISTATE RECORD. ADDITIONAL CRIMINAL HISTORY
INFORMATION IS INDEXED IN III FOR OTHER STATE OR FEDERAL OFFENSES.

END OF RECORD
SEQ # 0045 MRI # 0666956

DEFENDANT'S
EXHIBIT
A

PENGAD 800-631-6989

Session - PASSPORT                              September 12, 2007, 10:25:10

```
AR10      SETTING AND DISPOSITION          COUNTY: 63 TUSCALOOSA     ACRAR10
ACTION:   CASE: CC 1987 000644 00 JID: GML SCAN: N   STS: P PRISON    CONFD: N
  NAME: MCATEER ROY LEE                      FLAG: Y    DOCKET:    EST: S PST: H
PROS: STE025     FLG: N     ATTY1: SOG001 R  FLG: N    ATTY2:         FLG: Y
STEVERSON DENNIS             SOGOL JOEL L
FCHG1: SOD1     SODOMY 1          13A-006-063           F SX CNTS: 001
  DATE1: 09181996  QUE: 000  TIME: 0900 A  DESC: PREV PROBATION REV
  DATE2: 00000000  QUE: 001  TIME: 0000    DESC: APPD
  DATE3: 00000000  QUE: 000  TIME: 0000    DESC: APPD
  DATE4: 00000000  QUE: 000  TIME: 0000    DESC: APPD
WARISS: 00000000   WARACT: 00000000   WARLOC: 00000000
BP ISS: 00000000   BP RTN: 00000000   # CONV: 00
CRTACT: G GUILTY PLEA       CADATE: 01131988 JRY:   MORE: N UPD: N T/CAT:    S
CHG1: SOD1     SODOMY 1          13A-006-063      F SX CNT: 001 CA: G 01131988
CHG2:                                  CNT: 000 CA:    00000000
CHG3:                                  CNT: 000 CA:    00000000
  DJID: GML ADMIN: 00000000 WHY:   TBNV1: 00000000 TBNV2: 00000000 DOMVIO:
CA-APP: 00000000 CAPP:              TYPE:    GJCA:    LA-APP: 00000000
CONTDT: 00000000  WHY:              CONT#: 00
COMM:
CMP: Y SPRO: U DUE: 0000000000 WARR 000 SUBP 018     UPDATED: 08121996 BY: BON
*** HERE IS THE REQUESTED RECORD ***
01=MNU 02=ACS 03=NDX 04=PTY 05=CLR 06=OCS 07=DKT 08=ENF 09=APL 10=FEE 11=SNT
12=FIL        14=NXC 15=NXN 16=NXS 17=FRM 18=CHG 19=PRT 20=OFF 22=PFM 24=HLP
```

DEFENDANT'S
EXHIBIT
13
PENGAD 800-631-6989

```
AR01      CRIMINAL FILING                    COUNTY: 63 TUSCALOOSA    ACRAR01
ACTION:    CASE: CC 1987 000644 00 JID: GML DEFSTS: P ST PRISON  ESTS: S CONF: N
NAME: MCATEER ROY LEE              ALIAS:
ADD1: 3600 24TH AVENUE             ALIAS:
ADD2: BOX A-12                      SID:     000000000 YDATE: 00000000
ZCSC: 35401 0000 TUSCALOOSA     AL US   AS:              PR: 1995 032010 00
DLNO:                              RACE: W    SEX: M    DOB: 09181963
 SSN: 419046856 PHONE: 000 000 0000 000 HGT: 6 10 WGT: 150 EYES: BRO  HAIR: BRO
 FILED: 07301987  AAGCY: S       MUNI#: 00        JDMD:    CITY:
 IDATE: 08141987 A OFDT: 00000000   ORI: STAT     APPL:    OFFC: BT
INDICT: 07301987    GJ: 2035     ATY1: SOG001 R        TKT#:
  BOND: 0000000000 TYP:  BNDCO:                   REL: 00000000
SURE:   000                      CWIT:   000
 TRACKING NOS:   0000 000000 00 /   0000 000000 00 /   0000 000000 00
DATE: 1 09181996  QUE: 000  TIME: 0900 A  DESC: PREV PROBATION REV
CHG1: SOD1      SODOMY 1           13A-006-063          F SX  CNTS: 001
CHG2:                                                        CNTS: 000
CHG3:                                                        CNTS: 000
MORE: N        DOMVIO:                       CASE TYPE/CAT: F / SX
COMMENT:
CMP: Y SPRO: U DUE: 0000000000 SYFL: 07011987 SDSP: 01011988 UPD: 08121996  BON
*** HERE IS THE REQUESTED RECORD ***
01=MNU 02=ACS 03=NDX 04=PTY 05=CLR 06=OCS 07=DKT 08=ENF 09=DSP 10=FEE 11=DLS
12=SNT 13=DUP 14=NXC 15=NXN 16=NXS 17=FRM 18=CHG 19=PRT 20=OFF 22=PFM 24=HLP
```

