In the District Court of The United States
For the Middle District of Alabama.

RECEIVED
2008 FEB 13 A 10:01
DEBRA P. HACKETT, CL
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

Roy Lee McAteer
    Plaintiff.

VS.
                          Case No. 2:07-CV-692-WKW.

Bob Riley et. al.,
    Defendants

## Response - To Defendants Special Report

Come now Roy Lee McAteer, the plaintiff in the above styled cause, and in compliance with this Honorable Courts order of 12-20-07. Court Document 31-1, submits this response to the defendant's special report of 12-21-07, and in support there of presents the following:

## Parties

① Roy Lee McAteer, Citizen of the United States of America, Plaintiff.
② Bob Riley, Govenor of the State of Alabama, Defendant.
③ Troy King, State of Alabama Attorney General, Defendant.
④ The Alabama (State of) Dept. of Public Safety, Defendant.

Plaintiffs Claims for Relief.                              2.

① C.N.A. (The Community Notification Act) of Alabama violates, The Bill of Attainder Clause of the United States Constitution.

② C.N.A. of Alabama violates, The Ex Post Facto Clause of the United States Constitution.

③ C.N.A. of Alabama violates The Due Process Clause(s) of The United States Constitution.

④ C.N.A. of Alabama violates the Constitutional Prohibition against Cruel and Unusal Punishment.

⑤ C.N.A. of Alabama violates The Equal Protection Clause of The United States Constitution.

Plantiffs  Exhibits.

① Please See Attached Affidavits.

Summary Judgement Standard.

The defendants cite three separate cases in this section of their Special Report, Anderson vs. Liberty Lobby Inc. 477 U.S. 242, 249-250 1986, Celotex Corp. vs. Cartrett, 477 U.S. 323 1986, and Morisky vs. Broward County, 80 F 3d 445, 448-449 (11ᵗʰ Cir 1996). These cases, as the defendants point out, establish one fact... If the NON-movant success-fully rebuts the movant's argument then summary judgement would be improper. And I firmly believe that

③

at the conclusion of this "Response" I will, not only have successfully rebutted the defendants proposals, but also have "Substantially" exceeded the threshhold required for injunctive relief in this matter. In a quote from another citizen of this Nation: "The humblest man in the land, when clothed in the armor of a just cause, is stronger than all the hosts of error." William Jennings Bryan.

① In response to the defendants assertion that the Community Notification Act of Alabama does not violate the Bill of Attainder and Ex Post Facto Clauses of the United States Constitution:

The defendants have in their possession a copy of the "Objection To Recommendation of Magistrate Judge" I submitted to this Honorable Court on 10-29-07. Having noted, ...

The defendants, in all of their arguments, repeatedly rely upon the ruling or holding rendered by the Supreme Court in Smith vs. Doe 155 L.Ed 2d when addressing the claims I have made that C.N.A. of Alabama violates the Bill of Attainder and Ex Post Facto Clauses of the United States Constitution, i.e., Upon review of McAteers Bill of Attainder, Ex Post Facto, and Double Jeopardy arguments, this Honorable Court should find the opinion issued in Smith vs. Doe, supra, dispositive." Def. Sp. Report at pg. 10.

④

Considering the differences in the degrees of injury inflicted upon those affected by Alabamas statute, as compared to Alaska's, and "And" considering that I have raised issues that go beyond or transcend the scope of Smith vs. Doe, then that holding "should not" be considered dispositive in the instant matter, and in fact is an improper application of case law under the premises. This being said,...

With C.N.A. you have a statute that "severely restricts" where I can live (Noting the differences in the availability of rural housing in Alabama as compared to Alaska), "~~~~ restricts" where I can work (Noting that I have been primarily a construction worker for most of my life, and the transient nature of such employment), a statute that compels me to carry identification which <u>distinguishes me from other members of the public</u>, a statute that compels me to submit to figer printing and photographing yearly for the rest of my life, a statute that compels me to periodically verify to government where I am physically, that compels me to provide notice to government if I intend to change either residence or employment ('Noting that this notice must be in advance), a statute which ~~~~ places restrictions on whom I may associate with, a statute which mandates that I must live in a community in which the public has been notified through "community flyers" which contain my name, my address, my picture, my place of employment — "Notified" — and first and foremost in the

*severely*

context of a Bill of Attainder and Ex Post Facto challenge, a statute which characterizes me as someone who is mentally ill and dangerous to society and societies children. - "Notified", so that they can protect themselves and their children from me.

All of the above and more because of a criminal conviction fully 8 years "prior" to enactment of CNA.. An incident that occurred fully 10 ten years "prior" to enactment of CNA.. And did I mention that the "conditions" imposed by this statute are applicable to me for the duration of my life. That I will be held criminally responsible if I violate one of these "conditions".

This statute does not regulate any behavior which I am overtly or covertly for that matter, engaged in. I am not out trying to overthrow the government (Communist Party vs. S.A.C. Board 6 L Ed 2d). Nor am I engaging in any other illegal activity. So, what is being regulated? Previously I had said, "I get it, I am being regulated!" But, after further thought, and further research, I came to a somewhat different conclusion. This statute, all the considerable "conditions" and restrictions of CNA. are "imposed" upon me because of the State's adoption of an irrebuttable presumed fact which is inherent in the statutory construction of CNA., that says because I was once convicted of a sex offense than I am presumed to be, and will be designated as, "forevermore mentally ill and dangerous to society and societies children." ie.,

"The Legislature declares that its intent in imposing certain monitoring and reporting requirements on criminal sex offenders and requiring community notification of the residence and workplace of criminal sex offenders is to protect the public, especially children, from convicted criminal sex offenders." Ala. Code 15-20-20.1 Also, ...

The Legislature finds that the danger (of recidivism) posed by

criminal sex offenders and that the protection of the public from these offenders. . ." Ala. Code 15-20-20.1

Now I might be just a dumb old country boy with, relative to the defendants very little education I am sure, but even I can see that there is something seriously out of plumb here. Judicial language concerning irrebuttable presumptions points out:

"As the Court stated: The law is clear that due process interdicts the adoption by a state of an irrebuttable presumption, as to which the presumed fact does not necessarily follow the proven fact." Andrews vs Drew Municipal Separate School District 507 F.2d 611. — And in one of the most prominent cases in which the Supreme Court ruled upon the validity or non-validity of attainder laws, the following language is found which not only supports the above language from Andrews, but makes it highly applicable within the context of my argument. Accord:

"It need hardly be said that it is upon the particular evidence in a particular record that a particular defendant must be judged, and not upon the evidence in some other record or upon what may be supposed to be the tenets of the Communist Party." Footnote 26 United States vs. Brown 14 L.Ed 2d at 494. - Suppose or suppositions and presume or presumptions are four very closely related words, but, so that there can be no indecision about the point I am making, . . .

It is argued that 504 is not a bill of attainder because "prior" to its enactment there had been an administrative adjudication (omitted) of the nature of the party. (omitted) Even leaving aside the fact that the legislative history of 504 (omitted) indicates that Congress was acting in reliance on the findings it had made in 1947 rather than on those made by the board in 1953. . . Footnote 9 United States vs. Brown 14 L.Ed 2d at 494.

7.

What you have with CNA. is a statute which breaches the barrier of permissibility in one area of constitutional law and then uses this breach to promote impermissible application under other constitutional clauses. And relying on the entire fabric of constitutional law and applying it we see, . . .

"New Findings of Fact". And what does judicial language say about such?

✳︎✳︎✳︎ Sentencing under a statute that requires additional factual determination that defendant poses threat of harm to the public invokes due process right to confront and cross-examine witnesses. <u>United States vs. Weston</u> 708 F. 2d <u>at 309</u>. – This same exact issue was raised in another case where the Supreme Court held:

"The Sex Offenders Act does not make the commission of a specified crime the basis for sentencing. It makes one conviction the basis for commencing another proceeding under another Act to determine whether a person constitutes a threat of bodily harm to the public or is an habitual offender and mentally ill. <u>That is a new finding of fact</u> Vanderhoof vs. People, 152 Colo 147, 149, 380 P2d 903, 904) that was not an ingredient of the offense charged." <u>Specht vs. Patterson</u> 18 LEd 2d at 329.

All the severe "<u>conditions</u>" restrictions, mandates, and criminal penalties <u>imposed</u> upon me by CNA, lasts for life. And the application of all these – "<u>conditions</u>", restrictions, monitoring and reporting requirements, and characterization as mentally ill and dangerous — to myself is predicated upon a legislative proceeding in which determinations of fact were made, and presumptions, or suppositions if you will, were made the basis for application of a law which invades and affects every aspect of my life from where I can live and work to ~~who~~ whom I am allowed to associate with.

8.

And because of this proceeding in which these additional factual determinations (which were not included in the proceeding which resulted in my conviction in 1988, and therefore I was prevented — and am being prevented — from challenging or cross-examining the witnesses against me) "Because" of this proceeding I am subjected to "conditions" which are the factual equivalent of the "conditions" imposed upon those who are subject to Alabama's Mental Health Statutes (See Due Process and Equal Protection discussion herein) and this Judgement and Sentence or "Order of Conditions" has been imposed by an improper tribunal in violation of the Separation of Powers Doctrine of Constitutional Law. Accord:

The command of the Bill of Attainder Clause that a legislature can provide that certain persons possessing certain characteristics must abstain from certain activities, but must leave to other tribunals the task of deciding who possesses these characteristics. . . " United States vs. Brown 14 LEd 2d at 484.

* * *** In the State of Alabama the proper tribunal for determinations as to a person's mental health and the imposition of "conditions" as a result of these determinations are the Courts, not the Legislative Body of the State Government.

And this leads to something else — "Punitiveness" — that point can be made much more succintly when posed in the form of a question. . . .

If one aspect of this statute (CNA) is impermissible under constitutional law, does this uphold the proposition that the "reasonability" of other aspects of the statute are affected to the extent that they no longer support the "sufficiently clear and convincing standard of non-punitive legislative purpose" upon which this statute relys to shield it from attack on Bill of Attainder and Ex Post

9.

Facto grounds?

