IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| ROY LEE MCATEER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 2:07-CV-692-WKW |
| | ) (WO) |
| BOB RILEY, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

On September 25, 2007, the Magistrate Judge entered a Recommendation (Doc. # 14) that the Motion for Preliminary Injunction (Doc. # 1) filed by Plaintiff Roy Lee McAteer ("McAteer") be denied. In the Motion for Preliminary Injunction, McAteer asks the court to enjoin defendants Bob Riley, Troy King, and the Alabama Department of Public Safety (collectively, "the defendants") from enforcing the requirements of the Alabama Community Notification Act ("ACNA"), Ala. Code § 15-20-20 *et seq*, including the employment and residency restrictions.

On October 30, 2007, McAteer filed a twenty-five page objection (Doc. # 25) to the Recommendation. In the Recommendation, the Magistrate Judge rejected McAteer's *ex post facto* challenge to the employment and residency restrictions concluding that the Supreme Court had addressed these issues in *Smith v. Doe*, 538 U.S. 84 (2003).[1] While the Supreme

---

[1] The statute in *Smith* required sex offenders to register with law enforcement and provided for community notification through a registry that made the sex offender's name, address, photograph, and place of employment public information. *Smith*, 538 U.S. at 90.

Court in *Smith* did examine whether registration and community notification violate the *ex post facto* clause, the statute at issue there did not include residency or employment restrictions. Because the Recommendation does not specifically analyze this argument, the court analyzes the residency and employment restrictions in the context of McAteer's Motion for a Preliminary Injunction. The court finds, after a *de novo* review, that the Recommendation is due to be adopted in part, and rejected in part, but that the Motion for Preliminary Injunction is due to be denied.

## I. FACTS AND PROCEDURAL HISTORY

ACNA imposes limits on adult criminal sex offenders[2] after their release from

---

[2] An adult criminal sex offender is "[a] person convicted of a criminal sex offense . . . ." Ala. Code § 15-20-21(A). A criminal sex offense is:

Any of the following offenses:

a. Rape in the first or second degree, as proscribed by Section 13A-6-61 or 13A-6-62; provided that a sentencing court may exempt from this articule a juvenile or youthful offender criminal sex offender for a criminal sex offense as defined in Section 13A-6-62(a)(1).

b. Sodomy in the first or second degree, as proscribed by 13A-6-63 or 13A-6-64.

c. Sexual torture, as proscribed by Section 13A-6-65.1.

d. Sexual abuse in the first or second degree as proscribed by Section 13A-6-66 or 13A-6-67.

e. Enticing a child to enter a vehicle, room, house, office, or other place for immoral purposes, as proscribed by Section 13A-6-69.

f. Promoting prostitution in the first or second degree, as proscribed by Section 13A-12-111 or 13A-12-112.

g. Violation of the Alabama Child Pornography Act, as proscribed by Section 13A-12-191, 13A-12-192, 13A-12-196, or 13A-12-197.

incarceration. It includes provisions requiring registration, community notification, electronic monitoring, and residency and employment restrictions. An adult criminal sex offender cannot "establish a residence or any other living accommodation or accept employment within 2,000 feet of the property on which any school or child care facility is located." Ala. Code § 15-20-26(a). Additionally, adult criminal sex offers cannot "establish a residence or any other living accommodation within 1,000 feet of the property on which any of his or her former victims, or the victims' immediate family members reside." *Id.* § 15-20-26(b). The statute also provides that "[n]o adult criminal sex offender, after having been convicted of a criminal sex offense involving a child, shall accept, maintain or carry on any

---

    h. Kidnapping of a minor, except by a parent, in the first or second degree, as proscribed by Section 13A-6-43 or 13A-6-44.

    i. Incest, as proscribed by Section 13A-13-3, when the offender is an adult and the victim is a minor.

    j. Soliciting a child by computer for the purposes of committing a sexual act and transmitting obscene material to a child by computer, as proscribed by Sections 13A-6-110 and 13A-6-111.

    k. Any solicitation, attempt, or conspiracy to commit any of the offenses listed in paragraphs a. to j., inclusive.

    l. Any crime committed in any state or a federal, military, Indian, or a foreign country jurisdiction which, if it had been committed in this state under the current provisions of law, would constitute an offense listed in paragraphs a. to k., inclusive.

    m. The foregoing notwithstanding, any crime committed in any jurisdiction which, irrespective of the specific description or statutory elements thereof, is in any way characterized or known as rape, sodomy, sexual assault, sexual battery, sexual abuse, sexual torture, solicitation of a child, enticing or luring a child, child pornography, lewd and lascivious conduct, taking indecent liberties with a child, or molestation of a child.

*Id.* § 15-20-21(4).

employment or vocation at or within 500 feet a school, child care facility, playground, park, athletic field or facility, or any other business or facility having a principal purpose of caring for, educating, or entertaining minors."[3] *Id.* § 15-20-26(g). An individual who knowingly violates § 15-20-26 is guilty of a Class C felony.