DEFENDANT'S
EXHIBIT
B

PENGAD 800-631-6989

```
Session - PASSPORT                              September 12, 2007, 10:25:15

AR05     CRIMINAL SENTENCE            COUNTY: 63 TUSCALOOSA    ACRAR05
ACTION:   CASE: CC 1987 000644 00 01 JID: GML DEFSTS: P PRISON    CONFID: N
NAME: MCATEER ROY LEE           CA: G GULTY PLEA 01131988 CC19921    00000
SENT: 01131988 BEGIN: 00000000 END:   00000000 PRBBEG: 00000000 PRBREV: 00000000
IMP CONF --- SUSP CONF -- TOTL CONF ----- JAIL CRED -- PROBATION -- LICN SUSP
00 18 000      13 06 000      13 24 000      00 00 000      05 00 000    00 00 000
MONETARY: X COST      FINE IMP: 00000000    SUSP: 00000000    X CVCC      HIST
            WCCS      MCOS 00000000         JFEE 00000000      DRGF 0     ASUS
            WCDA      REMB 00000000         3CVC 00000000     WARR 000    USFE
            PREL      DRUG 00000000         RCUP 00000000    X SUBP 018   CRIMEF
            RES1 00000000       RES2 00000000          RES3 00000000
            RES4 00000000       RES5 00000000          RES6 00000000
 CONFINE: X PENT     LIFE      LWOP      DEATH  X SPLIT     BOOT 000   EMON 000
           JAIL  X CCUR      CSEC      CTERM    RVSPL      GANG 000
PROGRAMS:  JDVR    IPROB     AASCH     DUI      DDC        CSV 0000    SAPP    CCR
           PTRL    BCSCH     MNTL      CRO      ASCH       ANGER       DRCT    DOCC
ENHANCED:  PROJ    CNOT      SCH       VDOB 00000000  X HOOF 000
           DRUG  CODE:                 MEAS:    VOL: 00000000
SEC/CUR:   00    000000000000 00    00   000000000000   00    00  000000000000 00
COMMENT:
BALDUE: 0000000000 DUE: 01131988      CRO:           UPDATED: 08121996 BY BON
*** HERE IS THE REQUESTED RECORD ***
01=MNU 02=ACS 03=NDX 04=PTY 05=CLR 06=OCS 07=DKT 08=ENF 09=DSP 10=FEE
12=FIL 13=DUP 14=NXS 15=TRF 16=WAR 17=FRM 18=CHG 19=PRT 20=OFF       24=HLP
```

DEFENDANT'S
EXHIBIT
B

PENGAD 800-631-6989



**OSCN** THE OKLAHOMA STATE COURTS NETWORK     www.oscn.net

| Home | Courts | Court Dockets | Legal Research | Calendar | Help |

**Party Information Record from the Oklahoma Court System**

The information contained in this report is provided in compliance with the Oklahoma Open Records Act,51 O.S. § 24A.1. Use of this information is governed by this act, as well as other applicable state and federal laws.

The codes used in this report and the format of the information contained in this report were designed to comply with Federal NCIC Database parameters.

| Requested Party Record:<br><br>**Mc Ateer, Roy Lee** | Alias or Alternate Names:<br><br>**CHAFFIN, STEVEN**<br>**CHAFFIN, STEVEN JOE**<br>**MC ATEER, ROY HENRY**<br>**MCATEER, ROY LEE** |
|---|---|

## Personal Profile[*]

| Record Date | Marital Status | Birth Date | Birth City | BirthPlace |
|---|---|---|---|---|
| May 27, 2005 at 10:9:47 AM | - | 09/18/1963 | - | - |

## Physical Profile[*]

| Record Date | Hair | Eye | Sex | Race | Skin | Weight | Height | Blood Type |
|---|---|---|---|---|---|---|---|---|
| May 27, 2005 at 10:9:47 AM | Brown | Brown | Male | White | - | 165 | 600 | - |

## Address Information[*]

| Record Date | Status | Type | Address |
|---|---|---|---|
| January 19, 2006 at 1:52:11 PM | Current | Home Address | 1823 NW 9TH ST<br>OKC, Oklahoma 73102 |

## Telephone Information[*]

| Record Date | Type | Number |
|---|---|---|
| No Records Found. | | |

[*]Multiple records may have been entered over time. Records will appear in reverse order of entry, with the most recent record first.