    The defendants argue that I have a complete misunderstanding as to what a civil commitment statute actually is . . . And while I will respond to this fully in another section of this Response . . . Regarding the above question, I would ask the Indulgence of this Honorable Court so that I can develope this argument to its conclusion and let judicial language answer the question for me.

    "The capriciousness of the classification employed by the State is thrown sharply into focus by the fact that the full benefit of a judicial hearing to determine dangerous tendencies is withheld only in the case of civil commitment of one awaiting expiration of penal sentence. A person with a past criminal record is presently entitled to a hearing on the question whether he is dangerously mentally ill <u>so long as he is not in prison</u> at the time civil commitment proceedings are instituted. Given this distinction, all semblance of rationality of the classification, purportedly based on criminal propensities, disappears. <u>Baxstrom vs. Herold 15 L Ed 2d at 625-626</u>. — And the indulgence I asked for, . . .

Paraphrased — "The capriciousness ~~of~~ of the classification employed by the State is thrown sharply into focus by the fact that the full benefit of a judicial hearing to determine dangerous tendencies is withheld only in the case of someone who has been convicted of a sex offense. All others who have had the designation "mentally ill and dangerous" placed on them by the State are entitled to a hearing before having the Exact Same "<u>Conditions</u>" that sex offenders are subjected to, placed on them. Given this distinction, all semblance of reasonableness of the classification, purportedly based on criminal propensities, disappears." And again, . . .

    "In sum, we hold that the Georgia presumption of continuing insanity

10.

as applied only to insanity acquittees and not to M.H.C. committees denies insanity acquittees the Equal Protection of the laws. Benham vs. Edwards 678 F. 2d at 511 (11th Cir.).

Paraphrasing — "In sum we hold that the State's presumption of continuing mental illness and dangerousness as applied only to sex offenders and not to those subjected to the "Exact Same Conditions" under the States Mental Health Statutes denies sex offenders the Equal Protection of the laws."

"Reasonableness", That bucket starts to leak a little when examined in this light.

✳✳✳ And now there are 4 Barriers of Constitutional Law that have been "Swept Away" by this statute. (1) The length of application of C.N.A. "Conditions" is based on the State's adoption of irrebuttable presumed facts, (2) The characterizations as mentally ill and dangerous to society and societies children constitute new findings as to fact, additional facts which were not ingredients of the original proceeding which resulted in my conviction in 1988. (3) The statute clearly violates equal protection. (4) C.N.A. clearly violates attainder laws because it incorporates a judgement and sentence imposed by legislative action.

✳✳✳ The defendants rely exclusively on Smith vs Doe when addressing the Bill of Attainder and Ex Post Facto challenges I have ~~ever~~ made. As mentioned, however, I have raised claims that go beyond or transcend the holdings rendered by the Smith Court. In that ruling, though some peripheral matters were commented upon, ▪ the only "Only" issue that was directly ruled upon by the Supreme Court was whether or not the "Internet Posting of Accurate and Truthful" information concerning the affected persons criminal history constituted punishment. And, the language of this ruling expressly ▪ recognizes:

11.

"As we have explained, however, the notification system is a passive one: An individual must seek access to the information." And, . . .

"An individual seeking the information must take the initial step of going to the Department of ~~Alaska~~ Public Safety's website, proceed to the sex offender registry, and then look up the desired information. The process is more analogous to a visit to an official archive of criminal records than it is to a scheme forcing an offender to appear in public with some visible badge of past criminality." Smith vs. Doe 155 L.Ed.2d.

"Passivity." Alabama, unlike Alaska, does not confine their notification scheme to the passivity mentioned above. Alabama blankets "Blankets" the affected person's neighborhood, the community he or she lives in with pictures, allows them to be displayed in post offices, police stations, to be aired on televisions. And these pictures are attached to legislative language which characterizes the affected person as, . . .

"The Legislature declares that its intent in imposing certain reporting and monitoring requirements on criminal sex offenders and requiring community notification of the residence and workplace of criminal sex offenders is to protect the public, especially children, from convicted sex offenders. Ala. Code 15-20-20.1

Can any "reasonable person" doubt the effects of this. One only has to watch the evening news to see it. Further, there is no more rational statement that can be made than that "people place more importance on the safety and wellbeing of their children than any other concern." And the corollary to this statement. . . "Can any more rational statement be made than that "when the community a person lives in is told "Hey, you have a person who is dangerous to your children living amongst you — in essence

12.

told by the statutory language of this statute" you have a child molester living amongst you" – and here is his/her picture, here is his/her address, this is the car he/she drives, this is where he or she works". . . Can anyone doubt the results? <u>This, without question does, as Alabama uses this statute, make the publicity and resulting stigma an integral part, if not the objective of the regulatory scheme because:</u>

**✱✱✱**    (1) It does have the effect of holding the person up before his fellow citizens for face to face shaming, and (2) It does result in the expulsion of the person from the community. i.e., Shiloh Transformation Ministry, Birmingham Ala.

<u>"My crime in 1986 was against an adult."</u> We were out partying, high on alcohol, cocaine and marijuana. I wish to God it had not happened, I was flat out in the wrong and admit it. And yes, as the defendants point out, I have a criminal history, a long one which includes the sex offense in 1986. But, . . . That <u>does not</u> "<u>Does Not</u>" provide justification for the State to go into the community in which I live and attack such a hideous <u>label</u> upon me as that I am "<u>dangerous to the communities children</u>".

Having researched the Bill of Attainder Claims to the extent that my abilities and circumstances have permitted, I have discovered one case where the claims of governmental misconduct were almost identical to the ones I am bringing. <u>Foretich vs. U.S, 351 F.3d</u>

<u>Standing</u>

"As Dr. Foretich's uncontroverted affidavit makes clear, his principal complaint is that the Elizabeth Morgan Act harmed his reputation by

13.

embodying a congressional determination that he is a child abuser and a danger to his own daughter. This claim clearly gives Dr. Foretich standing in this case. <u>Congress's act of judging Dr. Foretich and legislating against him on the basis of that judgement - the very things that as we will see, render the Act an unconstitutional bill of attainder - directly give rise to a cognizable injury to his reputation that can be redressed by a declaratory judgement in Dr. Foretich's favor."</u> <u>Foretich us U.S. 351 F.3d at 1213.</u> - See also, <u>Meese us Keene 264 F. 3d</u> - "because the Department of Justice has placed the legitimate force of its criminal enforcement powers behind the label of "political propaganda", the Court held that the alleged injury was likely to be redressed by a favorable decision declaring the Act unconstitutional . . ."

<u>CNA.</u> does the <u>exact</u> <u>same</u> <u>thing.</u> It embodies a legislative determination, "<u>A New Finding of Fact</u>" that because I was once, 19 years ago, convicted of a sex offense ~~the claim that I had~~ ~~do it a second time~~ against an adult, then it is justifiable to label me forevermore "<u>Mentally ill and dangerous to society and "And" societies children".</u> <u>This is "imposition of stigma."</u> And as I mentioned earlier, I am making my argument in reliance on the entire fabric of constitutional law. This is an extremely complex issue and it calls for such. Having said, . . .

"Due Process requires a prior hearing whenever a protected interest is invaded or a stigma imposed." <u>Mullane us. Central Hannover Bank and Trust Co. 94 L Ed 2d 865</u> — <u>Boddie us. Connecticut 28 L Ed 2d.</u> Also, . . .

We reviewed in <u>Cafeteria Workers us. McElroy 6 L Ed 2d 1230,</u> the nature of the various private interests that have fallen on one side or the other of the line. (Omitted) Generalizations are hazardous as some state and

14.

federal administrative procedures are summary by reason of necessity or history. Yet certainly where the State attaches a "badge of infamy" to the citizen, due process comes into play. The right to be heard before being condemned to suffer grievous loss of any kind, even though it may not involve the stigma and hardships of a criminal conviction, is a principle basic to our society. <u>Wisconsin vs. Constantineau 27 L.Ed 2d at 516.</u>

"<u>Mentally ill and Dangerous to Children</u>." I am sure that qualifies as <u>stigma</u> and a <u>badge of infamy</u>. And let us just go ahead and get this out of the way, . . .

"The Legislature finds that the <u>danger</u> (of recidivism) <u>posed</u> by criminal sex offenders . . ." <u>Ala. Code 15-20-20.1</u>

"requiring community notification of the residence and workplace of criminal sex offenders is to <u>protect the public, especially children</u> . . ." <u>Ala Code 15-20-20.1</u>

"In this instance, McAteer has only been deemed an adult criminal sex offender for purposes of the Act." <u>Def. Special Rep. at pg 34.</u>

"Although provisions may on their face allow for confinement based on dangerousness alone, in virtually all actual cases the questions of dangerousness and continued ~~mental~~ mental disease are likely to be closely linked." <u>Footnote 6 Foucha vs. Louisiana 118 L Ed 2d at 451.</u>

"<u>Mentally ill and dangerous to society and societies children</u>." That is the <u>characterization and message this statute conveys and that is an inescapable fact.</u> I have spent a large portion of my life in jails and prisons. Even in these places where you have murderers, robbers, thieves, muggers, drug dealers, and yes, sex offenders, the absolute worse harm you can inflict upon a person is to characterize him as a child molester. I was housed in the cell with a 74 year old man while in prison in Oklahoma. Raoul Emerson was this man's name.

15.

He had been convicted and sentenced for a sex crime against children. 74 years old. He was stabbed five times one day while I was out of the cell. The first thing I do when arriving at one of these places is go on the offensive. "Yes, I have a sex offense. Against an adult. One offense, 21 years ago, and if you think that makes me a child molester then lets look at it." There are degrees of harm and there are degrees of dangerousness.

Yes, you can say, "Roy McAteer was convicted of a sex offense in 1988." This is true. But then using this incident to imply either implicitly, as CNA does, or ~~through~~ through the use of innuendo, as CNA also does, that I am also dangerous to societies children . . . Judicial language says it so strongly, . . .

Viewed in this light, the Elizabeth Morgan Act, while not ~~squarely~~ squarely within the historical meaning of legislative punishment, is not dissimilar to the types of burdens traditionally recognized as punitive. As our discussion of Dr. Foretich's standing to pursue this lawsuit makes clear, one effect of the Act has been that Dr. Foretich is "no longer of any credit or reputation." If anything, the burdens imposed on Dr. Foretich — deprivation of parental rights and the ~~~~ opprobrium of being "<u>branded</u>" a criminal child abuser — may be of "even greater magnitude than many of those at issue in the historical cases." <u>Foretich vs. U.S.</u> 351 F.2d at 1220 ~~~~.