Besides limiting where adult criminal sex offenders can live and work, ACNA requires sex offenders to provide notice before moving or changing employment locations. An adult criminal sex offender must

> submit a notice of intent to move to the sheriff of the county and the chief of police of the municipality in which he or she resides, and to the sheriff of the county and chief of police of the municipality to which he or she plans to move, if such are different, at least 30 days prior to moving to the new location.

*Id.* § 15-20-23. An adult criminal sex offender must submit a similar notice "at least seven days prior to beginning employment at a new location." *Id.* § 15-20-23.1.

McAteer is currently incarcerated in Bibb County and due to be released in June 2008. (Doc. # 25 at 3.) He is classified as an adult criminal sex offender based on a plea of guilty to sodomy charges in 1988.

## II. STANDARD OF REVIEW

"The grant or denial of a preliminary injunction is within the sound discretion of the trial court and will not be disturbed absent a clear abuse of discretion." *Palmer v. Braun*,

---

[3] A criminal sex offense involving a child is defined as: "A conviction for any criminal sex offense in which the victim was a child under the age of 12 and any offense involving child pornography." Ala. Code § 15-20-21(5).

287 F.3d 1325, 1329 (11th Cir. 2002). A plaintiff must establish four prerequisites to be entitled to a preliminary injunction:

> (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction were not granted, (3) that the threatened injury to the plaintiff outweighs the harm an injunction may cause the defendant, and (4) that granting the injunction would not disserve the public interest.

*Suntrust Bank v. Houghton Mifflin Co.*, 268 F.3d 1257, 1265 (11th Cir. 2001) (internal citation and quotation marks omitted). "The preliminary injunction is an extraordinary and drastic remedy not to be granted until the movant clearly carries the burden of persuasion as to the four prerequisites." *Ne. Fl. Chapter of the Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 896 F.2d 1283, 1285 (11th Cir. 1990) (internal citation and quotation marks omitted).

### III.  ANALYSIS

With regard to substantial likelihood on the merits, the burden is on McAteer to demonstrate that the residency and employment restrictions are indeed *ex post facto* laws. The Constitution provides that "[n]o state shall . . . pass any . . . ex post facto Law." U.S. Const. art. I, § 10, cl. 1. An *ex post facto* law punishes retroactively, meaning that "it 'changes the legal consequences of acts completed before its effective date.'" *Miller v. Florida*, 482 U.S. 423, 430 (1987) (quoting *Weaver v. Graham*, 450 U.S. 24, 31 (1981)).

No Alabama court has reached the merits of the constitutionality of ACNA's employment and residency restrictions. While the Alabama Criminal Court of Appeals has

found ACNA's employment and residency restrictions constitutional, in each decision the plaintiff had failed to present substantial evidence to support his claims. *See Salter v. State*, 971 So. 2d 31, 37 (Ala. Crim. App. 2007) ("Salter has failed to present substantial evidence that the residency requirements of [ACNA] have a punitive effect on him."); *Boyd v. State*, 960 So. 2d 717, 720 (Ala. Crim. App. 2006) ("Therefore, there is no factual basis for Boyd's claim that [ACNA] punitive in its effects.); *Lee v. State*, 895 So. 2d 1038, 1043 (Ala. Crim. App. 2004) ("[T]here were no factual bases for these claims presented to the trial court.").

Neither the Supreme Court nor the Eleventh Circuit has addressed the constitutionality of other states' statutes with residency or employment restrictions. Federal courts that have addressed this issue are divided. *Compare Doe v. Miller*, 405 F.3d 700, 704-05 (8th Cir. 2005) (finding statute imposing a 2,000 foot residency restriction constitutional); *Doe v. Baker*, No. 05-2265, 2006 WL 905368, at *6 (N.D. Ga. Apr. 5, 2006) (finding statute with 1,000 foot residency restriction constitutional) *with Mikaloff v. Walsh*, No. 06-96, 2007 WL 2572268, at *3 (N.D. Ohio Sept. 4, 2007) (finding unconstitutional statute with 1,000 foot residency restriction).

While the Supreme Court has not addressed the constitutionality of residency and employment restrictions, it has set forth the framework to be used when evaluating *ex post facto* challenges to statutes imposing restrictions on sex offenders. *See Smith*, 538 U.S. at 92. To determine whether a statute violates the *ex post facto* clause, the court "must ascertain

whether the legislature meant the statute to establish civil proceedings." *Id.* (internal citation and quotation marks omitted). If the legislature intended punishment, then the statute is deemed criminal, and the inquiry ends. *Id.* However, if the legislature intended the law to be civil and nonpunitive, the inquiry is whether the law is "so punitive either in purpose or effect as to negate the State's intention to deem it civil." *Id.* (internal citation and quotation marks omitted). "[O]nly the clearest proof will suffice" to transform a civil regulation into a criminal penalty. *Id.* (internal citation and quotation marks omitted).

### A. *Legislative Intent*

"Whether a statutory scheme is civil or criminal is first of all a question of statutory construction." *Smith*, 538 U.S. at 92 (internal citation and quotation marks omitted). The court determines "whether the legislature, in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other." *Hudson v. United States*, 522 U.S. 93, 100 (1997) (internal citation and quotation marks omitted). In this inquiry, courts have examined the text of the statute and the manner of codification. *See Smith*, 538 U.S. at 93-95.