Report Generated by the Oklahoma Court Information System at September 17, 2007 09:15:46.

End of Transmission.

PENGAD 800-631-6989
**DEFENDANT'S EXHIBIT**
_C_

# OSCN
## THE OKLAHOMA STATE COURTS NETWORK

www.oscn.net

| Home | Courts | Court Dockets | Legal Research | Calendar | Help |

The information on this page is NOT an official record. Do not rely on the correctness or completeness of this information. Verify all information with the official record keeper. The information contained in this report is provided in compliance with the Oklahoma Open Records Act,51 O.S. 24A.1. Use of this information is governed by this act, as well as other applicable state and federal laws.

## IN THE DISTRICT COURT IN AND FOR OKLAHOMA COUNTY, OKLAHOMA

| State of Oklahoma v. Mc Ateer, Roy Lee | No. CF-2005-3019 (Criminal Felony) Filed: 05/27/2005 Judge: Gray, Twyla Mason |
|---|---|

## Parties

Mc Ateer, Roy Lee , Defendant
Oklahoma City Police Department , ARRESTING AGENCY
STATE OF OKLAHOMA , Plaintiff

## Attorneys

| Attorney | Represented Parties |
|---|---|

## Events

| Event | Party | Docket | Reporter |
|---|---|---|---|

## Counts

Parties appear only under the counts with which they were charged. For complete sentence information, see the court minute on the docket.

| Count # 1. | Count as Filed: OLAR, LARCENY OF MERCHANDISE FROM A RETAILER , in violation of 21 O.S. 1702-1737 Date Of Offense: 03/01/2005 |
|---|---|

| Party Name: | Disposition Information: |
|---|---|
| Defendant: Mc Ateer, Roy Lee (After Prior Convictions) | Pending. |

## Docket

| Date | Code | Count | Party | Serial # | Entry Date | |
|---|---|---|---|---|---|---|
| 05-27-2005 | TEXT | 1 | Mc Ateer, Roy Lee | 45137431 | May 27 2005 10:09:55:213AM - | $ 0.00 |
| | CRIMINAL FELONY INITIAL FILING. | | | | | |
| 05-27-2005 | INFORMATION | 1 | Mc Ateer, Roy Lee | 45151087 | May 31 2005 1:41:21:450PM - | $ 0.00 |
| | DEFENDANT ROY LEE MC ATEER WAS CHARGED WITH COUNT #1, LARCENY OF MERCHANDISE FROM A RETAILER IN VIOLATION OF 21 O.S. 1702-1737 | | | | | |

📄 Document Available at Court Clerk's Office
MICROFILM: REEL FRAMENUMBER

DEFENDANT'S EXHIBIT
C
PENGAD 800-631-6989

| 05-27-2005 | TEXT | - | | 45137432 | May 27 2005 10:09:55:213AM | - | $ 0.00 |
|---|---|---|---|---|---|---|---|

OCIS HAS AUTOMATICALLY ASSIGNED JUDGE GRAY, TWYLA MASON TO THIS CASE.

| 06-01-2005 | WAI$ | - | Mc Ateer, Roy Lee | 45163869 | Jun 1 2005 2:45:33:697PM | Realized | $ 30.00 |
|---|---|---|---|---|---|---|---|

WARRANT OF ARREST ISSUED, JUDGE: RUSSELL HALL - BOND AMOUNT: $2,000.00
COUNT 1 - LARCENY OF MERCHANDISE FROM A RETAILER
COMMENT: #2005011260
($ 30.00)

| 06-01-2005 | OCISR | - | Mc Ateer, Roy Lee | 45163870 | Jun 1 2005 2:45:33:697PM | Realized | $ 10.00 |
|---|---|---|---|---|---|---|---|

OKLAHOMA COURT INFORMATION SYSTEM REVOLVING FUND($ 10.00)

Report Generated by The Oklahoma Court Information System at September 17, 2007 9:12 AM

End of Transmission.



DEFENDANT'S
EXHIBIT
C



# OKLAHOMA DEPARTMENT OF CORRECTIONS

Back to Previous Search  New Search

| Name |
|------|
| ROY L MCATEER |
| ODOC# 369502 |



image 1 of 4 >
26 Sep 2003

| Alias |
|-------|
| Steve J Chaffin |

| IDs |
|-----|
| ODOC#: 369502 |
| Birth Date: 09/18/1963 |

### Appearance
White Male; 5 ft. 11 in. tall; 171 pounds; Brown hair; Brown eyes;

### Body Marks
BIC: TAT L VIKING W/WOMAN TAT L/BICEP
BIC: TAT R UPP BIRD TAT UPPER R/BICEP
FOR: TAT L SCROLL TAT L/FOREARM