"Second, the early cases also demonstrate that a statute will be particularly susceptible to invalidation as a bill of attainder where its <u>effect</u> is to mark specified persons with a <u>brand of infamy or disloyalty</u>." <u>id at 1219.</u> ~~~~

See Brown, 381 U.S. at 453-54, 85 S.Ct. at 1717-18 (holding that a statute is not a bill of attainder where it incorporates no judgement

16.

censuring or condemning any man or group of men")(Emphasis Added). Foretich vs. US 351 F.3d 1198. Also,...

*** While CNA arguably does not make me completely unemployable, the decision to sweep me up in the "vortex" of this statute and classify me as someone who is "dangerous to children" severely impacts my ability to secure ~~having~~ employment considering the horrendous restrictions this statute imposes, i.e., bans on employment opportunities within 2000 feet of the property on which any school or childcare facility is located. Under the terms of this Act these are defined as:

A licensed day care center, a licensed childcare facility, or any other childcare service that is [under applicable state law] exempt from licensing, Ala. Code 15-20-21(2), and a school as [a] licensed or accredited public or private school, or church school, that offers instruction in grades K-12 ... Ala. Code 15-20-21(13). The term employment includes employment that is full-time or part-time for any period ... Ala. Code 15-20-21(6).

Completely unemployable? This also means that I am prohibited from accepting vocational rehabilitation unless the facility at which such training occurs is also outside this 2000 foot radius. This is a horrendous "Horrendous" limitation on employment opportunities.

See Lovett, 328 U.S. at 312, 314 (finding an employment ban to constitute a bill of attainder where committee reports characterized the affected persons as subversive and unfit for government service.) — "Mentally ill and dangerous to children."

* **** See Consol. Edison Co. 292 F.3d at 354 (holding a statute to be a bill of attainder where the legislature piled on a burden that was obviously disproportionate to the harm caused.

17.

2.    As to my Ex Post Facto Claim . . . Well, I rely heavily on the fore-going Bill of Attainder argument as well as the Objection to Recommendation of Magistrate Judge submitted to this Honorable Court on 10-29-07. - with additional minor argument.

   <u>Smith vs. Doe 155 L Ed 2d</u> is not dispositive in this matter. The Smith Court ruled upon the effects of Alaska's Community Notification Act, not Alabama's Community Notification Act.

   Asking this Honorable Court to note especially the differences in rural employment opportunities in Alabama as compared to Alaska. To also note especially the differences in the availability of rural housing opportunities in Alabama as compared to Alaska. And also that this Honorable Court note especially the Smith Courts' language concerning the effects of internet posting of information, i.e., "As we have explained, however, the notification system is a passive one. An individual must seek access to the information." <u>Smith vs. Doe 155 L Ed 2d.</u>

   ✱✱✱    Alabama, as I have mentioned, does not confine their notification system to the passivity mentioned above. As Alabama uses this Statute the publicity and resulting stigma is an integral part, if not the objective of the regulatory scheme because (1) Alabama's scheme does have the effect of holding the person up before his fellow citizens for face to face shaming, and (2) It does result in the expulsion of the person from the community. Evidence? Shiloh Transformation Ministry, Birmingham Ala. "Why have they had to change locations so many times?" So, with the foregoing in mind, this Honorable Court should conclude that the following Judicial language is a more appropriate determination as to the effect of Alabama's Community Notification scheme :

   "In reviewing a sex offender law that authorized public inspection

18.

of sex offender records at police departments and permitted newspapers or others to disseminate the information, the Kansas Supreme Court concluded that the law imposed a disability because the practical effect of such unrestricted dissemination could make it impossible for the offender to find housing or employment." <u>Kansas vs. Meyers 260 Kansas, 669</u>, See also, . . .

"Under Utah's law, registry information is made widely available, but it is not broadcast in a manner approaching the historical examples of public shaming. Interested individuals must still make an affirmative effort to retrieve the information." <u>Femedeer vs. Haun 227 F.3d at 1251.</u> Further, . . .

✱✱✱    This statute, CNA. of Alabama, is mean spirited in the extreme sense of the phrase and in my humble opinion certainly incorporates elements of "Vindictive Legislation" which is restrained under Ex Post Facto case law. i.e., <u>Weaver vs. Graham 67 L.Ed 2d</u> ~ <u>Fletcher vs. Peck 3 L.Ed.</u>

I was in the Montgomery County Jail with an older gentleman whose crime, a sex offense, had been committed if I am not mistaken over 30 years previously. That man was, or had been in that jail for several months simply because he had no family, or the financial means to comply with the dictates, or mandates, or "Order of Conditions" of CNA.

And, . . . as the defendants so eloquently point out on pg. 30 of their Special Report, jails and prisons are intended not only to punish, but also to remove undesirables from society for significant periods of time. "And," even though the gentleman in "<u>Montgomery County Jail</u>" had committed no crime, other than to be financially incapable of complying with the demands placed upon him, he was confined in a penal facility. So we could say that, "Because of this man's poverty he was being punished."

19.

Or maybe, "Maybe" we could say that because C.N.A. characterizes this man as "Mentally Ill and Dangerous" and mandates that he must therefore, because of such mental illness and dangerousness, abide by certain "<u>conditions</u>" or else be subjected to . . . "Maybe the purpose was to effect Involuntary Confinement."

* * *    Either way it does not matter. The holdings in <u>Lynch vs Baxley 744 F. 2d 1452 (11th Circuit)</u> forbids the one, and the <u>Constitution of the United States of America</u> forbids the other. When the State knows "Knows" that a person is unable to comply with the demands that have been placed upon the person as a result of State action but yet, even in the face of this knowledge, persists or proceeds with punishing the person for the failure, . . . Not only does this reek "Reek" of vindictiveness, but this Honorable Court should also hear the Rock upon which this Nation was created crying out "Crying Out" because of the injustice of it.

"Vindictive – 1. Inclined to seek revenge. 2. <u>Meant to cause pain or harm.</u>" <u>Webster's II New College Dictionary.</u>

So, based on the foregoing premises, issues, facts, and case law, this Honorable Court should conclude:

1. That I have established that the Community Notification Act of Alabama clearly violates the Bill of Attainder Clause of The United States Constitution.

2. That I have established that the Community Notification Act of Alabama clearly violates the Ex Post Facto Clause of the United States Constitution.

20.

3. That I have established a substantial likelihood of success on the merits on the foregoing claims.

4. That there exists a substantial threat that I, and others similarly situated, will suffer irreparable injury as a result of application of C.N.A. as currently practiced.

5. That there is a compelling "Public" and "State" interest in the preservation of the Integrity of the Constitution of this Nation.

And having so concluded, grant such Declaratory or Injunctive Relief as the Court deems is proper and appropriate under the circumstances.

## Due Process

3.     In response to the defendants assertion that the Community Notification Act is not a civil commitment statute which is being inappropriately applied through the criminal justice system.

A.     "Typically, 3 distinct grounds for civil commitment are recognized by state statutes; dangerousness to self; dangerousness to others; and the need for treatment, or for "care", "custody" or "supervision"." Donaldson vs. O'Connor 493 F 2d 507 (11th Cir).

"Any argument that Alabama's Community Notification Act is a civil commitment statute evinces a complete misunderstanding of what a civil commit statute actually entails." Def. Special Rep. at pg. 31.

The above statement has an obverse which obviously is: "Any argument that the Community Notification Act is "Not" a civil commitment statute evinces a complete misunderstanding of what the Legislature stated when enacting this statute." i.e.,

21.

"The Legislature finds that the danger ~~proved~~ (of recidivism) posed by criminal sex offenders and that the protection of the public from these offenders . . ."

Humphrey vs. Cody 31 L.Ed 2d was a case in which the Supreme Court ruled upon the "Character of the Conditions" and in Birl vs. Wallis 619 F.2d ~~__~~ F.Supp.(11th Cir), you find a ruling where it was held that Similarities in "Conditions" call for similarities in treatment. And, . . .

"The Legislature declares that its intent in imposing certain monitoring and reporting requirements on criminal sex offenders and requiring community notification of the residence and workplace of criminal sex offenders is to protect the public, especially children, from convicted criminal sex offenders." Ala. Code 15-20-20.1

"Monitoring and reporting requirements?" Now as I said previously, I might be just a dumb old county boy but even I can see that the legislature enacted this statute and intended it be applied to me specifically because (1) It was determined that because of the sex offense I committed in 1986 that I am to be considered forevermore mentally ill and therefore dangerous to society and societies children, and (2) Because of this alleged mental illness and dangerousness, I am a person who needs to be under close supervision, monitored, and you might even say custody as this statute is applied in Alabama. The "Character of the Conditions" of C.N.A. literally "Scream" Mental Health Statute, and the "Similarities" are simply unmistakable.

The defendants themselves, though denying it, also remarkably demonstrate how fragile their argument is through their reliance on the Supreme Court's holdings in McKune vs. Lile, which although incorporated in the Smith vs. Doe ruling, is part of the defendant's Special Report at

22.

pg. 16. Another prominent part of this case reads:

"Therapists and Correctional officers widely agree that clinical rehabilitative programs can enable sex offenders to manage their impulses and in this way reduce recidivism . . ." McKune vs. Lile 153 LEd 2d at 57.

To use a popular expression; "Come on Man!" People who aren't considered to be mentally ill have no need of "clinical rehabilitative programs" designed to help them "manage their impulses". Nor are they subjected to the exact same monitoring and reporting requirements that mentally ill persons are. Nor are they subjected to Involuntary Confinement because they violate the "Conditions" of their release.