When the legislature's stated intent in enacting a statute is to protect the public, courts have concluded that it is a civil scheme. *See id.* at 92. In *Smith*, the Alaska statute never "expressly designate[d] the requirements imposed as 'civil.'" *Id.* at 107 (Souter, J., concurring). However, the legislature found "'sex offenders pose a high risk of reoffending' and identified 'protecting the public from sex offenders' as the 'primary governmental

interest' of the law." *Id.* at 93 (majority). The court concluded that the statute was civil because "nothing on the face of the statute suggests that the legislature sought to create anything other than a civil scheme designed to protect the public from harm." *Id.* (internal citation and quotation marks omitted).

Likewise, the Alabama legislature intended ACNA to be a civil statute. While ACNA's text does not state that it is civil, the legislature did find "that the protection of the public from [criminal sex] offenders is a paramount concern or interest to government." Ala. Code. § 15-20-20.1. Moreover, "residency and employment restrictions for criminal sex offenders provide additional protections to vulnerable segments of the public such as schools and child care facilities." *Id.* Because the legislature sought to protect the public, the court concludes that it intended ACNA to be civil.

The "manner of [the statute's] codification" is also "probative of the legislature's intent." *Smith*, 585 U.S. at 94. The plaintiff in *Smith* argued that the Alaska legislature intended the statute to be a criminal because the registration provisions were codified within the criminal procedure code. However, the codification of the statute was not dispositive because the title of the code on criminal procedure contained civil procedures and provisions on criminal administration, which were not punitive. *Id.* at 95. The Court concluded that "[t]he location and labels of a statutory provision do not by themselves transform a civil remedy into a criminal one." *Id.* at 94.

Here, ACNA is codified in title 15, which contains criminal procedure law. As in

*Smith*, this title contains provisions regarding criminal administration, which are not punitive. The codification of ACNA in the title on criminal procedure does not establish a punitive purpose. Because ACNA is a civil law, the court's analysis moves to whether ACNA is punitive in effect.

### B. *Practical Effect*

The issue now becomes whether the practical effect of ACNA transforms it into a criminal statute. "[O]nly the clearest proof" is sufficient to transform a civil regulation into a criminal penalty. *See Smith*, 538 U.S. at 92. To find a statute punitive in effect, the Supreme Court has directed courts to use the following factors taken from *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-69 (1963):

> [W]hether, in its necessary operation, the regulatory scheme: has been regarded in our history and traditions as a punishment; imposes an affirmative disability or restraint; promotes the traditional aims of punishment; has a rational connection to a nonpunitive purpose; or is excessive with regard to this purpose.

*Smith*, 538 U.S. at 97.

In the Motion for Preliminary Injunction and in the Objection, McAteer does not analyze – or mention – any of these factors in relation to the employment or residency restrictions. While McAteer is proceeding *pro se* and the court liberally construes his complaint, "this leniency does not give a court license to serve as *de facto* counsel for a party." *GJR Invs., Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998). Because McAteer has presented no argument with regard to these factors, the court finds that

9

he has not established by the "clearest proof" that the employment and residency restrictions violate the *ex post facto* clause. *See also Salter*, 917 So. 2d at 37 (finding ACNA was not punitive in effect when the plaintiff "failed to argue or present any evidence as to any *Mendoza-Martinez* factor other than alleging 'an affirmative disability or restraint.'"). Moreover, because the motion before the court seeks a preliminary injunction, McAteer bears the burden of establishing that he has a likelihood of success on the merits. Given that McAteer bears the burden of proof and has presented no argument here, the court finds that he has not established a likelihood of success on the merits that the statute is punitive in effect and violates the *ex post facto* clause. The court expresses no opinion today on whether McAteer could present evidence and arguments to establish by the clearest proof that the residency and employment restrictions violate the *ex post facto* clause and leaves that question for another day; instead, the court's holding is that McAteer's bare contention that the residency and employment restrictions violate the *ex post facto* clause does not establish that he is entitled to a preliminary injunction.

Because McAteer has not shown a substantial likelihood of success on the merits, his motion for a preliminary injunction is due to be denied. *See Church v. City of Huntsville*, 30 F.3d 1332, 1342 (11th Cir. 1994) (concluding that because plaintiffs had not established a substantial likelihood of success on the merits the court need not address the remaining factors in the preliminary injunction analysis).

## IV.  CONCLUSION

For the reasons set forth above, it is ORDERED that:

1.  Plaintiff's Objection (Doc. # 25) is OVERRULED.

2.  The Recommendation (Doc. # 14) is ADOPTED in part and REJECTED in part. The analysis regarding whether the residency and employment restrictions are constitutional under the *ex post facto* clause is rejected, and the balance of the Recommendation is ADOPTED.

3.  Plaintiff's Motion for Preliminary Injunction (Doc. # 1) is DENIED.

4.  This case is REFERRED back to the Magistrate Judge for further proceedings.

DONE this 31st day of March, 2008.

                                          /s/  W.  Keith Watkins  
                                       UNITED STATES DISTRICT JUDGE