### Sentence

| CRF# | County | Offense | Conviction | Term | Term Code | Start | |
|------|--------|---------|------------|------|-----------|-------|--|
| 99-3620 | OKLA | Attempted Burglary In The Second Degree | 11/04/1999 | 11Y | Incarceration | 03/29/2000 | 06/2 |

### Facility

| Current Facility | Phone# | Reception Date | Discharge Date | Parole Hearing Date | | |
|------------------|--------|----------------|----------------|---------------------|--|--|
| INACTIVE | | 03/29/2000 | 06/25/2004 | 09/9999 | | |
| Address | | City | State | Zip | Contact | |

DEFENDANT'S
EXHIBIT
C

PENGAD 800-631-6989



# OKLAHOMA DEPARTMENT OF CORRECTIONS

Back to Previous Search  New Search

| Name |
|---|
| ROY L MCATEER |
| ODOC# 369502 |



27 Dec 2002

| Alias |
|---|
| Steve J Chaffin |

| IDs |
|---|
| ODOC#: 369502 |
| Birth Date: 09/18/1963 |

## Appearance
White Male; 5 ft. 11 in. tall; 171 pounds; Brown hair; Brown eyes;

## Body Marks
BIC: TAT L VIKING W/WOMAN TAT L/BICEP
BIC: TAT R UPP BIRD TAT UPPER R/BICEP
FOR: TAT L SCROLL TAT L/FOREARM

## Sentence

| CRF# | County | Offense | Conviction | Term | Term Code | Start |
|---|---|---|---|---|---|---|
| 99-3620 | OKLA | Attempted Burglary In The Second Degree | 11/04/1999 | 11Y | Incarceration | 03/29/2000 06/2 |

## Facility

| Current Facility | Phone# | Reception Date | Discharge Date | Parole Hearing Date |
|---|---|---|---|---|
| INACTIVE | | 03/29/2000 | 06/25/2004 | 09/9999 |
| Address | | City | State | Zip | Contact |

DEFENDANT'S
EXHIBIT
C

PENGAD 800-631-6989



# OKLAHOMA DEPARTMENT OF CORRECTIONS

Back to Previous Search  New Search

### Name
ROY L MCATEER
ODOC# 369502



1 Oct 2001

### Alias
Steve J Chaffin

### IDs
ODOC#: 369502
Birth Date: 09/18/1963

### Appearance
White Male; 5 ft. 11 in. tall; 171 pounds; Brown hair; Brown eyes;

### Body Marks
BIC: TAT L VIKING W/WOMAN TAT L/BICEP
BIC: TAT R UPP BIRD TAT UPPER R/BICEP
FOR: TAT L SCROLL TAT L/FOREARM

### Sentence

| CRF# | County | Offense | Conviction | Term | Term Code | Start |
|------|--------|---------|------------|------|-----------|-------|
| 99-3620 | OKLA | Attempted Burglary In The Second Degree | 11/04/1999 | 11Y | Incarceration | 03/29/2000 06/2 |

### Facility

| Current Facility | Phone# | Reception Date | Discharge Date | Parole Hearing Date | | |
|------------------|--------|----------------|----------------|---------------------|--|--|
| INACTIVE | | 03/29/2000 | 06/25/2004 | 09/9999 | | |
| Address | | City | State | Zip | | Contact |



DEFENDANT'S
EXHIBIT
C



# OKLAHOMA DEPARTMENT OF CORRECTIONS

Back to Previous Search  New Search

## Name

ROY L MCATEER
ODOC# 369502



< image 4 of 4
29 Mar 2000

## Alias

Steve J Chaffin

## IDs

ODOC#: 369502
Birth Date: 09/18/1963

## Appearance

White Male; 5 ft. 11 in. tall; 171 pounds; Brown hair; Brown eyes;

## Body Marks

BIC: TAT L VIKING W/WOMAN TAT L/BICEP
BIC: TAT R UPP BIRD TAT UPPER R/BICEP
FOR: TAT L SCROLL TAT L/FOREARM

## Sentence

| CRF# | County | Offense | Conviction | Term | Term Code | Start | |
|---|---|---|---|---|---|---|---|
| 99-3620 | OKLA | Attempted Burglary In The Second Degree | 11/04/1999 | 11Y | Incarceration | 03/29/2000 | 06/2 |

## Facility

| Current Facility | Phone# | Reception Date | Discharge Date | Parole Hearing Date | | |
|---|---|---|---|---|---|---|
| INACTIVE | | 03/29/2000 | 06/25/2004 | 09/9999 | | |
| Address | | City | State | Zip | Contact | |

DEFENDANT'S
EXHIBIT
C
PENGAD 800-631-6989