*** C.N.A. is a statute which "Screams", literally, that I suffer from mental illness, that "Screams" I am, because of this mental illness, dangerous to the public, which commands that, because of this mental illness, I must abide by certain "conditions". The enactment of this statute was nothing more and nothing less than a Civil Commitment Proceeding (which stopped/or stops at the door of institutional confinement in its initial stages) conducted by the Legislature, and designed in such a way (a for whatever reasons) that it insulates those affected by it from the umbrella of due process ~~~~~~~~~~ ~~~~~~~~~~ which is afforded other mentally ill ~~~~~~~~~~ ~~~~~~ and/or dangerous persons by attaching a patina of criminality. Strong language but also true. Let us look at it . . .

"An involuntary commitment order must be based upon specific findings sufficient to bring the subject of the proceedings within the limited sphere of legitimate governmental concern. Accordingly, each order of involuntary commitment shall be supported by the following minimum findings made by

23.

the _fact-finder_ upon the evidence introduced at the commitment hearing:
(a) the person to be committed is mentally ill; and (b) the person to be committed
_poses a real and present threat of substantial harm to himself or others_."
_Lynch vs. Baxley 386 F Supp at 378._ Compare, . . .

    "_The Legislature finds_ that the _danger_ (of recidivism) _posed_ by
criminal sex offenders and that the _protection of the public from these
offenders_ is a paramount _concern or interest to government._" _Ala Code 15-
20-20.1_ . . . Now that, "That" is a pretty striking similarity in terms!
*** "Moreover the State of Alabama has never contended that the
petitioner suffers from a mental abnormality or personality disorder." _Def.
Special Rep, at pg 35._

    I do not mean to be rude but the Court should find this assertion
at the least preposterous. In the following excerpt from the C.N.A. text,
{Legislative Intent} the phrase "criminal sex offenders" is used not once, not
twice, but three separate times in the same sentence.

    The Legislature declares that its intent in imposing certain monitoring
and reporting requirements on °criminal sex offenders[1] and requiring community
notifications of the residence and workplace of °criminal sex offenders[2] is
to _protect the public especially childrens from_ convicted °criminal sex
offenders[3]. _Ala Code 15-20-20.1._ Compare with, . . .

    "_Mental Abnormality:_ A congenital or acquired condition of a person
that affects the emotional or volitional capacity of the person in a manner that
predisposes that person to the commission of _criminal sex offense_ to a degree
that makes that person a menace to the health and safety of other persons." _Ala.
Code 15-20-21, Definitions_

    I committed a criminal sex offense in 1986. Under the terms of

24.

CNA, I am defined as a criminal sex offender. Under the terms of CNA. I am defined as someone the Legislature found the public and the public's children need protection from. Under the terms of this Act, ... Once a criminal sex offender, always a criminal sex offender and therefore designated by the State of Alabama as suffering from some type of personality disorder or mental abnormality which makes me dangerous.

"And the defendants say the above definition is not meant to apply to me? That it is not meant to apply to those who have been convicted of criminal sex offense? That is preposterous and there is no other way to say it."

The CNA. text "Screams" Mental Health. And maybe it is because this statute stopped at the door of effecting institutional confinement that it has not been recognized for the Civil Commitment Statute that it actually is. But, "But" case law "clearly and convincingly" demonstrates that people can be, and are in fact, made subject to civil commitment statutes without the aspect of institutionalization being present. The most notable example of this that I have found under 11th Circuit case law is Birl vs. Wallis 619 F. Supp. In this case you had a plaintiff who was mentally ill and subject to a civil commitment statute even though he was allowed to live in the community on "conditional" ~~release~~ release. Which means of course, he was subject to almost identical circumstances as people on release ... . I am sorry, he was subject to almost identical circumstances as people subject to CNA are. And, . . .

"Order of "conditions" means an order directing a defendant to comply with this prescribed treatment plan, or any other "condition" which the Court determines to be reasonably necessary or appropriate . . ."

25.

"Under that order, Francis was required, after release, to attend an outpatient program approved by the commissioner, to inform the prosecutor of his current address . . ." Francis S. vs. Stone 221 F 3d.

*** The above sounds a lot like CNA. "conditions" and reading that case you see that the "conditions" imposed on Francis were Identical in "Purpose"* as those imposed on people subject to CNA. I also draw the Court's attention to the "conditional release" mentioned in Foucha vs. Louisiana 118 L Ed 2d at 444, — As these cases unequivocally point out, civil commitment absolutely does not depend upon the aspect of institutional confinement. And I suppose I could go on and on. It would take a library to cite all the cases which demonstrate that civil commitment does not depend upon institutional confinement. But even more substantial than this, a civil commitment statute can be applied, just as it was to the gentleman in Montgomery County, without the aspect of institutional confinement Ever Even Being Present. Accord:

Ala. Code 22-52-1.1 – Article 1 – Commitment of Mentally Ill Persons Generally — Definitions — Involuntary Commitment: Court ordered mental health services in either an outpatient or inpatient setting." And, . . .

Ala. Code 22-52-10.1. If at the final hearing on a petition seeking to involuntarily commit a respondent, the probate judge finds, based on clear and convincing evidence, that the respondent meets the criteria for involuntary commitment, an order shall be entered for:

* (1) Outpatient treatment; or
   (2) Inpatient treatment.

*** Ala. Code 15-16-68 Court imposed "conditions" for release. The conditions that the Court may impose upon release, if necessary and

26.

appropriate include the following:

5. That the defendant avoid specified activities, persons or places, ...

6. Any other appropriate conditions that is necessary to prevent the defendant from posing a real and present threat to himself and others while he is at large.

\* \* \* [2] <u>Arbitrary application of a Mental Health Statute is what you have with CNA.</u> Nothing more, nothing less, ~~—————————~~ . Denied Treatment, <u>Lynch vs Baxley 386 F. Supp.</u> Denied probable cause hearings, <u>Lynch vs. Baxley 386 F. Supp.</u> Denied the right to assistance of counsel, <u>Lynch vs. Baxley 386 F. Supp.</u> Denied the right to confront and cross examine, <u>Lynch vs Baxley 386 F. Supp.</u> Denied the right to present evidence in own ~~—~~ behalf, <u>Lynch vs Baxley 386 F. Supp.</u> But yet, "But Yet" designated by the State as Mentally Ill and Therefore Dangerous. This is the <u>Very bedrock</u> upon which this statute and the "Order of Conditions" which it imposes is predicated ~~—~~ .

<u>Alabama Code 15-20-25.3</u> Sexually Violent Predator Status - Petition: If the state so petitions, it shall present clear and convincing evidence that the offender suffers from a mental abnormality or personality disorder that makes the person likely to engage in predatory criminal sex offenses."

The above (besides simply imposing another Order of Conditions — any other appropriate condition) if I understand this right, says that the State only has to adhere to the constitutionally required "clear and convincing standard" when it is seeking to designate a particularly dangerous sex offender. Why the distinction? This statute does not say, "The Legislature finds that the ~~————————~~ danger (of recidivism) posed by sexually violent predators." Why the distinction?

Why do you have to adhere to constitutional requirements to apply one component of this Civil Commitment Statute when you do not have to adhere to them to apply other components? Maybe it is because, . . . Judicial Language answers the questions much better than I could possibly hope to. First, . . .

"The District Court refused to refer to the classifications at issue in this case as "criminal committees" (omitted) and "civil committees" (omitted). The Court considered these labels to be somewhat misleading, to lack constitutional significance, and to be likely to obscure the similarities of circumstance and legal status of these two groups." Footnote 5 Benham vs. Edwards 678 F.2d at 513. And second, . . .

"Under the Georgia scheme, insanity aquittees may be summarily committed immediately following their aquittal by reason of insanity, without a hearing to determine their present status with respect to mental illness and dangerousness. The summary commitment is made on the basis of the criminal trial itself.- Because a state initiated commitment hearing is provided to determine whether M.H.C. committees meet the commitment criteria at the time of commitment - i.e., present mental illness and dangerousness - The District Court held that Georgia's failure to provide such a hearing for insanity aquittees violates the Equal Protection Clause. The District Court also held that such a hearing is required by the Due Process Clause". We agree. Benham vs. Edwards 678 F.2d at 519.

*** [2] "If the state so petitions." And again there is an obverse which obviously is: If the state does not so petition it facilitates the circumvention of the "clear and convincing evidence standard" required by the 14th Amendment (Addington vs. Texas 60 L Ed 2d) and allows the state to effect summary commitment (for whatever reason) with this disguised Civil

28.

Commitment Statute. (Baxstrom vs. Herold 15 L Ed 2d) (Specht vs Patterson 18 L Ed 2d) (Humphrey vs. Cady 31 L Ed 2d).

And the similarities in circumstances and legal status of a sexually violent predator, an adult sex offender, and someone subject to an "Order of Conditions" imposed by the recognized Civil Commitment Statutes, . . . They are Mathematically Identical. Further, . . .

✳✳✳   "Application of the Acts provisions (Conditions) is unlimited in duration as to an adult criminal sex offender." Ala Code 15-20-33(a) ("Any adult criminal sex offender shall be subject to this article for life.") Court Doc. 14-last pg. 5.

✳✳✳   Constitutional Law 242.1(5) "Due process and equal protection clauses required Georgia, after expiration of 30 day evaluation period, to provide for insanity acquittees the same state initiated commitment hearing that it provided for civil committees and to bear the burden of proving by clear and convincing evidence at that hearing that the acquittee meets its civil commitment criteria." Benham vs. Edwards 678 F.2d 511 (11th Circuit). I have been denied this hearing which leads to . . .

✳✳✳   New Findings Of Fact. Baxstrom vs. Herold 15 L Ed 2d, Specht vs. Patterson 18 L.E.D. 2d, Humphrey vs. Cady 31 L. Ed 2d. Also, . . .

"Commitment therefore depends upon findings of fact different from those established by the jury's acquittal by reason of insanity. Due process requires that such findings be made following a hearing at which the defendant is present with counsel, has an opportunity to be heard and to present evidence, and has an opportunity to confront and cross examine witnesses. ▬▬▬ ▬▬ (Benham vs. Edwards 678 F.2d 511 (11th Circuit). Also, . . .

The Legislature finds that the danger (of recidivism) posed by criminal sex offenders and that the protection of the public from these offenders is

29.

a paramount concern or interest to government. Ala. Code 15-20-20.1

* * *    One question. The gentleman in the Montgomery County jail whose crime had been committed many "Many" years before. What was the "Purpose" of his confinement? And the answer is real simple. First, . . .

In sum we hold that the Georgia presumption of continuing insanity* . . . Benham vs. Edwards 678 F.2d at 542. Second, . . .

Dangerous mental disorder means: (i) that a defendant currently suffers from a "mental illness" as that term is defined, and (ii) that because of such condition he currently constitutes a physical danger to himself or others* Footnote 2. Francis vs. Stone 221 F.3d at 101. And used in conjunction with, . . .

The statutory language of CNA indicates conclusively that people subject to its mandates — because of conviction for sex offense suffer from a dangerous mental disorder — and must, because of such dangerous mental disorder, abide by certain "Order of Conditions" or incur penal confinement. And that is the simple reason why that almost 70 year old man whose crime had been committed many "Many" years before was in that jail. And, . . .

"As the Court stated: The law is clear that due process interdicts the adoption by a state of an irrebuttable presumption* . . ." Andrews vs. Drew Municipal Separate School District 507 F.2d 611. Also, . . .

Lynch vs. Baxley 744 F.2d forbids in no uncertain terms the States use of penal facilities for the simple expedient of effecting the confinement of the mentally ill. And in closing, . . .

"Although provisions may on their face allow for confinement based on dangerousness alone, in virtually all actual cases the questions of dangerousness

30.

and continued mental disease are likely to be closely linked." <u>Footnote</u>
<u>6 Foucha vs. Louisiana, 118 L.Ed 2d at 451.</u>

So, based on the foregoing premises, issues, facts, and case laws,
this Honorable Court should conclude:

1. That I have established that the Community Notification Act
of Alabama is clearly a Civil Commitment Statute which is being inappropriately
applied through the criminal justice system which allows the State to
circumvent the procedural protections that such proceedings require.

2. That the Supreme Court's holdings in <u>Baxstrom vs. Herold</u>
<u>15 L.Ed 2d</u> are dispositive in this matter.

3. That the Supreme Court's holdings in <u>Specht vs. Patterson</u>
<u>18 L.Ed 2d</u> are dispositive in this matter.

4. That the Supreme Court's holdings in <u>Humphrey vs Cady</u>
<u>31 L.Ed 2d</u> are dispositive in this matter.

5. That the Supreme Court's holdings in <u>Addington vs. Texas</u>
<u>60 L.Ed 2d</u> are dispositive in this matter.

6. That the Supreme Court's holdings in <u>Jones vs. United States</u>
<u>77 L.Ed 2d</u> are dispositive in this matter.

7. That the Supreme Court's holdings in <u>Foucha vs. Louisiana</u>
<u>118 L.Ed 2d</u> are dispositive in this matter.

8. That the 11th Circuit's holdings in <u>Benham vs. Edwards</u>
<u>678 F.2d</u> are dispositive in this matter.

9. That the 11th Circuit's holdings in <u>Lynch vs Baxley</u>
<u>744 F.2d</u> are dispositive in this matter.

10. That the procedural protections of Due Process required

31.

by the 14th Amendment and afforded the plaintiffs in <u>Lynch vs Baxley</u> <u>386 F.Supp</u> are required before implementation of C.N.A.'s "Order of Conditions" can be effected by the State of Alabama.

11. That I have established a substantial likelihood of success on the merits on the foregoing claim.

12. That there exists a substantial threat that I and others similarly situated will suffer or sustain irreparable injury as a result of the inappropriate application of C.N.A.

13. That there is a compelling "Public" and "State" interest in the preservation of the Integrity of the Constitution of this Nation.

And having so concluded, Plaintiff respectfully requests that this honorable Court grant such Injunctive Relief as the Court deems is proper and appropriate under the circumstances.

B.    In Response to the defendant's assertion that the Community Notification Act does not violate the Bill of Rights prohibition against cruel and unusual punishment made applicable through the Due Process Clause.

"The vast majority of states do not allow confinement based on dangerousness alone . . . ("By necessary implication the danger referred to must be construed to relate to mental illness for the reason that dangerousness without mental illness could not be a valid basis for (indeterminate) confinement in the state mental hospital"). See also A.L.I. Model Penal Code, supra, at 260 ("although provisions may on their face allow for confinement based on dangerousness alone, in virtually all actual cases the questions of dangerousness and continued mental disease are likely to be closely linked.") <u>Footnote 6</u>

32.

Foucha vs. Louisiana 118 L Ed 2d at 451. Also, . . .

The only legitimate justification for the curtailment of liberty involved here pending a commitment hearing is the _danger posed_ by the possibly mentally ill to themselves or others." <u>Lynch vs Baxley 744 F. 2d 1458.</u>  Compare, . . .

"The Legislature finds that the _danger_ of recidivism _posed_ by criminal sex offenders . . ", <u>Ala. Code 15-20-20.1</u>

Penal confinement for the mentally ill is "Exactly" what C.N.A. allows and the unconstitutionality of this has been ruled upon definitively and unequivocally by the Courts of this Nation. Most notably Robinson vs. California. Accord;

It is unlikely that any State at this moment in history would attempt to make it a criminal offense for a person to be mentally ill, or a leper, or to be afflicted with a venereal disease. A State might determine that the general health and welfare require that the victims of these and other human afflictions be dealt with by compulsory treatment, involving quarantine, confinement, sequestration. But, in the light of contemporary human knowledge, a law which made a criminal offense of such a disease would doubtless be universally thought to be an infliction of cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments. <u>Robinson vs. California, 8 L.Ed 2d</u>

✳✳✳  <u>The man in the Montgomery County Jail was punished because he was to poor to comply with the state's demands. That is Also cruel and unusual punishment.</u>

Lynch vs. Baxley forbids in no uncertain terms the use of penal facilities for the simple expedient of effecting the confinement of the

33.

mentally ill, and again, . . . That is Exactly what CNA. allows. I also wonder why the Lynch Court was so adamant in that ruling . . .

"In Sixteenth Century England one prescription for insanity was to beat the subject "until he regained his reason". In America "the violently insane went to the whipping post or into prison dungeons or, as sometimes happened, were burned at the stake or hanged," and the pauper insane often roamed the countryside as wild men and from time to time were pilloried, whipped, and jailed . . ." Robinson vs California 8 L Ed 2d at 764.

So, based on the foregoing premises, issues, facts, and case law, this Honorable Court should conclude:

1. That I have established that the Community Notification Act of Alabama as currently applied clearly violates Constitutional Prohibitions against Cruel and Unusual Punishment.

2. That the Supreme Courts holdings in Robinson vs. California 8 L Ed 2d, and the 11th Circuits holdings in Lynch vs. Baxley 744 F 2d are dispositive in this matter.

3. That I have established a substantial likelihood of success on the merits on the foregoing claim.

4. That there exists a substantial threat that I and others similarly situated will sustain irreparable injury as a result of the currently practiced application of CNA.

5. That there is a compelling "Public" and "State" interest in the preservation of the Integrity of the Constitution of this Nation.

And having so concluded, Plaintiff respectfully requests that this Honorable Court grant such Injunctive Relief as the Court deems is

34.

proper and appropriate under the circumstances.

C.        In Response to subsection VII of the Def. Special Rep. at pg. 35 which states :

"Mr. McAteer has no standing to allege that the Act requires a determination that plaintiff is "mentally ill and dangerous" but provides no treatment for such condition."

In my complaint I specifically stated: "CNA violates Substantive Due Process Requirements in that it <u>defines a person</u> subject to its mandates <u>as being Mentally Ill and Dangerous</u>" and provides the means to involuntarily confine such person, but yet contains no provision to render services which would enable the person to live free of such confinement. i.e., Treatment for the <u>underlying</u> mental illness, job training etc.

The defendants cite 3 cases in this section of their Special Report. <u>Lujan vs. Defenders of Wildlife 504 U.S. 555</u>, <u>Whitmore vs. Arkansas 495 U.S. ████ 149, 155</u>, and <u>Simon vs Eastern Kentucky Welfare Rights Org. 426 U.S. 26, 41-42</u>. These cases, as the defendants point out, outline the minimum standards for standing. I will not only meet the threshhold required by the above cases, but I will substantially exceed it. And having said, . . .

<u>Ala. Code 22-52-1.1</u> - Article 1 - Commitment of Mentally Ill Persons Generally - Definitions - Involuntary Commitment : Court ordered mental health <u>services</u> in either an <u>outpatient</u> or <u>inpatient</u> setting."

And, . . .

<u>Ala. Code 22-52-10.1</u> If at the final hearing on a petition

35.

seeking to involuntarily commit a respondent, _the probate judge finds_, based on clear and convincing evidence, that the respondent meets the criteria for involuntary commitment, an order shall be entered for:

    1. Outpatient _treatment_

    2. Inpatient _treatment_

* * *    _Alabama Code 15-16-68_  Court imposed _conditions for release_.*
The _conditions_ that the _Court may impose_ upon release, if necessary and appropriate include the following:

    1. That the defendant take medication as prescribed . . .

    2. That the defendant submit to _treatment_ and accept care . . .

    4. That the defendant submit to periodic or random drug testing . . .

    3. That the defendant submit to mental or medical evaluation as prescribed.

* * * * *  5. That the defendant avoid specified activities, persons, or places

    6. Any other _condition that is necessary_ to prevent the defendant from posing a real and present threat to himself and others _while_ _he_ _is_ _at_ _large_.

    An involuntary commitment order must be based on _specific findings_ sufficient to bring the subject of the proceedings within the limited ~~legitimate~~ sphere of legitimate governmental concern." _Lynch vs. Baxley_ _386 F. Supp. at 378._

    _And compare the foregoing with_ . . . . . . .

    "The Legislature finds that the _danger (of recidivism) posed_ by criminal sex offenders and that the _protection of the public from these offenders_ is paramount _concern or interest to government_. _Ala Code 15-20-20.1_

36.

"The Legislature further finds that residency and employment restrictions for criminal sex offenders provide additional protections to vulnerable segments of the public such as schools and child care facilities. Ala Code 15-20-20.1. And, . . .

(3) * * *    "The Supreme Court has held that the precise terminology "Mental illness" need not be used in a state statute allowing for civil commitment." (Case cite last) And, . . .

"If juries are used in civil commitment proceedings, equal protection requires that all commitment juries throughout the state perform the same function; if the jury is the fact-finder in some jurisdictions, it must be the fact-finder in all jurisdictions." Lynch vs. Baxley 386 F. Supp.

* * *    What you have with CNA is quite simply a Mental Health Statute which imposes an "Order of Conditions" (which is called mandates) and which is designed in such a way that it not only circumvents the procedural protections of Due Process that such statutes require, but is also designed in such a way that it circumvents the Substantive Due Process requirements of such statutes.

(3) * * * "Specifically he is not subject to any statutory designation as mentally ill and dangerous and he is not due any long term care and treatment." Def. Special Rep. at pg. 36.

The Legislature finds that the danger ~~~~ (of recidivism) posed by criminal sex offenders . . . Ala Code 15-20-20.1 And, . . .

"In this instance, McAteer has only been deemed an adult criminal sex offender for purposes of the Act." Def. Special Rep. at pg. 34. And used in conjunction with, . . .

37.

"the vast majority of states do not allow confinement based on dangerousness alone . . . ("By necessary implication the danger referred to must be construed to relate to mental illness for the reason that dangerousness without mental illness could not be a valid basis for "indeterminate" confinement in the state hospital.") Footnote 6 Foucha vs. Louisiana 118 L Ed 2d at 451. — "See Also A.L.I Model Penal Code, supra, at 260 ("Although provisions on their face may allow for confinement based on dangerousness alone, in virtually all actual cases the questions of dangerousness and continued mental disease are likely to be closely linked.") Footnote 6 id. And in conjunction with, . . .

✳✳✳  One question. Why was that almost 70 year old man confined in the Montgomery County Jail in 2006?


And having established that C.N.A. unquestionably defines me as someone who is mentally ill and dangerous and that because I am such also imposes on me an "Order of Conditions" which are the factual equivalent in "Purpose" as the "Order of Conditions" imposed on those who are subject to the recognized Mental Health Statutes / Civil Commitment Statutes, I will now answer the following from pg. 36 of the Def. Special Rep.

    "Instead the petitioner is not directly the object of any alleged government action or inaction to which he objects,"

    I beg to differ. Under the "Order of Conditions" imposed on me by C.N.A. 4/5 days prior to my scheduled release on June 2nd 2008 — on approximately April 17th-18th 2008 - the State of Alabama will begin the process of initiating criminal proceedings against me if I fail to comply with the Orders of C.N.A. that I provide the actual address at which I will live or reside upon

38.

release. (Francis S. vs Stone 221 F.3d.) And when these / and because the proceedings have no other "purpose" than to effect the institutional confinement aspect of the recognized civil commitment statutes they invoke not only the ruling issued in Lynch vs Baxley 744 F. 2d 1452 (11th Circuit), but also the following judicial holdings.

"The second part of the theory of a due process right to treatment is based on the principle that when the three central limitations on the government's power to detain — that detention be in retribution for a specific offense; that it be limited to a fixed term; and that it be permitted after a proceeding where fundamental procedural safeguards — are absent, there must be a quid pro quo extended by the government to justify confinement. And the quid pro most commonly recognized is the provision of rehabilitative treatment, or where rehabilitation is impossible, minimally adequate habilitation and care, beyond the subsistence level custodial care that would be provided in a penitentiary." Donaldson vs. O'Connor 493 F 2d 507.

I do not know what case law supports the proposal in my Ex Post Facto argument that it is a horrible "Horrible" injustice to penally punish someone because of their poverty. — Maybe that found in contempt proceedings where it is held that; "Inability to comply is a complete defense against imposition of sanctions," i.e., U.S. vs Rylander 714 F 2d — Or maybe the principle embodied in Criminal Law 13.1(1) where it is held that; "No man is to be held criminally responsible for conduct which he could not reasonably understand to be proscribed." — Or maybe the entire body of the "Constitution of The United States of America" upholds that proposal. So we can throw out "retribution for a specific offense" in this context.

And, "limited to a fixed term"? I am in prison. I will stay in

39.

prison. What, is someone going to leave me a lot of money in their will? Will all of a sudden I become able – because I was punished with penal confinement for not being able to comply – Will all of a sudden I say "Hey, I better not do that again or they will keep me in prison!" So I guess we can throw out "limited to a fixed term" in this context also.

So, that leaves "fundamental procedural safeguards" and nothing could say it better than the following:

<u>Constitutional Law 347.5</u> "Proceedings for the indeterminate commitment of convicted sex offenders, <u>whether denominated civil or criminal</u>, are subject to both the Equal Protection Clause of the 14th Amendment and the Due Process Clause." <u>Specht vs. Patterson</u> 18 L Ed 2d.

Even Insanity Aquittees, people who have proven their dangerousness, in the penultimate way – People who have taken other peoples lives – Jackson vs. Foti – Powell vs. Fla – United States vs. Ecker – <u>Even these people get treatment in a "least restrictive environment." Shelton vs. Tucker 5 L Ed 2d. Lynch vs. Baxley 744 F.2d</u> And I am trying hard not to collapse equal protection into due process so, <u>we</u> can also throw out procedural safeguards, . . .

"We agree with the District Court that the right to treatment is triggered by the deprivation of physical liberty that generally results from commitment, not from entry of a commitment order alone. Poundstone 165 F.R.D. at 673. This conclusion follows logically from the basis of the constitutional right to state services of those who are in state custody." <u>D.W. vs. Rodgers 113 F.3d 1218.</u> Also, . . .

"As Judge Wisdom wrote in Aderholt, the only permissible justifications for civil commitment, and for the massive abridgements of constitutionally protected liberties it entails [are] the danger

48.

posed by the individual committed to himself or others, or the individuals need for treatment and care. Aderholt, 503 F.2d at 1312 ( Explaining holding in Donaldson vs. O'Connor.) Judge Wisdom further explained that, if the purpose of the commitment is to secure treatment, the state violates due process if it does not, in fact, provide treatment. Likewise if the reason for the commitment is the individuals dangerousness, treatment has to be provided as the quid pro quo society has to pay as the price of the extra safety it derives from the denial of the individuals liberty." D.W. vs Rodgers 113 F.3d at 1217-1218.

✳✳✳    At the end of my present sentence for Burglary 3rd the State of Alabama will subject me to penal confinement, not "Not," and again, "Not" because of any crime I have committed, but quite simply because I have an inability to comply with the "Order of Conditions" which is imposed upon me by C.N.A. legislation. A mental health statute. "Mental Health" "Mental Health" "Mental Health" coupled with penal confinement, coupled with a presumption of continuing insanity, coupled with New Findings of Fact, and coupled with a whole host of other Constitutional Affronts, arbitrariness, vindictiveness, capriciousness, cruelness . . .

✳✳✳    "But, there are Constitutional limitations on the conduct that a state may criminalize." Foucha vs Louisiana 118 L.Ed 2d at 448.
     At the end of my present sentence I will not have committed any crime. There is an old saying that goes, "You cannot get blood from a turnip." The State created this statute to protect the public from mentally ill and dangerous persons, I think I have established that, so they (the State) are required to apply it in a manner which is consistant with its purpose and to get rid of the element of hatred with which it is

41.

applied.

* * *   This same exact issue — "This Same Exact Issue" — was raised in Humphrey vs. Cady 31 L Ed 2d where the plaintiff argued that the place and character of his confinement was inappropriate because he was provided no treatment in the State Prison to which the Act challenged allowed commitment to . . . Just as CNA will do to me and others in this year 2008.

So, based on the foregoing premises, issues, facts and case law, this Honorable Court should conclude:

1. That I have established that the Community Notification Act of Alabama as currently applied clearly violates Substantive Due Process Requirements in that it defines me as Mentally Ill and Dangerous and provides the means to ~~effect~~ effect involuntary confinement but provides no treatment for such condition.

2. That CNA, is unconstitutional in that it utilizes penal confinement to effect the statutes purpose.

3. That the 11th Circuits' Holdings in Lynch vs Baxley 744 F 2d are dispositive in this matter.

4. That the 11th Circuits' Holdings in D.W. vs Rodgers 113 F 3d are dispositive in this matter.

5. That the 11th Circuits Holdings in Donaldson vs O'Connor 493 F 2d are dispositive in this matter,

6. That the 11th Circuits' Holdings in Wyatt vs Aderholt 503 F. 2d are dispositive in this matter. And, . . .

7. That the Supreme Courts' Holdings in Baxstrom vs. Herold 15 L. Ed 2d — Specht vs. Patterson 18 L Ed 2d — Humphrey vs. Cady 31 L Ed—

42.

are dispositive in this matter.

8. That I, as the plaintiff, have met the minimum requirements needed to establish standing in this matter

9. That I have established a substantial likelihood of success on the merits on the foregoing claims.

10. That I have established that there exists a substantial threat that I and others similarly situated will suffer irreparable injury as a result of the improper application of C.N.A.

11. That there is a compelling "Public" and "State" interest in the preservation of the Integrity of the Constitution of this Nation.

And having so concluded, Plaintiff respectfully requests that this Honorable Court grant such Injuctive Relief as the Court deems is proper and appropriate under the circumstances.

D.          And the other claim for relief under Substantive Due Process :

"C.N.A. violates Substantive Due Process Requirements in that in certain stages of its application it places such a powerful limitation on a person's ability to act on their own behalf that it thereby creates a Special Relationship between such person and the state to the extent that the State is rendered obligatory under the "Affirmative Duties Doctrine" of Constitutional Law to provide such services to the person that he cannot, because of the state imposed limitations, provide for himself." "Objection to Recommendation of Magistrate Judge at pg. 20, as submitted on 10-29-07. — This ground for relief was also included in the "Amendment of Facts" which this Honorable Court ordered the defendants to respond to on 10-23-07. And having noted, . . .

43.

The defendants have failed to respond to this claim. Not one word. . . Unless the bare assertion — "Next, substantive due process does not appear to be implicated . . ." Def. Special Rep. at pg. 23. — can be recognized as such. If it can I would argue that it is woefully inadequate. The claims I have raised transcend bare assertions, and having said, . . .

"The key concept is the exercise of dominion or restraint by the state. The state must somehow significantly limit an individuals freedom or impair his ability to act on his own before it can be constitutionally required to care and provide for that person." Wideman 826 F.2d at 1035. also, . . .

"Stated more broadly, the rationale for imposing these "special relationships" lies in constraints the state imposes on private action." Wideman 826 F.2d at 1035.

"Next, substantive due process does not appear to be implicated as McAteer has failed to demonstrate the existence of a legitimate privacy interest in preventing compilation and dissemination of accurate information . . ." Defendant's Special Rep. at pg 23.

*** I have said nothing in this section of my complaint about dissemination of information. I am arguing that "I have a liberty interest in being released from penal confinement!"

Indeed, if Mr. McAteer refuses to properly register and notify of his intended address as a sex offender in the future, he will be subject to additional and separate charges." Defendant's Special Res. at pg. 7.

On 2-8-08 I was called to see a classification specialist here

44.

at Bibb County and submit information needed for completion of a "sex offender notification worksheet." Namely (specifically) I was asked to submit an intended living address. I could not comply because I simply do not have the resources (See attached affidavit). However, at that time I inquired as to what services the State of Alabama extended to persons in my predicament. Telephone use? Halfway or Transition Centers etc., etc, etc.,

The answer? Absolutely none. So here is what I have . . . The way telephone use is set up in the Alabama Dept. of Corrections is on a collect call basis only. In other words I cannot call out unless it is collect. And then only if the number I am calling has been approved by the administration in advance, which usually takes two-three weeks, and this is contingent upon whether or not I can even obtain one of these forms. You would have to experience this problem firsthand to ~~appreciate~~ appreciate the extent. . . Further, no phonebooks. None! Not in the Law Library, not in the Chapel, . . . None. And even if I could get a phone list and a phonebook, and get administrative approval, who am I going to call? Churches? Collect? Halfway houses? Collect? And again, . . . "Come on Man!"

✳✳✳   To reiterate some of the argument I presented on pg. 20 of the Objection To Recommendation of Magistrate Judge — In a nutshell. . . The State has me incarcerated, cut off for all intents and purposes from all sources of possible aid — not even extending telephone usage — but yet demands that I provide a verifiable living address to escape penal confinement. "Is this a "Condition of Release?" Compare, . . .

<u>Ala Code 15-16-67</u> If, after conducting the hearing, the Court determines that the defendant is no longer mentally ill or no longer poses a

45.

real and present threat of substantial harm to himself or others by being at large, the Court shall order his release. If the Court determines that the defendant is still mentally ill but no longer poses a real and present threat of substantial harm to himself or others by being at large if his release is accompanied by certain conditions, the Court shall order his release subject to those conditions necessary to prevent the defendant from posing a real and present threat of substantial harm to himself or others."

C.N.A. is a <u>Mental Health Statute</u> . . . But, getting back to "Special Relationships."

<u>Constitutional Law 270(1)</u> "Due process requires at a minimum some <u>rational relation</u> between <u>nature and duration</u> <u>of confinement and its purpose</u>." <u>Lynch vs. Baxley 744 F 2d 1453, Jackson vs. Indiana 32 L Ed 2d at 435.</u>

✳✳✳    What is the "purpose" of C.N.A. legislation? To protect the public from persons the state considers to be suffering from mental illness as evidenced by their conviction for a particularly distasteful crime. Murderers, drug dealers who are exponetially of more danger to public welfare when you consider the impact their hideousness has on society — Robbers, burglars, car thieves, etc. etc. etc. These people get sentenced for their crimes, do their time and then are extended a plethora of services to facilitate their re-entry into society. But people in my predicament — We get an "Order of Conditions" which tells us we can't live here and we cannot work there — We get our face posted all over the community with pictures which are attached to legislative language which has the effect of saying to the world "Don't let them into your house, do not get near them. They are "especially dangerous to your children". And in the face of all of this State sponsored . . . banishment, for want of a better word . . . we get told by the State that we have to find a place to live — A place to live if we want to

46

escape penal confinement.

Halfway houses? One "One" in the State of Alabama that accepts sex offenders and if I am not mistaken he is shut down. This thing - C.N.A. - is really something when examined in the aggregate and as the State of Alabama uses it. One phrase I encountered often while researching these issues was "Instrument of Oppression"(<u>Parratt vs. Taylor 68 L.Ed 2d 420</u>). And that is "<u>Exactly</u>" what it is being used for in the State of Alabama. To promote an aura of hatred. Strong language but true. Well, . . . You can hate me because of a crime I committed 21 years ago, and you can encourage the public to hate me because of that crime 21 years ago. . . <u>But You Are Going To Do It In A Manner That Is Consistent With The "Commands" Of The Document Upon Which This Nation Was Created</u>. And having said, . . .

✱ ✱ ✱ ✱ ✱    My incarceration by the State of Alabama is the preventive force inhibiting my ability to comply with C.N.A. orders and within this context my argument is real simple —

"<u>In the substantive due process</u> ~~███~~ <u>analysis</u>, it is the state's affirmative act of restraining the individual's freedom to act on his own behalf — through incarceration, institutionalization, or other similar restraint on personal liberty - which is the "<u>deprivation of liberty</u>" triggering the protections of the due process clause . . ." <u>Deshaney vs Winnebago Soc. Serv. 103 L.Ed 2d at 249</u>. — And, . . .

I made an argument in the "Objection To Recommendation of Magistrate Judge" submitted 10-29-07 in which I referenced a body of law (that funds in contempt proceedings) and connected it to criminal law 13.1(I). At that time (the period preceding and occurring during the preparation of that document) I felt real strongly that the argument was properly placed under Ex Post Facto,

and while I still think it is significant in that area, I also think it is appropriate within this context. It is the ~~principle~~ principle that is embodied.

"Inability to comply is a complete defense against the imposition of sanctions." US vs. Rylander 714 F. 2d 996

Criminal Law 13.1(1) "No man is to be held criminally responsible for conduct which he could not reasonably understand to be proscribed." And,...

"Following this <u>rationale</u> a constitutional duty can arise only when a state or municipality, by exercising a significant degree of control over an individual, places that person in a worse situation than he would have been had had the government not acted at all. Such a situation could arise by virtue of the State's affirmatively placing a person in a position of danger, effectively stripping a person of her ability to defend herself, or cutting off potential sources of private aid." <u>Wideman 826 F.2d at 1035</u>

Criminal charges because I am unable/have an inability to comply with the orders of CNA. will undoubtedly put me in a worse situation. And another principle that is embraced by Constitutional Law that is also appropriate here, . . .

<u>Constitutional Law 746 – Due process and flexibility – Due Process is flexible and calls for such (procedural) protections as the particular situation demands.</u>

So, based on the foregoing premises, issues, facts, and case law, this Honorable Court should conclude:

1. That CNA of Alabama as a polled does create a "Special Relationship" between persons affected and the State to the extent that the State is rendered obligatory under the Affirmative Duties Doctrine of Constitutional Law to provide such services as are required to enable persons to escape the harm

48.

which occurs because of persons inability — because of state imposed restraints — to comply.

2. That I have established success on the merits on the foregoing claims — (likelihood of success on the merits).

3. That I have established that there exists a substantial threat (penal confinement) that I and others will suffer irreparable injury as a result of the Unconstitutional application of CNA.

4. That there is a compelling "Public and State" interest in the preservation of the Integrity of the Constitution of this Nation.

And having so concluded plaintiff ~~_____~~ respectfully requests that this Honorable Court grant such Injunctive Relief as the Court deems is proper and appropriate under the circumstances.


## Equal Protection

(A)    In Response to the defendants assertion that the Community Notification Act does not violate the Equal Protection Clause of The United States Constitution.

This stuff gets so complicated right about here that it gives me a headache, and having noted, ...

"The Legislature finds that the danger of recidivism posed by criminal sex offenders and that the protection of the public from these offenders is paramount concern or interest to government." Ala. Code 15-20-20.1

Compare, ...

49.

"An involuntary commitment order must be based upon specific findings sufficient to bring the subject of the proceedings within the limited sphere of legitimate governmental concern. Accordingly, each order of involuntary commitment shall be supported by the following minimum findings made by the fact finder upon the evidence introduced at the commitment hearing: (a) the person to be committed is mentally ill; and (b) the person to be committed poses a real and present threat of substantial harm to himself or others" Lynch vs. Baxley 386 F. Supp. at 378, - And used in conjunction with, . . .

"It appears, however, that the Mental Health Act and the Sex Crimes Act are not mutually exclusive: that abberations warranting commitment under the latter might also amount to "mental illness" warranting commitment under the former." Humphrey vs. Cady 31 L Ed 2d at 404.

✳ ✳ ✳   The State of Alabama has declared me as suffering from a dangerous mental illness — though they deny it. ie,

"Moreover, the State of Alabama has never contended that the petitioner suffers from a mental abnormality or personality disorder." Def. Special Report at pg. 35.   Also, . . .

"Specifically he is not subject to any statutory designations as mentally ill and dangerous" id at pg 36.

✳ ✳ ✳   And if I fail (which I will because I am financially unable to comply) to comply with the Orders of CNA. that I provide the actual living address at which I will reside upon release — What "purpose" will be served by subjecting me to penal confinement? The answer is real simple, . . .

"The Legislature declares that its intent in imposing certain monitoring and reporting requirements on criminal sex offenders and requiring

community notification of the residence and workplace of criminal sex offenders is to protect the public, especially children, from convicted criminal sex offenders." Ala Code 15-20-20.1

*** The penal confinement will allow the state to monitor me is the simple purpose that will be served, and why do they need to monitor me? And I am sorry for the redundancy or reiteration but, . . . Why do I need to be monitored?

"The Legislature finds that the danger [redacted] (of recidivism) posed by criminal sex offenders . . ." And as for the mental illness:

*** "The Supreme Court has held that the precise terminology "mental illness" need not be used in a state statute allowing for civil commitment." (Case cite lost). And used in conjunction with, . . .

"the vast majority of states do not allow confinement based on dangerousness alone . . . (By necessary implication the danger referred to must be construed to relate to mental illness for the reason that dangerousness without mental illness could not be a valid basis for indeterminate confinement in the state hospital.") See Also A.L.I. Model Penal Code, supra, at 260 ("Although provisions [redacted] on their face may allow for confinement based on dangerousness alone, in virtually all actual cases the questions of dangerousness and continued mental disease are likely to be closely linked.") Footnote 6 Foucha vs. Louisiana.

Sine Qua Non — "Wisconsin conditions such confinement not solely on the medical judgement that the defendant is mentally ill and treatable, but also on the social and legal judgement that his potential for doing harm, to himself or others, is great enough to justify such a massive curtailment of liberty." 405 US at 509 Humphrey vs. Cady (emphasis

added). Several federal courts have interpreted this language to imply that due process requires a finding great enough to justify such a "massive curtailment of liberty," as a prerequisite for involuntary confinement for the precautionary purpose of protecting the safety of the committee or others. E.G., Lynch vs Baxley 386 F. Supp. 378 -(omitted). This view proved prescient in light of the Supreme Court's landmark decision in O'Connor vs. Donaldson 423 U.S. 563 - 45 L.Ed 2d 396. 1975, which held that the custodial detention of one who is neither dangerous nor incapable of caring for himself violated that person's constitutional rights. Dangerousness (or in appropriate cases inability to care for oneself) thus was held to be a sine qua non of non-treatment based confinement." Benham vs. Edwards 678 F. 2d at 511.

* **** You can take a horse and paint him with stripes and call him a zebra but you "still" have a horse. And CNA Legislation is the same. It is a Civil Commitment Statute purely and simply. . . And the arbitrary manner in which it is being used and applied violates the Equal Protection and Bill of Attainder Clauses of The Constitution of The United States of America.

The penal confinement that will be inflicted upon me at the expiration of my current sentence because of my inability to comply with the order of conditions set by CNA . . . 45 days prior to my release, Compare:

"Within 30 days prior to expiration of the term of a prisoner confined in the Dannemora State hospital, when in the opinion of the director such prisoner continues insane . . ." Footnote 1 Baxstrom vs. Herold 15 L Ed 2d at 623.

And again asking this Honorable Court's indulgence: Within 45 days of release of someone who has been previously convicted of a sex

52.

offense, when in the opinion of the CNA text such prisoner continues insane...(or to be mentally ill and dangerous)... And again,...

"It appears, however, that the Mental Health Act and the Sex Crimes Act are not mutually exclusive; that "aberrations" warranting commitment under the latter might also amount to mental illness warranting commitment under the former. The equal protection claim would seem to be especially persuasive if it developes on remand that petitioner was deprived of a jury determination or other procedural protections merely by the arbitrary decision of the state to seek his commitment under one statute rather than the other." Humphrey vs Cady 31 L Ed 2d at 483.

Paraphrased — It appears, however, that Alabama's Civil Commitment Statutes and the Community Notification Act are not mutually exclusive; that aberrations warranting the imposition of an Order of Conditions under the latter might also amount to mental illness warranting imposition of an Order of Conditions under the former. The equal protection claim would seem to be especially persuasive if it developes that petitioner was ~~entitled to have been~~ deprived of the procedural protections such statutes require merely by the arbitrary decision of the state to impose such Order of Conditions under one statute rather than the other." And,...

"Under that order, Francis was required, after release, to attend an outpatient program approved by the commissioner, to inform the prosecutor of his current address..." Francis S. vs Stone 221 F.3d. And,...

Ala. Code 22-52-7 Subsection (c) The probate judge shall order the respondent to appear at the times and places set for ~~the~~ hearing the petition and may order the respondent to appear at designated times and places to be examined by licensed medical doctors or qualified mental health

53.

professionals . . . _If the respondent does not appear as ordered by the probate judge, the probate judge may order the sheriff of the county in which the respondent is located to take the respondent into custody."_

Compare, . . .

"Within 10 days of receipt of a verification form sent by the Alabama Dept. of Public Safety, an offender "shall _present in person_ the completed ~~form~~ verification form" _to appropriate local law enforcement officials"_ who shall obtain fingerprints and a photograph . . ." Ala Code 15-20-24(b). All adult criminal sex offenders are required to notify law enforcement officials of their intent to transfer legal residence or place of employment at least 30 days prior to any change in either such status. Ala Code 15-20-23.1. _Any violation of these registration requirements constitutes a Class C Felony." Court Doc. 14-1 at pgs 9, 10._ ~~____~~

**✱ ✱✱✱✱** Similarity in nature and similarity in purpose. All C.N.A. legislation did was to substitute the legislature for the probate judge, substitute Law Enforcement Officials for the mental health professionals, and substitute penal confinement for involuntary confinement. which invokes _Lynch vs. Baxley 744 F. 2d._ _Further, it even more strongly invokes the following Supreme Court Holding:_

"Classification of Mentally Ill persons as either insane or dangerously insane of course may be a reasonable distinction for purposes of determining the type of custody or medical care to be given, _but it has no relevance whatsoever in the context of the opportunity to show whether a person is mentally ill "at all."_ For purposes of granting judicial review before a jury of the question whether a person is mentally ill and in need of institutionalization, there is no conceivable basis for distinguishing the commitment of a person

54.

who is nearing the end of a penal term from all other civil commitments."
Baxstrom vs. Herold 15 LEd 2d at 624.

CNA. is applicable to me for life - the duration of my life - an
"Order of Conditions" for life. This violates The Equal Protection Clause.

The committed acquittee is entitled to release when he has recovered
his sanity or is no longer dangerous. Jones vs. United States 77 LEd 2d

"With respect to Georgia's presumption that an insanity acquittees
mental state continues, reliance on this presumption to justify procedural
differences in the commitment process violates both ~~~~~~ equal
protection and due process. Benham vs Edwards 678 F.2d 511 (11th Cir.)

Lastly, we hold with respect to release hearings that due process
and equal protection compel the state to bear the burden of proving by clear
and convincing evidence that the acquittee still meets the Civil Commitment
criteria and that equal protection requires that all acquittees be afforded
the opportunity to apply for release with the same frequency as permitted
MHC committees.

※ ※※   "The Equal Protection Clause requires that all persons similarly
situated should be treated alike." City of Cleburne vs Cleburne Living Ctr.
89 L.Ed 2d.

I have, throughout this brief, pointed out the ~~~~ striking parallels
between people who are subject to CNAs Order of Conditions and those who
are subject to the "Orders of Conditions" under the recognized Civil Commitment
statutes. I have did this purposely. The State wants to allow this to be
used to control every aspect of my life. If CNA., will exist, as the state

55

of Alabama is applying it, affect my attendance of religious services. If I am this dangerous, to warrant the invasion of my life — my liberty interests that this legislation brings to the table — then I am certainly, unequivocally, and beyond any question designated by this statute as being also seriously mentally ill.

And as such I, as a Citizen of this Nation, am invoking and calling upon this Honorable Court to interpose the protections of The Constitution of The United States between myself and the States arbitrary application of CNA. Legislation. I, as a Citizen of this Nation, am entitled to Equal Protection of the Laws, and I am entitled to Due Process.

"The Legislature finds . . ." "If juries are used in civil commitment proceedings, equal protection requires that all commitment juries throughout the State perform the same function; if the jury is the factfinder in some jurisdictions, it must be the fact-finder in all jurisdictions." Lynch vs Baxley 386 F. Supp. 1974.

"The command of the Bill of Attainder Clause that a legislature can provide that certain persons possessing certain characteristics must abstain from certain activities, but must leave to other tribunals the task of deciding who possesses those characteristics." United States vs. Brown 14 LEd 2d at 484.

"The fact that Birl's trial visit was only a conditional release makes no difference, for the Supreme Court has explicitly recognized the existence of the liberty interest . . ." Birl vs. Willis 619 F Supp at 490

56.

"a convicted prisoner may be treated involuntarily for particular psychiatric problems, but upon release may be committed only as would any other candidate for civil commitment." McNeil vs. Patuxent Institution 32 L.Ed 2d .

"New York Corr. Law 384 is unconstitutional in that it arbitrarily singles out one group of allegedly mentally ill persons and denies to that group the jury trial to which all other civilly committed patients are entitled." Baxstrom vs. Herold 15 L.Ed 2d — Briefs and Appearances of Counsel.

It follows that the State, having made this substantial review proceeding generally available on this issue, may not, consistent with the Equal Protection Clause, arbitrarily withhold it from some. Baxstrom-Herold

Over inclusiveness, Underinclusiveness, Super Dangerous and all that... I already have a headache and have had for several weeks. I do think, however, without getting into the above issues that I have established one fact... The Community Notification Act is a Civil Commitment Statute in "purpose" and in "effect." A Civil Commitment Statute which is being inappropriately applied through the criminal justice system and thereby allowing the State to circumvent the procedural and substantive due process protections that the 14th Amendment of the United States of America's Constitution demands. And in closing:

It appears however that the Mental Health Act and the Sex Crimes Act are not mutually exclusive; that aberrations warranting commitment under the latter might also amount to mental illness warranting commitment under the former. The equal protection claim would seem to be especially

57.

persuavise if it developes on remand that petitioner was deprived of a jury determination, or other procedural protections merely by the arbitrary decision of the state to seek his commitment under one statute rather than the other." Humphrey vs. Cady 31 L.Ed 2d at 403.

### Conclusion

Based on the foregoing applicable case law, issues, and facts, there is a substantial likelihood that I, as a Citizen of this Nation, who has pointed out the contradictions in the "purpose" of CNA Legislation as opposed to the "current application" of CNA, will succeed on the merits of each and every one of my claims for relief.

I am therefore asking this Honorable Court to issue such Declaratory and Injunctive orders as this Court deems to be proper and appropriate.

Respectfully submitted this 11th day of February, 2008.

Roy McAteer
Plaintiff

Certificate of Service

I, Roy Lee McAteer, do hereby certify that I have served a true and correct copy of the foregoing upon the defendants by placing same, postage prepaid and properly addressed, in the United States Mail.

Done this 11th Day of February, 2008.

Roy McAteer
AFFIANT

Brent Al.
35034

"This correspondence is forwarded from an Alabama State Prison. The contents have not been evaluated, and the Alabama Department of Corrections is not responsible for the substance or content of the enclosed communication."

Office of The Clerk
United States District Court
P.O. Box 711
Montgomery, Al. 36101-0711